# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------X

**SHERELLE THOMAS, ADMINISTRATOR OF** :
**THE ESTATE OF TERELLE THOMAS** :
:
and                                    :          **CIVIL NO. _____**
:
**T.T., a minor**, individually, as child of decedent :
Terelle Thomas and as his sole survivor, :          **JURY TRIAL DEMANDED**
:
Plaintiffs :
:
:
v.                      :
:
:
**HARRISBURG CITY POLICE DEPARTMENT** :
**OFFICER DARIL FOOSE** :
**OFFICER SCOTT JOHNSEN** :
**OFFICER ADRIENNE SALAZAR** :
**OFFICER TRAVIS BANNING** :
**OFFICER BRIAN CARRIERE** :
**HARRISBURG CITY POLICE DEPT** :
**JOHN DOE POLICE OFFICERS 1 – 5** :
:
and                                    :
:
**DAUPHIN COUNTY** :
**DAUPHIN COUNTY ADULT PROBATION** :
**JOHN DOE SUPERVISORY OFFICERS 1-5** :
**DAUPHIN COUNTY PRISON JOHN DOE** :
**PRISON OFFICIALS 1-5** :
**PROBATION OFFICER DAN KINSINGER** :
:
Defendants :

-------------------------------------------------------------X

1

## COMPLAINT

## JURISDICTION AND VENUE

1.   This action is brought pursuant to 42 U. S. C. §1983, the Fourth and Fourteenth Amendments to the United States Constitution, the Constitution of the Commonwealth of Pennsylvania, and Pennsylvania Law.

2.   This Middle District of Pennsylvania Court has original jurisdiction over the Plaintiffs' federal law claims pursuant to 28 U. S. C. §§1331 and 1343, in that the claims raise questions of federal law, and jurisdiction over the pendent State Law claims pursuant to 28 U. S. C. §1367(a) where the state claims are so related to federal claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.   Venue is proper in this Middle District of Pennsylvania pursuant to 28 U. S. C. §1391(b)(1) where all the Defendants reside in the Commonwealth of Pennsylvania and 28 U. S. C. §1391(b)(2) where a substantial part of the events or omissions giving rise to the Plaintiffs' federal claims occurred within the geographical limits of this District.

4.   This action is also brought under the laws of The Commonwealth of Pennsylvania as Wrongful Death, Survival, and Negligence actions pursuant to claims arising from Defendants' deliberate and malicious indifference and negligence in failing to train its various personnel in the recognition and treatment of medical and mental health issues in arrestees and inmates and further in

2

depriving decedent Terelle Thomas of his rights to both due process and equal protection constitutionally guaranteed him, all of which eventually led to his death at the young age of thirty-one (31) years old.

## PARTIES

5.  Plaintiff Sherelle Thomas, Administrator of the Estate of Terelle Thomas, as Administrator of the said Estate of Terelle Thomas, brings this action pursuant to 42 Pa.  C.  S.  A.  §8302 (Survival).

6.  Administrator Sherelle Thomas was appointed Administrator by the Dauphin County Register of Wills on the 11th day of March 2020, under Administrative File Number 2220-0262.

7.  Plaintiff T.T., a minor, is the decedent's natural daughter and only survivor, and she resides in Harrisburg, Pennsylvania.  Because the decedent was single and had no other survivors, the Plaintiff brings this action on her own behalf as the only person entitled to recover as the decedent's survivor pursuant to 42 Pa.  C. S.  A.  §8301 (Wrongful Death).

8.  Plaintiffs' Decedent is Terelle Thomas, who died in Harrisburg, Pennsylvania on December 17, 2019 as the direct and proximate result of the Defendants' individual and joint actions and omissions, all of which occurred in the City of Harrisburg, Dauphin County, Pennsylvania.

9.  A Defendant is Dauphin County, PA ("Dauphin County"), a county, political subdivision, and governmental entity in the Commonwealth of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 101 Market Street, Harrisburg, PA 17101.  At

all times relevant hereto, Defendant Dauphin County was responsible for

Dauphin County Adult Probation and Dauphin County Judicial Center. Dauphin

County Judicial Center houses the Central Booking Facility ("Booking Center") for

all police departments in Dauphin County. Defendant Dauphin County employed

and was responsible for training and supervising the probation officers and prison

officials who daily engaged probationers and persons taken into custody, and

who participated in and were the cause of decedent Terelle Thomas's death.

10.     One or more Defendants are Dauphin County Adult Probation John Doe

        Supervisory Officers ("DCAP John Doe(s)") 1 - 5, having a place of business at

        917 Gibson Blvd. in Steelton, PA 17113.  At all times relevant hereto, DCAP

        John Does participated in and was/were the cause of decedent Terelle Thomas's

        death.

11.     One or more Defendants are Dauphin County Prison John Doe Prison Officials

        ("DCP John Doe(s)") 1 - 5, having a place of business at 451 Mall Blvd. in

        Harrisburg, PA 17111.  At all times relevant hereto, DCP John Does participated

        in and was/were the cause of decedent Terelle Thomas's death.

12.     A Defendant is Dan Kinsinger, an Adult Probation Officer with Dauphin County

        Adult Probation, having a main place of business at 917 Gibson Blvd, Steelton,

        PA, 17113.  At all times relevant hereto, said Probation Officer participated in and

        was the cause of decedent Terelle Thomas's death.

13.     A Defendant is the Harrisburg City Police Department ("Harrisburg Police"),

        having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At

        all times relevant hereto, Defendant Harrisburg Police employed, trained and

supervised the several police officers that participated in and were the cause of decedent Terelle Thomas's death. Defendant Harrisburg Police failed to adequately train its police personnel in recognizing and identifying arrestees with serious mental health issues requiring diversion to a hospital or mental health facility.

14.   A Defendant is Daril Foose, a Police Officer with Harrisburg Police, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Terelle Thomas's death.

15.   A Defendant is Scott Johnsen, a supervisory Police Officer with Harrisburg Police, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Terelle Thomas's death.

16.   A Defendant is Adrienne Salazar, a Police Officer with Harrisburg Police, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Terelle Thomas's death.

17.   A Defendant is Travis Banning, a Police Officer with Harrisburg Police, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Terelle Thomas's death

18.   A Defendant is Brian Carriere, a Police Officer with Harrisburg Police, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At all times

relevant hereto, said Police Officer participated in and was the cause of decedent Terelle Thomas's death.

19.     One or more Defendants are Harrisburg Police Department John Doe Police Officers (Harrisburg John Doe(s)) 1 - 5, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At all times relevant hereto, said Harrisburg John Does participated in and were the cause of decedent Terelle Thomas's death.

20.     The complained-of acts and failures to act by Harrisburg Police supervisory and non-supervisory Defendants herein were objectively unreasonable and were malicious and sadistic and intended to cause harm.

21.     The acts and failures to act by DCAP John Does and non-supervisory Defendants herein were objectively unreasonable and were malicious and sadistic and intended to cause harm.

22.     At all times relevant hereto, the within described corporate, departmental and individual Defendants were acting under color of law, and the individual Defendants were acting in the course and scope of their duties with their respective corporate or departmental employers, to wit, the Harrisburg Police Department and Dauphin County, and in furtherance of those corporate or departmental employers' business objectives and purposes.

23.     At all times relevant hereto, the within described corporate and/or departmental employers, to wit, Harrisburg Police and Dauphin County, were liable for the acts and failures to act of the individual Defendants, both known and unknown to Plaintiffs, under theories of agency, master-servant, respondeat superior and/or

control or right of control.

24.  Plaintiffs bring this action in part under and by virtue of the Pennsylvania
     Wrongful Death Act, 42 Pa. C.S.A. §8301, and the Survival Act, 42 Pa. C.S.A.
     §8302, to recover damages legally appropriate thereunder, including, but not
     limited to damages for all hospital, medical, funeral, burial and estate
     administration expenses incurred, loss of support and contribution which the
     family would have received from the decedent from the time of his death for the
     duration of his work life expectancy; compensated for the pecuniary value of the
     services, society and comfort he would have given to his daughter had he lived;
     and compensated for the loss of the services the decedent would have
     contributed to his daughter, and also for the net amount of money the decedent
     would have earned from the date of his death and would have earned between
     that date and the end of his life work expectancy; compensation for the mental
     and physical pain and suffering and inconvenience the decedent endured from
     the moment of his injury to the moment of his death.

25.  Plaintiffs' decedent did not bring an action during his lifetime for actual injuries or
     damages sought here.

26.  At all times relevant hereto, Defendants individually and jointly, and at each
     successive stage from his initial arrest to his incarceration at the Dauphin County
     Booking Center, were under a duty and obligation to recognize and identify that
     decedent Terelle Thomas had serious medical health problems and to divert him
     from a prison environment to a hospital so that he might receive treatment
     instead of punishment.

27. At all times relevant hereto, Defendants individually and jointly breached that duty by failing to recognize and identify that decedent Terelle Thomas had serious medical problems and failing to divert him from a prison environment to a hospital at which he would have received treatment instead of incarceration.

28. As a direct and proximate result of that breach, decedent Terelle Thomas died on December 17, 2019 at the age of thirty-one (31) years old.

29. At all times relevant hereto, Defendants also breached that duty by treating decedent Terelle Thomas unreasonably and inhumanely and denying him emergency medical treatment as described herein, and by further failing to properly document or record their contact with decedent Terelle Thomas.

30. As a direct and proximate result of said unreasonable and inhumane treatment and denial of emergency medical treatment as described herein to which he was subjected at the hands of the Defendants, individually and/or jointly, Terelle Thomas died on December 17, 2019 at the age of thirty-one (31) years old.

31. All Defendants, with the exception of Harrisburg Police Department and Dauphin County, are being sued in their individual capacity.

## OPERATIVE FACTS

32. On or about December 14, 2019, at approximately 6:15 PM, Defendant Foose observed Decedent Thomas and another male walk from the area of a bar and enter a vehicle as passengers.

33. The two men were walking, laughing, and conversing with each other when observed by Defendant Foose.

34. Shortly thereafter, Defendant Foose began to follow the vehicle.

35.  Defendant Foose initiated a traffic stop at the intersection of South 17th Street and Holly Street.

36.  Upon initiating contact with Decedent Thomas, Defendant Foose observed that Decedent Thomas had a large amount of something inside of his mouth.

37.  Defendant Foose notified her partner Defendant Kinsinger that she believed Decedent Thomas was concealing something in his mouth.

38.  According to her report, Defendant Foose made observations that led her to believe that Decedent Thomas had ingested a large amount of cocaine. Those observations included Decedent Thomas' lips being pasty white; Decedent Thomas' tongue and spit were white; a large amount of paste inside of Decedent Thomas' mouth; and Decedent Thomas' face was covered with a white powdery substance. See Exhibit A, page 6.

39.  At approximately 6:22 p.m., Defendant Johnsen arrived at the location of the traffic stop.

40.  Upon his arrival, Defendant Johnsen was informed by Defendant Kinsinger that Decedent Thomas had ingested crack cocaine. See Exhibit A, page 8.

41.  At approximately 6:22 p.m., Defendant Salazar arrived at the location of the traffic stop.

42.  Upon her arrival, Defendant Salazar was informed by Defendant Foose that Decedent Thomas had ingested crack cocaine.

43.  Defendant Salazar observed a white powder substance covering Decedent Thomas' lips. See Exhibit A, page 9.

44.  At approximately 6:22 p.m., Defendant Banning arrived at the location of the

traffic stop.

45.    Defendant Banning observed a large amount of white residue around and on

       Decedent Thomas' lips.

46.    Defendant Foose advised Defendant Banning that she believed Decedent

       Thomas had eaten crack cocaine. See Exhibit A, page 10.

47.    At approximately 6:47 p.m., Defendant Carriere transported Decedent Thomas

       from the area South 17th Street and Holly Street to the Dauphin County Booking

       Center.

48.    Prior to transporting Decedent Thomas, Defendant Carriere was informed by

       Defendant Foose that she suspected Decedent Thomas had swallowed crack

       cocaine. See Exhibit A, page 11.

49.    During the time he was being transported by Defendant Carriere, Decedent

       Thomas' face had white residue on it.

50.    Upon arrival at the Dauphin County Booking Center, Defendant Carriere

       informed DCP John Doe(s) and Dauphin County Prison medical staff that

       Decedent Thomas had swallowed crack cocaine. See Exhibit A, page 11.

51.    Upon his arrival at Dauphin County Booking Center, DCP John Doe(s) and

       medical staff noted that Decedent Thomas had white powder on his lips.

52.    Despite the suspicions of numerous law enforcement personnel that Decedent

       Thomas had swallowed a dangerous drug, Decedent Thomas was never

       transferred from the Dauphin County Booking Center to the nearest hospital for

       emergency medical treatment.

53.    At that time, defendant police officers, Defendant Kinsinger and DCP John Does,

should have recognized that Decedent Thomas was in the midst of a health crisis and needed emergency medical treatment, and should therefore have taken him to a hospital for observation and treatment.

54.   Instead of taking Decedent Thomas to a hospital or other medical facility, and because they had been poorly trained to recognize dangerous health issues, all of the individual police and probation officers involved in the arrest of Decedent Thomas ignored police and county protocol that called for Decedent Thomas to be taken to the hospital for emergency medical care and instead Defendant Carriere took Decedent Thomas to the Dauphin County Booking Center at Dauphin County Jail.

55.   In failing to train its police, probation officers, and prison officials in detecting and recognizing medical emergencies among the people its officers arrested, Defendants Harrisburg Police and Dauphin County exposed its deliberate indifference to the medical needs of people its officers might be called upon to arrest.

56.   Defendants Harrisburg Police, Dauphin County and their officers were under a duty to obtain for Decedent Thomas and other arrestees medical attention when it appeared they needed it, but said Defendants made no effort to train their officers to detect or recognize medical emergencies in the people their officers arrested or to provide or obtain any medical attention for Decedent Thomas.

57.   At approximately 7:13 p.m. Decedent Thomas was placed in a cell at Dauphin County Booking Center.

58.   At approximately 8:04 p.m. Decedent Thomas is seen on surveillance video

falling backwards on to the floor and hitting his head. Decedent Thomas then suffered cardiac arrest and "coded" on the floor of the Booking Center cell.

59.   Shortly thereafter, DCP John Doe(s) and Dauphin County Prison medical staff arrived to find Decedent Thomas with white powder still on his lips. Decedent Thomas was unresponsive, pulseless and apneic.

60.   Decedent Thomas falling backwards on to the floor during cardiac arrest was recorded on a Booking Center camera.

61.   At approximately 8:24 p.m. Decedent Thomas was transported by emergency medical technicians to UPMC Pinnacle Harrisburg Hospital for medical treatment.

62.   Decedent Thomas remained hospitalized at UPMC Pinnacle Harrisburg Hospital until December 17, 2019.

63.   At approximately 5:05 p.m. on December 17, 2019, Decedent Thomas died, and after an autopsy was performed, the cause of death was determined to be cocaine and fentanyl toxicity.

64.   On December 14, 2019, after denying Decedent Thomas the urgent medical care he needed, Defendant Foose prepared and signed an Affidavit of Probable Cause alleging that she observed Decedent Thomas consume crack cocaine and criminally charged him with Tampering with Evidence. See Exhibit B, page 4.

65.   On December 27, 2019, Defendant Harrisburg Police, in an attempt to obtain negative information regarding Decedent Thomas, directed a police Sargent to the home of Decedent Thomas' sister Sherelle Thomas where she was coerced to sign a consent form to search the contents of Decedent Thomas' cellular phone.

66.   In an article published by Penn Live on January 17, 2020, Harrisburg Mayor Eric

Papenfuse admitted that it is Harrisburg Police Department policy to take a

person to the hospital rather than the booking center if they have consumed

illegal narcotics in a way that could jeopardize their health and welfare. Mayor

Papenfuse is quoted as saying Decedent Thomas "should have received urgent

medical care, and I deeply regret that he did not." See Exhibit C.

**<u>FEDERAL CLAIMS</u>**

**COUNT I:   Sherelle Thomas, Administrator of the Estate of Terelle Thomas, Deceased -v- Defendants Officer Daril Foose, Probation Officer Dan Kinsinger, Officer Scott Johnsen, Officer Adrienne Salazar, Officer Travis Banning, Officer Brian Carriere, Harrisburg Police John Does and DCP John Does. (Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S. Constitution, addressable via 42 U. S. C. §1983; Conspiracy)**

67.   The Allegations contained in all preceding Paragraphs are here incorporated and

included by reference as if fully set forth here.

68.   At all times relevant hereto, Defendants Officer Daril Foose, Probation Officer

Dan Kinsinger, Officer Scott Johnsen, Officer Adrian Salazar, Officer Travis

Banning and Officer Brian Carriere (collectively "Harrisburg Police Officers"),

Harrisburg John Doe Police Officers 1 – 5 (collectively "Harrisburg John Does"),

and DCP John Doe Prison Officials 1-5 (collectively "DCP John Does")

individually and/or jointly were, at all times relevant hereto, acting under color of

law and were aware that Decedent Thomas had a serious medical need,

specifically that Decedent Thomas had swallowed dangerous narcotics.

69.   Despite knowing of the decedent's serious medical needs, the Harrisburg Police

Officers, Harrisburg John Does, and DCP John Does were each deliberately and

maliciously indifferent to those medical needs of Decedent Thomas and agreed and conspired among themselves to deny him adequate care, and then to cover and conceal their efforts.

70.    In furtherance of their agreement and conspiracy, Defendants Harrisburg Police Officers, Harrisburg John Does, and DCP John Does failed to obtain for him adequate medical care.

71.    Defendants Harrisburg Police Officers, Harrisburg John Does, and DCP John Does, in so agreeing and conspiring to deny Decedent Thomas adequate medical care, despite knowing of his serious medical needs, and then actually denying him adequate medical care, were so outrageous and malicious and sadistic that it would utterly shock the conscience of a reasonable individual.

72.    As a direct and proximate result of said Defendants' individual and/or joint deliberate and malicious indifference to the serious medical needs of Decedent Thomas, and the conspiracy and agreement among them, Decedent Thomas was held in the Booking Center, instead of being sent to a hospital, denied proper care and eventually died.

73.    Defendants Harrisburg Police Officers, Harrisburg John Does, and DCP John Does acts and failures to act, under color of law, violated Decedent Thomas's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the United States of America and the Commonwealth of Pennsylvania and are redressed here pursuant to 42 U. S. C. §1983.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants

Harrisburg Police Officers, Harrisburg John Does, and DCP John Does, individually

and/or jointly, and requests all appropriate relief in an amount in excess of FIVE

MILLION ($5,000,000.00) DOLLARS, including, but not limited to, compensatory

damages, court costs, punitive damages, attorneys fees and all other relief as the Court

deems appropriate.

**COUNT II:   Sherelle Thomas, Administrator of the Estate of Terelle Thomas, Deceased -v- Defendants Officer Daril Foose, Probation Officer Dan Kinsinger, Officer Scott Johnsen, Officer Adrienne Salazar, Officer Travis Banning, Officer Brian Carriere, Harrisburg Police John Does, and DCP John Does. (Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S. Constitution, addressable via 42 U. S. C. §1983; Failure to Intervene)**

74.    The Allegations contained in all preceding Paragraphs are here incorporated and

included by reference as if fully set forth here.

75.    As indicated above, Harrisburg Police Officers, Harrisburg John Does, and DCP

John Does individually and/or jointly, denied the decedent emergency medical

care.

76.    As the denial of medical treatment continued, none of the individuals present

intervened to stop the denial of medical care or otherwise bring it to a halt.

77.    This failure to intervene in the denial of emergency medical treatment was so

malicious and objectively unreasonable that it would shock the conscience of a

reasonable person.

78.    Defendants' failure to intervene exceeded the normal standards of decent

conduct, and was willful, malicious, oppressive, outrageous, and unjustifiable.

Therefore, punitive damages are necessary and appropriate.

79.    As a direct and proximate result of Defendants' failure to intervene as more

particularly described above, Decedent Thomas's rights protected under the

Fourth and Fourteenth Amendments were violated, and the decedent suffered

injury as a result.

80.   Defendants subjected Decedent Thomas to these deprivations of rights

unreasonably, intentionally, wantonly, outrageously, and with conscious and

reckless disregard for whether decedent's rights would be violated by their

actions.

81.   As a direct and proximate result of Defendants' failure to intervene, Decedent

Thomas suffered deprivations of his rights, physical injuries, pain and suffering,

emotional distress, and mental anguish, all to decedent's great detriment and

loss.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants

Harrisburg Police Officers, Harrisburg John Does, and DCP John Does, individually

and/or jointly, and requests all appropriate relief in an amount in excess of FIVE

MILLION ($5,000,000.00) DOLLARS, including, but not limited to, compensatory

damages, court costs, punitive damages, attorneys fees and all other relief as the Court

deems appropriate.

**COUNT III:   Sherelle Thomas, Administrator of the Estate of Terelle Thomas,
Deceased -v- Dauphin County, DCAP John Doe Supervisory Officers, DCP John
Doe Prison Officials
(Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S.
Constitution, addressable via 42 U. S. C. §1983; Failure to Train, Supervise,
Control or Discipline)**

82.   The Allegations contained in all preceding Paragraphs are here incorporated and

included by reference as if fully set forth here.

83.  Dauphin County and DCAP John Doe Supervisory Officers, have exclusive management and control of the policies and practices of Dauphin County Adult Probation regarding the method and manner of recognizing individuals in custody whom require emergency medical care and are responsible for insuring that members of the Dauphin County Adult Probation otherwise conduct themselves in a lawful manner in undertaking and performing their duties. Defendants Dauphin County and DCAP John Does are vested with the authority to establish policies or customs, practices and usages of Dauphin County Adult Probation through training, supervision, discipline and otherwise controlling the officers of Dauphin County Adult Probation.

84.  Dauphin County and DCP John Doe Prison Officials, have exclusive management and control of the policies and practices of Dauphin County Booking Center regarding the method and manner of recognizing individuals in custody whom require emergency medical care and are responsible for insuring that corrections officers working in the Booking Center otherwise conduct themselves in a lawful manner in undertaking and performing their duties. Defendants Dauphin County and DCP John Does are vested with the authority to establish policies or customs, practices and usages of the Booking Center through training, supervision, discipline and otherwise controlling the officers of Booking Center.

85.  Defendants Dauphin County, DCAP John Does, and DCP John Does violated the Decedent's rights by the custom and practice of failing to train, instruct, supervise, control and discipline the probation officers of Dauphin County Adult

Probation and the corrections officers of Dauphin County Prison in recognizing individuals in custody whom require emergency medical care. Said customs, practice and usage caused the deprivation of decedent's rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, other laws of the United States, and the laws of the Commonwealth of Pennsylvania.

86.    There exists within Dauphin County Adult Probation and the Dauphin County Booking Center policies or customs, practices and usages that are so pervasive that they constitute the policies of the Probation Department and Booking Center, such that they are and were the moving force behind and thereby caused the constitutional deprivations of the Decedent as have been set forth herein.

87.    The polices, customs, practices and usages that exist include the following:

- The officers of DCAP conduct traffic stops without regard for the lack of reasonable suspicion or probable cause, or without regard for the legality of the stop;

- The officers of DCAP and the Dauphin County Booking Center fail to render emergency medical care to persons in custody without regard for whether the individual faces imminent death;

- The officers of DCAP engage in conduct that violates the constitutional rights of citizens with whom they come in contact, including, but not limited to arresting, and detaining people in violation of the constitution and laws, both by the acts and means by which they are accomplished;

- The officers of DCAP and the Dauphin County Booking Center conspire

with Harrisburg police officers to "cover" for and protect one another from

criminal and/or civil sanctions that might arise from the violation of the

constitutional rights of a citizen.

88.   As a result of Dauphin County, DCAP John Does, and DCP John Does' failure to

train, discipline or supervise their officers, they deprived Terelle Thomas of his

rights to be from the denial of medical care and unlawful and unreasonable

seizure in violation of the Fourth and Fourteenth Amendments to the Constitution

of the United States and remediable under 42 U.S.C. §1983.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants

Dauphin County, DCAP John Does, and DCP John Does individually and/or jointly, and

requests all appropriate relief in an amount in excess of FIVE MILLION ($5,000,000.00)

DOLLARS, including, but not limited to, compensatory damages, court costs, punitive

damages, attorneys fees and all other relief as the Court deems appropriate.

**COUNT IV:   Sherelle Thomas, Administrator of the Estate of Terelle Thomas, Deceased -v- Harrisburg City Police Department,  Harrisburg Police John Does (Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S. Constitution, addressable via 42 U. S. C. §1983; Failure to Train, Supervise, Control or Discipline)**

89.   The allegations contained in all preceding Paragraphs are here incorporated and

included by reference as if fully set forth here.

90.   Harrisburg Police and Harrisburg Police John Does, have exclusive management

and control of the policies and practices of the Harrisburg Police Department

regarding the method and manner of recognizing individuals in custody whom

require emergency medical care and are responsible for insuring that members

of the Harrisburg Police Department otherwise conduct themselves in a lawful manner in undertaking and performing their duties. Defendants Harrisburg Police and Harrisburg Police John Does are vested with the authority to establish policies or customs, practices and usages of the Harrisburg Police Department through training, supervision, discipline and otherwise controlling the officers of Harrisburg Police Department.

91.   Defendants Harrisburg Police and Harrisburg Police John Does violated the Decedent's rights by the custom and practice of failing to train, instruct, supervise, control and discipline the officers of the Harrisburg Police Department in recognizing individuals in custody whom require emergency medical care. Said customs, practice and usage caused the deprivation of decedent's rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, other laws of the United States, and the laws of the Commonwealth of Pennsylvania.

92.   There exists within Harrisburg Police Department policies or customs, practices and usages that are so pervasive that they constitute the policies of the Harrisburg Police Department, such that they are and were the moving force behind and thereby caused the constitutional deprivations of the Decedent as have been set forth herein.

93.   The polices, customs, practices and usages that exist include the following:

•   The officers of the Harrisburg Police Department conduct traffic stops without regard for the lack of reasonable suspicion or probable cause, or without regard for the legality of the stop;

- The officers of the Harrisburg Police Department fail to render emergency medical care to persons in custody without regard for whether the individual faces imminent death;

- The officers of the Harrisburg Police Department engage in conduct that violates the constitutional rights of citizens with whom they come in contact, including, but not limited to arresting, and detaining people in violation of the constitution and laws, both by the acts and means by which they are accomplished;

- The officers of the Harrisburg Police Department conspire with officers of DCAP and the Dauphin County Booking Center to "cover" for and protect one another from criminal and/or civil sanctions that might arise from the violation of the constitutional rights of a citizen.

94. As a result of Harrisburg Police and Harrisburg Police John Does' failure to train, discipline or supervise their officers, they deprived Terelle Thomas of his rights to be from the denial of medical care and unlawful and unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and remediable under 42 U.S.C. §1983.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants Harrisburg Police and Harrisburg Police John Does, individually and/or jointly, and requests all appropriate relief in an amount in excess of FIVE MILLION ($5,000,000.00) DOLLARS, including, but not limited to, compensatory damages, court costs, punitive damages, attorneys fees and all other relief as the Court deems appropriate.

**COUNT V: Sherelle Thomas, Administrator of the Estate of Terelle Thomas,**
**Deceased -v- All Defendants**
**(Failure to Render Medical Care)**

95.    The Allegations contained in all preceding Paragraphs are here incorporated and

included by reference as if fully set forth here.

96.    At all times mentioned herein, the failure to render medical care to Terelle

Thomas by Defendants Daril Foose, Dan Kinsinger, Scott Johnsen, Adrienne

Salazar, Travis Banning, Brian Carriere, and Harrisburg Police John Does was a

violation of Decedent's constitutional rights in that it amounted to a deprivation of

health life, and property in violation of the Fourth Amendment and the Due

Process Clause of the Fourteenth Amendment to the Constitution of the United

States, in each and all of the following ways:

- By performing their duties as police officers and first responders
  with deliberate indifference for the serious medical condition of
  Terelle Thomas;

- By failing to take appropriate steps to protect Terelle Thomas from
  a known danger when the defendants were aware of a substantial
  risk of serious injury from Terelle Thomas' symptoms.

- By failing to make medical observations (check his breathing or
  pulse) or perform treatments (first aid or CPR) when Terelle
  Thomas' condition was so obvious that even a layperson would
  easily recognize the necessity for medical attention.

- By failing to take the appropriate steps when the failure to treat

Terelle Thomas' medical condition could and did result in further significant injury and the unnecessary and wanton infliction of death;

- By failing to take the appropriate steps when the existence of Terelle Thomas' medical condition was such that a reasonable police officer would find it important and worthy of comment or treatment;

- By failing to take the appropriate steps to protect Terelle Thomas when he was in danger;

- By refusing to diagnose and treat Terelle Thomas' serious medical condition while he was in custody, causing him to suffer and sustain permanent injury and death;

- By failing and refusing to call for emergency medical help for symptoms that defendants could not or would not treat;

- By deliberately denying decedent medical attention and causing decedent's death;

- By failing to follow the policies and procedures of Harrisburg Police Department and/or Dauphin County Adult Probation ;

97.   At all times mentioned herein Defendants Daril Foose, Dan Kinsinger, Scott Johnsen, Adrienne Salazar, Travis Banning, Brian Carriere, Harrisburg Police John Does, Dauphin County, DCAP John Does, and DCP John Does individually and/or jointly were deliberately indifferent to the serious medical condition of

23

Decedent Terelle Thomas, notwithstanding notice and actual knowledge thereof.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants Harrisburg Police Officers, Harrisburg John Does, Dauphin County, DCAP John Does, and DCP John Does, individually and/or jointly, and requests all appropriate relief, in an amount in excess of FIVE MILLION ($5,000,000.00) DOLLARS, including, but not limited to, compensatory damages, court costs, punitive damages, attorneys fees and all other relief as the Court deems appropriate.

## STATE LAW CLAIMS

**COUNT VI:   Sherelle Thomas, Administrator of the Estate of Terelle Thomas, Deceased -v- All Defendants**
**(Negligence)**

98.     The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

99.     At all times relevant hereto, all Defendants individually and/or jointly, were under a duty and obligation to recognize and identify that Decedent Thomas had serious medical problems and then to divert him from a prison environment to a hospital so that he might receive treatment instead of punishment.

100.    At all times relevant hereto, said Defendants individually and jointly breached that duty by failing to act on the knowledge that Decedent Thomas faced serious medical issues and failing to divert him from a prison environment to a hospital at which he would have received treatment instead of incarceration.  Defendants acted unlawfully, wantonly, unreasonably, maliciously, unnecessarily and/or with deliberate and reckless indifference to the health and welfare of the Decedent.

101.    As a direct and proximate result of that breach, decedent Terelle Thomas

suffered deprivations of his rights, physical injuries, pain and suffering, emotional

distress, mental anguish, and eventually death on December 17, 2019 at the age

of thirty-one (31) years old.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants,

individually and/or jointly, and requests all appropriate relief, in an amount in excess of

FIVE MILLION ($5,000,000.00) DOLLARS, including, but not limited to, compensatory

damages, court costs, punitive damages, attorneys fees and all other relief as the Court

deems appropriate.

### COUNT VII:  Plaintiff T.T., a minor -v- All Defendants
### (Wrongful Death)

102.   The Allegations contained in all preceding Paragraphs are here incorporated and

included by reference as if fully set forth here.

103.   Decedent's sole survivor is his daughter, T.T., a minor, who is entitled to recover

damages for his death, and on whose behalf this action is brought pursuant to

the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. Section 8301 et seq.

104.   Decedent's death was caused by the intentional, malicious, and/or grossly

negligent conduct of Defendants, individually and/or jointly.

105.   As described above, Defendants unlawfully, wantonly, unreasonably, maliciously,

unnecessarily and/or with deliberate and reckless indifference to the health and

welfare of the Decedent and the Plaintiffs, caused the death of decedent, Terelle

Thomas, by denying him emergency medical care.

106.   As a direct and proximate result of Defendants' individual and joint actions,

decedent Terelle Thomas was unnecessarily caused extreme physical pain,

mental anguish and suffering, and death, and was deprived of the enjoyment and pleasure of life.

107.   As a further direct and proximate result of Defendants' actions, decedent's survivor has suffered serious emotional pain and economic loss due to the wrongful death of her father, Terelle Thomas.

108.   As a direct and proximate result of defendant's actions, decedent's daughter is entitled to recover damages for:

(a)   the loss of the value of decedent's services;

(b)   loss of decedent's comfort and society;

(c)   contributions decedent would have made to the plaintiffs from his labor;

(d)   all damages recoverable under the statute.

**WHEREFORE**, Plaintiff T.T., a minor, demands judgment in her favor and against Defendants, individually and/or jointly, and request all appropriate relief, including, in an amount in excess of FIVE MILLION ($5,000,000.00) DOLLARS, including but not limited to, compensatory damages, court costs, attorneys fees and all other relief as the Court deems appropriate.

## COUNT VIII: Estate of Terelle Thomas -v- All Defendants
## (Survival Action)

109.   The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

110.   As a direct and proximate result of Defendants' actions as described herein, Terelle Thomas suffered grievous bodily injury, and mental and physical pain and

suffering.

111.    From the time of his arrest until the time of his death, and throughout his

detention, Decedent Thomas was conscious and aware of the beatings and other

harmful acts to which he was subjected by Defendants, individually and/or jointly,

and felt extreme pain and suffering as a result thereof.

112.    On behalf of the Estate of Terelle Thomas, Sherelle Thomas, Administrator of the

Decedent's Estate, brings this action under the Pennsylvania Survival Act, 42 Pa.

C.S.A. Section 8302, and claims for Terelle Thomas's Estate compensation for

all damages suffered by Terelle Thomas and recoverable under the statute by

reason of the grievous bodily injury, mental and physical pain and suffering

caused him by the Defendants as described above.

        **WHEREFORE**, the Estate of Terelle Thomas demands judgment in its favor and

against Defendants, individually and/or jointly, and requests all appropriate relief, in an

amount in excess of FIVE MILLION ($5,000,000.00) DOLLARS, including, but not

limited to, compensatory damages, court costs, attorneys fees and all other relief as the

Court deems appropriate.

                                        Respectfully submitted,

                                        **MINCEY FITZPATRICK ROSS, LLC**

                                        /s/ Kevin V. Mincey
                                        Kevin V. Mincey


                                        /s/ Riley H. Ross III
                                        Riley H. Ross III
Date:  July 10, 2020                    ***Attorneys for Plaintiffs***

**EXHIBIT A**




# City of Harrisburg, Bureau of Police

123
Walnut St
Harrisburg PA, 17101
717-255-3131

<u>Case Number:</u>   **19-1214-033-002**                       <u>ORI #:</u>   PA0220200

---

<u>Location of Occurrence</u>   **At intersection of S 15TH ST / SWATARA ST (DJ: 12-2-05; Zone: 513)**

<u>Day / Date / Time ( Reported )</u>                <u>Day / Date ( of Occurrence )</u>
**Saturday, December 14, 2019 18:22**          **Saturday, December 14, 2019 18:22**      To:   **Saturday, December 14, 2019 19:09**

Reporting Officer:   **FOOSE, DARIL**                                               **Follow up ?:**          **Copies To:**

Case Status:       **OPEN**                                                      ☐ Yes        ☐ Folder
                                                                          ☐ No         ☐ Detective
                                                                                       ☐ Juv. Prob.
**Highest Ranked Crime: 780-113-A30 CSDDCA-MAN/DEL/POSS W INT TO DEL SUB, BEING UNREG**         ☐ D. A.
                                                                                       ☐ Other: _____

---

| Victim |
|---|

| 1 | Organization Name<br>**COMMONWEALTH OF PA**<br><u>Victim of :</u>  **1: 780-113-A30 CSDDCA-MAN/DEL/POSS W INT TO DEL SUB, BEING UNREG**<br>**2: 780-113-A31II CSDDCA-POSS SM AMT MARIJUANA FOR DIST/NOT SALE**<br>**3: 780-113-A32 CSDDCA-USE/POSS W INT USE DRUG PARAPHERNALIA**<br>**4: 4910-1 TAMPER WITH OR FABRICATE PHYS EVID-ALTER/DESTROY** |
|---|---|

| Driver |
|---|

| 1 | <u>Name - ( Last, First, Middle )</u><br>**HENDERSON, THERESEA N** |
|---|---|

| Mentioned |
|---|

| 1 | <u>Name - ( Last, First, Middle )</u><br>**THOMAS, TONYKA** |
|---|---|
| 2 | <u>Name - ( Last, First, Middle )</u><br>**THOMAS, MARY** |

| Passenger |
|---|

| 1 | <u>Name - ( Last, First, Middle )</u><br>**WILKERSON, JAY** |
|---|---|



# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131



Case Number:  **19-1214-033-002**                    ORI #: **PA0220200**

| Arrestee |
|---|

**1**

| Name - ( Last, First, Middle ) | Occupation: | Social Security # | Citizenship |
|---|---|---|---|
| **THOMAS, TERELLE L** | | **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** | |
| Address **323 S 18TH ST** | Phone(s) | | Drivers License Info. ( State / # / Class) |
| **HARRISBURG, PA 17104** | | | **PA / 28792614** |

| | Hair: **BROWN** | Race: **BLACK OR AFRICAN AMERICAN** | Height: **6-02** |
|---|---|---|---|
| Age: **31**    D. O. B.: **1/12/1988** | Eyes: **BROWN** | Sex: **F** | Weight: **230** |

| Arrested For:  **1: 780-113-A30 CSDDCA-MAN/DEL/POSS W INT TO DEL SUB, BEING UNREG** | Date Arrested **12/14/2019** |
|---|---|
| **2: 780-113-A31II CSDDCA-POSS SM AMT MARIJUANA FOR DIST/NOT SALE** | Arrested By:  **1: DARIL FOOSE [033]** |
| **3: 780-113-A32 CSDDCA-USE/POSS W INT USE DRUG PARAPHERNALIA** | |
| **4: 4910-1 TAMPER WITH OR FABRICATE PHYS EVID-ALTER/DESTROY** | |



# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131



Case Number:   **19-1214-033-002**                    ORI #: **PA0220200**

| Property | | | | | | |
|---|---|---|---|---|---|---|

Role: **EVIDENCE**
Category: **CREDIT CARDS AND CHECKS**
Type:

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1961420170110103 | Item 4. Description: $360.00 US CURRENCY (1) $50.00 (14) $20.00 (3) $10.00 | | | | 1 | $0.00 |

Tag #  dlf33      Location                                              Seized By  FOOSE, DARIL
                  1521-MAIN EV-DMV

Role: **EVIDENCE**
Category: **DRUG CLASS**
Type:

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1961420170110102 | Item 1. Description: LOOSE CRACK COCAINE | | | | 0 | $0.00 |

Tag #  dlf33      Location                                              Seized By  FOOSE, DARIL
                  1021-MAIN EV-DMV

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1961420170110103 | Item 5. Description: MARIJUANA INSIDE CLEAR PLASTIC BAGGIE | | | | 0 | $0.00 |

Tag #  dlf33      Location                                              Seized By  FOOSE, DARIL
                  1021-MAIN EV-DMV

Role: **EVIDENCE**
Category: **DRUG PARAPHERNALIA**
Type:

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1961420170110103 | Item 2. Description: CLEAR PLASTIC BAGGIE | | | | 1 | $0.00 |

Tag #  dlf33      Location                                              Seized By  FOOSE, DARIL
                  211-MAIN EV

Role: **EVIDENCE**
Category: **DRUG PARAPHERNALIA**
Type: **MISCELLENOUS**

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1961420170110103 | Item 3. Description: DIGITIAL SCALE WITH COCAINE RESIDUE | | | | 1 | $0.00 |

Tag #  dlf33      Location                                              Seized By  FOOSE, DARIL
                  211-MAIN EV



# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131



Case Number:  **19-1214-033-002**                    ORI #:  **PA0220200**

Role: **EVIDENCE**
Category: **ELECTRONICS**
Type:

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1961420170110103 | Item 6. Description: SAMSUNG CELL PHONE | | | | 1 | $0.00 |

Tag #  dlf33        Location                                    Seized By  FOOSE, DARIL
                    211-MAIN EV

Role: **EVIDENCE**
Category: **MISC**
Type:

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1919000101420 | Item 11. Description: WATCHGUARD VIDEO UNIT 206 12/14/19 | | | | 1 | $0.00 |

Tag #  whk164       Location                                    Seized By
                    FORENSICS

Role: **RECOVERED**
Category: **CLOTHING, FURS**
Type: **JACKET**

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1919002102044 | Item 8. Description: BLACK JACKET | | | | 1 | $0.00 |

Tag #  DMC60        Location                                    Seized By  CRISTILLO, DOMINIC
                    4001-MAIN EV-RM 17

Role: **RECOVERED**
Category: **CLOTHING, FURS**
Type: **SHIRT**

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1919002102045 | Item 9. Description: SWEATSHIRT | Mfg.: NIKE | | BLACK | 1 | $0.00 |

Tag #  DMC60        Location                                    Seized By  CRISTILLO, DOMINIC

Role: **RECOVERED**
Category: **CLOTHING, FURS**
Type: **SHOES**

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1919002102043 | Item 7. Description: BOOTS | Mfg.: TIMERLAND | | TAN | 1 | $0.00 |

Tag #  DMC60        Location                                    Seized By  CRISTILLO, DOMINIC
                    4001-MAIN EV-RM 17



# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131



<u>Case Number:</u>  **19-1214-033-002**                                        <u>ORI #:</u>  **PA0220200**

| Role: **RECOVERED** | | | | | | |
|---|---|---|---|---|---|---|
| Category: **CLOTHING, FURS** | | | | | | |
| Type: **SOCKS** | | | | | | |

| #'s | Article | Brand / Model | Serial #/NIC # | Color | Quantity | Value |
|---|---|---|---|---|---|---|
| 1919002102046 | Item 10. Description: PAIR OF SOCKS | | | BLACK | 1 | $0.00 |

Tag #  DMC60        Location                                                          Seized By  CRISTILLO, DOMINIC
4001-MAIN EV-RM 17



# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131

Case Number:    **19-1214-033-002**                    ORI #: **PA0220200**

| Narrative(s) |
|---|

Assigned:  **12/14/2019 19:20:42**          to officer: **FOOSE, DARIL**

Approved:                                              by: ,

## **INITIAL CRIME REPORT**    12/14/19@1822HRS        DFOOSE
## C19-1214-033-002

On 12/14/19, I was in full SCU uniform of the day operating an unmarked Harrisburg City Police Vehicle. My partner for this date was APO Kinsinger.

At approximately 1815HRS, I observed a Jeep parked at the intersection of S 15th ST/ Swatara Street. A male exited the passenger seat and walked west bound on Swatara Street. As I circled the area to see if this male was meeting with someone, I was traveling north bound on Daisy Street and observed the male, who was later identified as Jay Wilkerson,  walking back towards the Jeep after leaving the area to the rear of Queenies Bar. Immediately after seeing this male, I observed another male, later identified as Terelle Thomas, walking quickly from the rear of Queenies Bar as well. When Wilkerson was leaving, it appeared as if he was laughing and having a conversation with Thomas. I was able to position my vehicle to travel south bound on S 15th St, towards Swatara Street. In doing so, I observed the Jeep fail to come to a complete stop at the stop sign at S 15th ST/ Swatara Street. A traffic stop was conducted in the area of S 17th ST/ Holly Street.

Upon approach, the driver was identified as Theresea Henderson. The passenger was identified as Jay Wilkerson. As I went to identified Terelle Thomas, he spoke to me like he had "cotton mouth". When I asked him his name, he talked as if he had a large amount of an unknown item inside of his mouth. As I looked at him, I could see strands, almost gum and paste like, forming in his mouth as he is talking to me. From my knowledge, training, and experience, this behavior is common for individuals who have ingested an item to conceal it from police. I notified my partner, APO Kinsinger, that I believed Thomas was concealing something in his mouth and to detain him. APO Kinsinger was able to detain Thomas and yelled for him to spit out the items inside of his mouth. Where Thomas did spit was a white liquid that resembled crack cocaine attempted to be swallowed.  As other units arrived on scene, both Wilkerson and Henderson were detained.

After Henderson and Wilkerson were detained, I was able to go and speak to Thomas. Thomas's mouth indicted to me that he had ingested a large amount of cocaine. His lips were completely pasted white. His tongue and spit were white and forming a large amount of paste inside of his mouth. Thomas's face appeared to be covered in a white powdery substance.  I did verbally mirandize Thomas, to which he stated he understood his rights. Thomas stated the only drug's he had on him was a small amount of marijuana. He stated that he just ate a candy cigarette and that is why his lips were so white. As APO Kinsinger was searching Thomas, he unzipped his black hoodie in my presence. In doing so, small crack cocaine rocks did fall out of Thomas's shirt.

I did verbally mirandize Wilkerson. He advised he understood his rights. Wilkerson stated that he did not have anything illegal on his person and advised that there was nothing illegal inside the vehicle. Wilkerson did give verbal consent to search his person, to which nothing was found.

I did verbally mirandize Henderson, to which she stated she understood her rights. Henderson stated she did not know of any drugs inside the vehicle. She did give verbal consent to search the vehicle, which is registered to her. Henderson also provided verbal consent to search her person, which no illegal items were found.

A search of the vehicle was conducted. Where Thomas was sitting, multiple crack cocaine rocks were located on the seat and on the floor. These rocks were collected for evidence.




# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131

<u>Case Number:</u>    **19-1214-033-002**                    <u>ORI #:</u> **PA0220200**

Furthermore on Thomas, the following items were located:

- In his hand when APO Kinsinger was detaining him, $130.00 in US currency (5) $20.00; (3) $10.00.
- In his pocket $230.00 in US currency (1) $50.00; (9) $20.00
- One Samsung cell phone
- One digital scale with cocaine residue, functioning.
- One clear plastic baggie
- One clear plastic baggie with marijuana inside of it

It should be noted that during the search of the vehicle and all occupants of the vehicle, there was no paraphernalia that suggested crack cocaine use (IE crack pipes, push rods, chor boy). Furthermore, there were no candy cigarettes inside the vehicle or on any occupants.

Thomas was transported to the Central Booking Center by Officer Carriere. Prior to transport, Cpl Johnsen advised that Thomas advised him that he did not eat any illegal items.

At base, all evidence was logged into secondary evidence. The drugs will be sent to PSP lab for further analysis and official weight. The cell phone will be kept in evidence for a search warrant to be conducted. The money found on Thomas will be sent for ION scan.

Thomas will be charged with the following offense:
PWI-crack
Possession of Small Amount of Marijuana
Possession of Drug Paraphernalia
Tampering with Evidence

After Thomas was transported to the Central Booking Center, I was advised that he had a seizure and needed to go to the Harrisburg Hospital. I was advised that Lifeteam personal that they had sucked 40ml of cocaine out of Thomas while enroute to the hospital that he had ingested.



# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131

Case Number:  **19-1214-033-002**                     ORI #: **PA0220200**

Assigned:  **12/14/2019 20:48:06**           to officer:  **JOHNSEN, SCOTT**
Approved:                                                          by: **,**

## SUPPLEMENTAL REPORT

On 12/14/19 at about 1822 hours I responded to the area of S 17th and Holly streets to assist on a traffic stop conducted by Officer Foose. Upon arrival I found that Probation Officer Dan Kinsinger had the rear seat passenger detained who was Terelle Thomas. Officer Foose was in the process of detaining the driver, Theresa Henderson. Officer Foose requested that the front seat passenger, Jay Wilkerson also be detained.

PO Kinsinger advised that he thought Thomas had ingested crack cocaine due to a white powdery substance around Thomas's mouth. There was also crack remnants in the back seat of the vehicle. I asked Thomas multiple times if he ingested anything and he insisted that he did not and that the white on his mouth was from a candy cigarette. I advised him that if he did ingest something we needed to know so that we could inform medical staff because he could possibly die. Thomas again insisted that he did not ingest anything.

I also spoke with Wilkerson and Henderson. Both individuals stated that they did not see Thomas ingest anything and did not know that he had crack.

I remained on scene until Thomas was transported by Officer Carriere. At that time Henderson and Wilkerson were free to leave.

On 12/15/19 at about 1420 hours Tonyka Lugaro came into the lobby stating that she was Thomas's sister. She was requesting Thomas's property. I told her that any property we did have would be unavailable until during the week. She understood. She also asked what happened because she did not know. I advised her on the basics of the incident. She also provided me with her mothers information, Mary Thomas in case anyone needed to be contacted again. I was then able to look up the case and also spoke to Officer Foose. All of the property that was in Thomas' possession is evidence in this case. I called Tonyka back and advised her of this information.



# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131



Case Number:    **19-1214-033-002**                    ORI #: **PA0220200**

Assigned:  **12/14/2019 21:55:47**              to officer: **SALAZAR, ADRIENNE**
Approved:                                                    by: **,**

## **Supplemental Report**                    **12/14/2019 at 2222 hours**
### **19-1214-033-002**

On 12/14/2019 I was on duty in full uniform assigned to the Harrisburg Police Housing Unit and operating marked police vehicle 297. At approximately 1822 hours, I responded S. 17th St. and Holly St. to assist PO Foose with a traffic stop. Upon arrival I assisted APO Kinsinger with securing Terelle Thomas as he conducted a search of his person.

I was advised by PO Foose that she believed Mr. Thomas ingested crack cocaine and he verbally denied it several times when asked in my presence. A small bag of suspected marijuana buds and a digital scale with white powder residue on it were located in Mr. Thomas' pockets. I remained with Mr. Thomas as officers conducted a search of the vehicle. I observed a white powder substance covering Mr. Thomas' lips and he continued to deny having ingested crack cocaine. I informed him that it was important for us to know what he ingested for his safety in the event that it would have any ill affect on his health. He refused to tell me what he ingested.

During my interaction with Mr. Thomas he appeared conscious and was able to speak with me in a coherent manner. I asked him on two separate occasions if he was feeling okay and he stated that he was okay. I closely observed him while on scene and his condition did not appear to worsen. It was determined that PO Carriere would transport Mr. Thomas to the Dauphin County Booking Center and I brought him to the caged compartment of marked police vehicle 206. This concluded my interaction with Mr. Thomas and I cleared from the scene. There is nothing further at this time.

End 123 .




# City of Harrisburg, Bureau of Police

123
Walnut St
Harrisburg PA, 17101
717-255-3131

Case Number:   **19-1214-033-002**                    ORI #: **PA0220200**

Assigned:  **12/14/2019 21:55:54**          to officer: **BANNING, TRAVIS**
Approved:  **12/18/2019 15:00:06**          by: **JOHNSEN, SCOTT**

## *Supplemental Report*  12/14/19  1822 hrs

19-1214-033-002

    On Saturday 12/14/19, I was working in full Police uniform operating marked unit 207 assigned to District 7 of Harrisburg City.  At around 1822 hrs I responded to the area of N 17th and Holly Sts to assist Officer Foose with a traffic stop.  Upon arrival Officer Foose had 3 individuals detained for a drug investigation after the stop. Officer Foose was questioning a TerelleThomas who was a passenger within the vehicle.  I observed that Thomas had a large amount of white residue around and on his lips. Officer Foose advised me that she believed that Thomas had eaten crack cocaine.  She advised me that Thomas had told her that the white residue on his lips was from him eating candy cigarettes. I asked Thomas what the substance on his lips was again, and he stated "candy cigarettes, the kind that come in a box".  I assisted Officer Foose with completing the search of the vehicle. Crack cocaine was in plain view on the rear passenger seat. There was no box of candy cigarettes to my knowledge that were located inside of the vehicle or on Thomas' person.  While I was on scene, Thomas never stated that he ate crack cocaine, and he did not act as if he was under the influence of anything, or seemed to becoming ill. I cleared the scene and this ended my involvement with this incident.

175 tjb





# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131

Case Number: **19-1214-033-002**

ORI #: PA0220200

Assigned: **12/14/2019 21:55:57**          to officer: **CARRIERE, BRIAN**
Approved: **12/16/2019 18:39:38**          by: **GALKOWSKI, JAMES THOMAS**

## *Transport Report*          12/14/19   18:47
19-1214-033-002

On Saturday 12/14/19 at 1847 hrs, I transported Terelle Thomas from the area of S 17th St and Holly St to the Dauphin County Booking Center. I was in full Police uniform. I was working on Patrol as the district 6 Officer. I was operating unit 206.

Prior to the prisoner transport, Officer Foose advised me that the prisoner, Terelle Thomas, may have ingested crack-cocaine, but he had been denying do so. I took possession of Thomas. I asked him if he ingested crack-cocaine and he told me that he did not. I placed him in the rear prisoner compartment of unit of 206. He told me that he was hot and asked me to lower the window for him. I did so. I ensured that the camera was activated. He was handcuffed behind his back. I did not secure him with a seat belt because the seat belt receptacle is not functional. I started the transport at 1847 hrs. The starting mileage was 14625.9. I arrived at the booking center at 1853 hrs. The ending mileage was 14627.9. I continued to check on Thomas throughout the transport. He told me that he was okay. I asked him if he had medical conditions. Thomas advised me that he suffers from a seizure disorder.

Once at the booking center, I advised the booking staff of Thomas' conditions. I advised that may have swallowed crack-cocaine. He was seen by medical staff at the booking center and was cleared to stay. The booking staff asked him several times if he ingested crack-cocaine. Again, he denied doing so.

Later in the evening, I was advised that Thomas had a medical emergency at the booking center and was transported to Harrisburg Hospital. I sent an email to Sergeant Abromitis and requested for the transport video to be saved.

This ended my involvement in this case.

End Carriere 163



# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131



Case Number:   **19-1214-033-002**                    ORI #: **PA0220200**

Assigned:  **12/14/2019 23:54:59**          to officer: **MCNAUGHTON, MARC**
Approved:                                                  by: ,

## 12/14/19  2330        Supplemental Report        McNaughton #411

On this date, at the request of Sgt Meik I responded to 323 s 18th St to attempt to make contact
with Linda Thomas, the sister of Terrel Thomas.   (Note: Sgt Meik requested 1st Platoon assist due to street
crimes ending their shift and he had to start the downtown detail)
.
I arrived at 323 S 18th St along with PO Restrepo and knocked on the door as well as the porch window
numerous times with no response. No lights were on in the residence at the time, nor was any movement seen or
heard. PO Restrepo was observing the second floor area of the residence while attempted contact and also saw
no lights nor movement during our attempted contact.
.
Upon clearing I updated Sgt Meik to the negative contact at the residence.  This ends my involvement with this
incident.
.
MM/411



# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131



Case Number: **19-1214-033-002**                    ORI #: **PA0220200**

Assigned: **12/15/2019 04:56:21**          to officer: **CRISTILLO, DOMINIC M**
Approved: **12/18/2019 02:03:26**          by: **MCNAUGHTON, MARC**

## SUPPLEMENTAL REPORT    UNIT 206    DISTRICT 6
## 12/15/2019  SUNDAY @0430 HOURS
## 19-1214-033-002

On 12/15/2019, I was in full police uniform operating police SUV 206. I was assigned to district 6 in the City of Harrisburg. I was tasked by CPL McNaughton to retrieve prisoner property from the booking center for a Terelle Thomas.

I arrived to the booking center at around 0430 hours and made contact with the on staff supervisor who gave me Thomas' property. I returned to base with the prisoner property, which included the following items: A black jacket, a black Nike sweatshirt, a pair of black socks, and Timberland boots. All of these items were packaged, placed and logged into the secondary evidence room, stored in locker 23. The property log was updated appropriately.

This concludes my involvement in this case.

END DMC 60




# City of Harrisburg, Bureau of Police
123
Walnut St
Harrisburg PA, 17101
717-255-3131

Case Number: **19-1214-033-002**　　　　　　　　ORI #: **PA0220200**

To protect confidential personal information of any witness or victim in this report, this printed document including, but not limited to, an address, telephone number, driver's license or Identification Card number, social security number, date of birth, etc..., is to be destroyed when valueless.

| Victim | | |
|---|---|---|
| **1** | Organization Name<br>**COMMONWEALTH OF PA** | |
| | Address<br>**123 WALNUT ST**<br>**HARRISBURG, PA 17101** | Phone<br>**BUSINESS: 1-(717) 558-6900** |

| Driver | | | |
|---|---|---|---|
| **2** | Name - ( Last, First, Middle )<br>**HENDERSON, THERESEA N** | Occupation | Social Security #　Citizenship |
| | Address<br>**2330 MAGNOLIA TERRACE**<br>**HARRISBURG, PA 17110** | Phone | Drivers License Info. ( State / # / Class ) |
| | | Hair: **BROWN**　Race: **BLACK OR AFRICAN AMERICAN** | Height: **5-07** |
| | Age: **34**　D. O. B.: **10/15/1985** | Eyes: **BROWN**　Sex: **F** | Weight: **200** |

| Mentioned | | | |
|---|---|---|---|
| **3** | Name - ( Last, First, Middle )<br>**THOMAS, TONYKA** | Occupation | Social Security #　Citizenship |
| | Address<br>**207 ORANGE ST**<br>**SELINSGROVE, PA 17870** | Phone<br>**HOME: 1-(717) 343-2085** | Drivers License Info. ( State / # / Class ) |
| | | Hair:　Race: | Height: |
| | Age: **UNK**　D. O. B.: | Eyes:　Sex: | Weight: |
| **4** | Name - ( Last, First, Middle )<br>**THOMAS, MARY** | Occupation | Social Security #　Citizenship |
| | Address<br>**1201 N FRONT ST**<br>**APT 401** | Phone | Drivers License Info. ( State / # / Class ) |
| | | Hair:　Race: | Height: |
| | Age: **UNK**　D. O. B.: | Eyes:　Sex: | Weight: |

| Passenger | | | |
|---|---|---|---|
| **5** | Name - ( Last, First, Middle )<br>**WILKERSON, JAY** | Occupation | Social Security #<br>**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**　Citizenship |
| | Address<br>**5032 WYNNEWOOD RD**<br>**HARRISBURG, PA 17109** | Phone | Drivers License Info. ( State / # / Class )<br>**PA / 28363389** |
| | | Hair: **BLACK**　Race: **BLACK OR AFRICAN AMERICAN** | Height: **5-09** |
| | Age: **33**　D. O. B.: **8/25/1986** | Eyes: **BROWN**　Sex: **M** | Weight: **200** |

**EXHIBIT B**

12/14/2019   19:41                           (FAX)                        P. 001/008

## POLICE CRIMINAL COMPLAINT
### COMMONWEALTH OF PENNSYLVANIA
VS.

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF:  DAUPHIN

Magisterial District Number: 12-2-05
MDJ: Hon.  PAUL J ZOZOS
Address:  1300 ROLLESTON ST
          DJ P ZOZOS
          HARRISBURG PA 17104

Telephone:  717-234-0949

**DEFENDANT:** (NAME and ADDRESS):

| First Name | Middle Name | Last Name | Gen. |
|---|---|---|---|
| TERELLE | L | THOMAS | |

323 S 18TH ST

HARRISBURG PA 17104
Telephone:

### NCIC Extradition Code Type

- [x] 1-Felony Full
- [ ] 2-Felony Ltd
- [ ] 3-Felony Surrounding States
- [ ] 4-Felony No Ext.
- [ ] 5-Felony Pend.
- [ ] 6-Felony Pend. Extradition Determ.
- [ ] A-Misdemeanor Full
- [ ] B-Misdemeanor Limited
- [ ] C-Misdemeanor Surrounding States
- [ ] D-Misdemeanor No Extradition
- [ ] E-Misdemeanor Pending
- [ ] F-Misdemeanor Pen. Extra. Determ.
- [ ] Distance:____

### DEFENDANT IDENTIFICATION INFORMATION

| Docket Number | Date Filed 12/14/2019 | OTN/LiveScan Number | Complaint/Incident Number 19-1214-033-002 | Request Lab Services? YES [ ]  NO [x] |
|---|---|---|---|---|

| GENDER | DOB 1/12/1988 | POB | Add'l DOB | Co-Defendant(s) [ ] |
|---|---|---|---|---|
| [ ] Male [x] Female | First Name | Middle Name | Last Name | Gen. |
| | AKA | | | |

| RACE | [ ] White | [ ] Asian | [x] Black | [ ] Native American | [ ] Unknown |
|---|---|---|---|---|---|

| ETHNICITY | [ ] Hispanic | [x] Non-Hispanic | [ ] Unknown |
|---|---|---|---|

| HAIR COLOR | [ ] GRY (Gray) | [ ] RED (Red/Aubn.) | [ ] SDY (Sandy) | [ ] BLU (Blue) | [ ] PLE (Purple) | [x] BRO (Brown) |
|---|---|---|---|---|---|---|
| | [ ] BLK (Black) | [ ] ONG (Orange) | [ ] WHI (White) | [ ] XXX (Unk./Bald) | [ ] GRN (Green) | [ ] PNK (Pink) |
| | [ ] BLN (Blonde / Strawberry) | | | | | |

| EYE COLOR | [ ] BLK (Black) | [ ] BLU (Blue) | [x] BRO (Brown) | [ ] GRN (Green) | [ ] GRY (Gray) |
|---|---|---|---|---|---|
| | [ ] HAZ (Hazel) | [ ] MAR (Maroon) | [ ] PNK (Pink) | [ ] MUL (Multicolored) | [ ] XXX (Unknown) |

| DNA | [ ] YES [x] NO | DNA Location | | WEIGHT (lbs.) 230 |
|---|---|---|---|---|
| FBI Number | | MNU Number | | Ft. HEIGHT in. |
| Defendant Fingerprinted: | [x] YES [ ] NO | | | 6  2 |
| Fingerprint Classification: | | | | |

### DEFENDANT VEHICLE INFORMATION

| Plate # | State | Hazmat [ ] | Registration Sticker (MM/YY) | Comm'l Veh. Ind. [ ] | School Veh. [ ] | Oth. NCIC Veh. Code | Reg. same as Def. [ ] |
|---|---|---|---|---|---|---|---|
| VIN | | Year | Make | Model | Style | Color | |

Office of the attorney for the Commonwealth  [ ] Approved  [ ] Disapproved because: _____

(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. See Pa.R.Crim.P. 507).

_____   _____   _____
(Name of the attorney for the Commonwealth)   (Signature of the attorney for the Commonwealth)   (Date)

I, DARIL FOOSE
(Name of the Affiant)
of City of Harrisburg, Bureau of Police
(Identify Department or Agency Represented and Political Subdivision)

(PSP/MPOETC -Assigned Affiant ID Number & Badge #

(Police Agency ORI Number)

do hereby state: (check appropriate box)
1.  [x] I accuse the above named defendant who lives at the address set forth above
    [ ] I accuse the defendant whose name is unknown to me but who is described as

    [ ] I accuse the defendant whose name and popular designation or nickname are unknown to me and whom I have
        therefore designated as John Doe or Jane Doe

    with violating the penal laws of the Commonwealth of Pennsylvania at [   301   ]      HARRISBURG
                                                                        (Subdivision Code)   (Place-Political Subdivision)

    At S 15TH ST / SWATARA ST

    In  DAUPHIN            County [  22  ] on or about Saturday,   12/14/2019 18:22 to 12/14/2019 19:09
                          (County Code)          (Offense Date)

AOPC 412A – Rev. 07/18                                                   Page 1 of 6

12/14/2019    19:47                                    (FAX)                    P. 002/006



# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed:<br>12/14/2019 | OTN/LiveScan Number | Complaint/Incident Number<br>19-1214-033-002 |
|---|---|---|---|

| Defendant Name | First:<br>TERELLE | Middle:<br>L | Last:<br>THOMAS |
|---|---|---|---|

2. I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3. I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa. C.S.§4904) relating to unsworn falsification to authorities.

4. This complaint consists of the preceding page(s), numbered 1 through   6.

5. I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes cited.
**(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)**

12/14/19

| (Date) | (Year) | (Signature of Affiant) |
|---|---|---|

AND NOW, on this date _____ _____ I certify that the complaint has been properly completed and verified.

An affidavit of probable cause must be completed before a warrant can be issued.

SEAL

12-2-05
(Magisterial District Court Number)          (Issuing Authority)

---

12/14/2019    19:41                                    (FAX)                                    P.003/008



# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed:<br>12/14/2019 | OTN/LiveScan Number | Complaint/Incident Number<br>19-1214-033-002 |
|---|---|---|---|
| Defendant Name | First:<br>TERELLE | Middle:<br>L | Last:<br>THOMAS |

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.)

| Inchoate<br>Offense | ☐ Attempt<br>18 901 A | ☐ Solicitation<br>18 902 A | ☐ Conspiracy<br>18 903 | Number of Victims Age 60 or Older 0 | | | | |
|---|---|---|---|---|---|---|---|---|
| ☑ | 1 | 780 | 113-A30 | Title 35 | 1 | F | | 18A |
| Lead? | Offense# | Section | Subsection | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
| PennDOT Data<br>(If applicable) | Accident<br>Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone | | | |

Statute Description (include the name of statute or ordinance):
CSDDCA-MAN/DEL/POSS W INT TO DEL SUB, BEING UNREG

Acts of the accused associated with this Offense:

# WARRANT

CSDDCA, SECTION 780-113A30 POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE,
In that on (12/14/19) the above named actor did except as authorized by this act, possess with intent to deliver a controlled substance, (Cocaine, Schedule 1), by a person not registered under this act, being a Felony.
TOWIT: The defendant was found in possession of crack cocaine inside of his mouth and where he was seated inside of a vehicle.

| Inchoate<br>Offense | ☐ Attempt<br>18 901 A | ☐ Solicitation<br>18 902 A | ☐ Conspiracy<br>18 903 | Number of Victims Age 60 or Older 0 | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ | 2 | 780 | 113-A31II | Title 35 | 1 | M | | 18F |
| Lead? | Offense# | Section | Subsection | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
| PennDOT Data<br>(If applicable) | Accident<br>Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone | | | |

Statute Description (include the name of statute or ordinance):
CSDDCA-POSS SM AMT MARIJUANA FOR DIST/NOT SALE

Acts of the accused associated with this Offense:

CSDDCA SECTION 780-113A31II, POSSESSION OF SMALL AMOUNT OF MARIJUANA WITH INTENT TO DISTRIBUTE,
In that on (12/14/19) the above named actor did possess a small amount of marijuana with the intent to distribute it but not to sell it, being a misdemeanor.
TOWIT: The defendant was found in possession of a small amount of marijuana inside of a clear plastic baggie.

12/14/2019   19:42                                    (FAX)                          P.004/008



# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: 12/14/2019 | OTN/LiveScan Number | Complaint/Incident Number 19-1214-033-002 |
|---|---|---|---|

| Defendant Name | First: TERELLE | Middle: L | Last: THOMAS |
|---|---|---|---|

| Inchoate Offense ☐ | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older  0 |
|---|---|---|---|---|

| Lead? ☐ | Offense# 3 | Section 780 | Subsection 113-A32 | ▓ | PA Statute (Title) Title 35 | Counts 1 | Grade M | NCIC Offense Code | UCR/NIBRS Code 26 |
|---|---|---|---|---|---|---|---|---|---|

| PennDOT Data (if applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):
CSDDCA-USE/POSS W INT USE DRUG PARAPHERNALIA

Acts of the accused associated with this Offense:

CSDDCA SECTION 780-113A32, POSSESSION OF DRUG PARAPHERNALIA, In that on (12/14/19) the above named actor did possess with the intent to use drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this act (digital scale, clear plastic baggie), being a misdemeanor.
TOWIT: The defendant was found in possession of a digital scale with cocaine residue, a clear plastic baggie, as well as marijuana inside of a clear plastic baggie.

| Inchoate Offense ☐ | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older  0 |
|---|---|---|---|---|

| Lead? ☐ | Offense# 4 | Section 4910 | Subsection 1 | ▓ | PA Statute (Title) Title 18 | Counts 1 | Grade M2 | NCIC Offense Code | UCR/NIBRS Code 10 |
|---|---|---|---|---|---|---|---|---|---|

| PennDOT Data (if applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):
TAMPER WITH OR FABRICATE PHYS EVID-ALTER/DESTROY

Acts of the accused associated with this Offense:

TOWIT: The defendant was observed consuming crack cocaine in order to conceal it from police.

12/14/2019   19:42                                    (FAX)                    P.005/008

*Please provide the following information for each co-defendant.*     **Co-Defendant Data Sheet**

| Docket Number: | Date Filed:<br>12/14/2018 | | OTN/LiveScan Number | | Complaint/Incident Number<br>19-1214-033-002 | |
|---|---|---|---|---|---|---|
| **Defendant Name** | First:<br>TERELLE | | Middle:<br>L | | Last:<br>THOMAS | |

12/14/2019    19:42                                    (FAX)                    P.006/008

# REQUEST FOR SUBPOENAS
## COMMONWEALTH OF PENNSYLVANIA
### VS.

DEFENDANT:

NAME and ADDRESS                                                              12/14/2019

TERELLE L THOMAS

323 S 18TH ST

HARRISBURG PA 17104

I request the following be subpoenaed in the above case:

PAUL J ZOZOS          12-2-05                    DARIL FOOSE
City of Harrisburg, Bureau of Police                    (Complainant/Officer)
Asst. D.A. NOT Requested at Preliminary Hearing

12/14/2019   19:43                                    (FAX)                        P.0077000

**CONFIDENTIAL**                                      **Confidential Information Form**
                                                                          **Criminal Complaint**

Complete the defendant's SSN information if known. If this form is submitted as part of a Police Criminal Complaint,
the NCIC Cautions/Medical Conditions and Scars/Marks/Tattoos sections should also be completed if known.

| Docket Number: | Date Filed: 12/14/2019 | OTN/LiveScan Number (LiveScan number preferred) | Complaint/Incident Number 19-1214-033-002 |
|---|---|---|---|
| **Defendant Name** | First: TERELLE | Middle: L | Last: THOMAS |

**NCIC Cautions and Medical Conditions** (check up to 9)

| | | | | |
|---|---|---|---|---|
| ☐ 00 | ☐ 20 | ☐ 50 | ☐ 70 | ☐ 01 |
| ☐ 05 | ☐ 25 | ☐ 55 | ☐ 80 | |
| ☐ 10 | ☐ 30 | ☐ 60 | ☐ 85 | |
| ☐ 15 | ☐ 40 | ☐ 65 | ☐ 90 | |

**Scars, Marks, Tattoos (NCIC Codes)**

Pursuant to the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania*, the Confidential Information Form shall
accompany a filing where confidential information is required by law, ordered by the court, or otherwise necessary to effect the disposition of a
matter. This form, and any additional pages, shall remain confidential, except that it shall be available to the parties, counsel of record, the
court, and the custodian. This form, and any additional pages, must be served on all unrepresented parties and counsel of record.

| This Information Pertains to: | Confidential Information: | Reference in Filing: |
|---|---|---|
| TERELLE L THOMAS (full name of adult) OR This information pertains to a minor with the initials of _____ and the full name of _____ (full name of minor) and date of birth: | Social Security Number (SSN): 198883431 Financial Account Number (FAN): Driver's License Number (DLN): 28792614 State of Issuance (DLN): PA Expires (DLN): State Identification Number (SID): | Alternate Reference: SSN Alternate Reference: FAN Alternate Reference: DLN Alternate Reference: SID |

Additional page(s) attached. 0    total pages are attached to this filing.

I certify that this filing complies with the provisions of the *Case Record Public Access Policy of the Unified Judicial System of Pennsylvania* that
require filing confidential information and documents differently that non-confidential information and documents.

Signature of Attorney or Affiant ✓ _D. Fox_          Date 12|14|19

Name: _D. Fox_                                        Attorney Number: (if applicable)

Address:                                              Telephone:

                                                      Email:

**NOTE:** Parties and attorney of record in a case will have access to this Confidential Information
Form. Confidentiality of this information must be maintained.

**CONFIDENTIAL**

12/14/2019    19:43                                    (FAX)                    P.008/008

## POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed:<br>12/14/2019 | OTN/LiveScan Number | Complaint/Incident Number<br>19-1214-033-002 |
|---|---|---|---|
| Defendant Name | First:<br>TERELLE | Middle:<br>L | Last:<br>THOMAS |

## AFFIDAVIT of PROBABLE CAUSE

# WARRANT

On view arrest..

I, DARIL FOOSE                                    , BEING DULY SWORN ACCORDING TO THE
LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT
TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

I CERTIFY THAT THIS FILING COMPLIES WITH THE PROVISIONS OF THE CASE RECORDS PUBLIC ACCESS POLICY
OF THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA THAT REQUIRE FILING CONFIDENTIAL INFORMATION AND
DOCUMENTS DIFFERENTLY THAN NON-CONFIDENTIAL INFORMATION AND DOCUMENTS.

_____ #33
(Signature of Affiant)

Sworn to me and subscribed before me this _____ day of _____

_____ Date _____, Magisterial District Judge

My commission expires  first Monday of January,

SEAL

AOPC 411C -- Rev. 07/18                                              Page 1 of 1

**EXHIBIT C**

Harrisburg police took man who swallowed crack to jail but he 'should have received urgent medical care': mayor - pennlive.com.pdf

Saved to Dropbox • Mar 24, 2020, 11:03 AM

Set Weather ⌄



Subscribe

Pennsylvania Real-Time News

# Harrisburg police took man who swallowed crack to jail but he 'should have received urgent medical care': mayor

Updated Jan 17, 2020; Posted Jan 17, 2020



Terelle L. Thomas, 31, died Dec. 17. His funeral services were scheduled for Christmas Eve.

1.5k
shares

By **Christine Vendel | cvendel@pennlive.com**

A Harrisburg police officer took a man who was "observed swallowing crack cocaine" to jail last month instead of to a hospital, an apparent violation of department policy.

Terelle Thomas, 31, spent nearly an hour at the Dauphin County booking center before he collapsed. He was then taken to a hospital, where he died three days later.

An autopsy was performed, but the coroner is awaiting toxicology results before ruling on the death.

Advertisement

[A police spokesman told PennLive last month](#) that Thomas appeared to have something in his mouth during the traffic stop Dec. 14 at 15th and Swatara streets. Thomas had small amounts of crack cocaine on his shirt and clothing, police said.

When the officer asked Thomas asked if he had swallowed anything or needed to go to a hospital, he said "no" to both questions, the spokesman told PennLive.

PennLive obtained the criminal affidavit written by the officer to support a felony drug trafficking charge against Thomas, and it said Thomas "was found in possession of crack cocaine inside of his mouth and where he was seated inside the vehicle."

Further, the officer justified a misdemeanor tampering charge against Thomas by writing that he "was observed consuming crack cocaine in order to conceal it from police."

So if he was found in possession of crack inside his mouth and "observed consuming crack," why wasn't he taken to a hospital, as prescribed by department policy?

RECOMMENDED FOR YOU


**Meet Pretty Asian Women In Philadelphia**
Asian Date


**Woman hit, killed by multiple cars on Pa. highway; none stopped, dragging...**
Pennlive


**Unsold Car Clearance Sale Going On In Philadelphia**
New Cars | Sponsored Links


**Pennsylvania Gov. Tom Wolf to order statewide shutdown over coronavirus**
Pennlive


**Are you on Medicare? If you live in Pennsylvania, Read This!**
Quick Medigap


**What if Pennsylvania residents are ordered to 'shelter-in-place?'**
Pennlive

Promoted Links by Taboola

Advertisement

Advertisement

It is widely considered best practice to seek immediate medical treatment for people suspected of ingesting illegal drugs.

Harrisburg police declined to answer follow-up questions about why police would believe Thomas' denials about ingesting drugs when an officer apparently saw otherwise. County officials declined to answer specific questions about how Thomas was allowed to spend nearly an hour at the booking center and whether employees saw the paperwork to support his entry that said he consumed crack cocaine.

It was the fifth in-custody death connected to the Dauphin County jail in 2019.

"Because it's an active investigation, District Attorney Fran Chardo would be the most appropriate person to speak to at this time," said Amy Richards, the county spokeswoman, in response to questions.

Chardo told PennLive he was reviewing the incident for any possible criminal charges so he could not answer questions at this time.

Advertisement

Harrisburg Mayor Eric Papenfuse told PennLive it is

department policy to take someone to a hospital rather than

the booking center if they have consumed illegal narcotics in a way that could jeopardize their health and welfare.

"The death is a tragedy and I feel very sorry for Mr. Thomas' family," Papenfuse said. "In retrospect, he should have received urgent medical care, and I deeply regret that he did not."

Papenfuse said Thomas denied consuming drugs, and "given that denial, the officer exercised her best judgment as to how to proceed. She clearly felt there was enough evidence to seek charges but not enough to seek immediate medical attention. Those types of calls can be difficult but must be made by officers every day in Harrisburg.

"I am not going to second-guess their decisions or question whether their judgments were made in good faith," he said. "We should, however, endeavor to learn from difficult experiences like these and strive to handle such situations differently in the future."

Advertisement

Thomas' sister told PennLive that they were seeking additional information on what happened to her brother. Thomas would have turned 32 last week.

"He had family and people who loved him," she said in a phone call, declining to provide her name. "He had his diploma. He was very intelligent and he was working toward goals. That's all anyone needs to know."

Thomas had been paroled Aug. 19 from a 5- to 12-year prison sentence for illegal gun possession in Dauphin County. His maximum sentence would have expired on Oct. 31, 2025. He had three prior drug convictions.

Ryan Marino, an emergency room doctor and medical

toxicologist at Cleveland University Hospitals, said crack cocaine can be deadly to ingest, just like cocaine. Although people typically smoke crack to get high, he said it can get into a person's system through swallowing.

"The way he collapsed, it definitely sounds like drug toxicity, not alcohol or benzos or opioids," he said. "One hour would be enough time for the effects to be noticeable...that does fit the window for toxicity."

Advertisement

Some drug couriers carry drugs inside their bodies, but they usually try to package the drugs securely in advance to avoid leakages. But that's not the case for people who swallow drugs during a traffic stop or while running from police, Marino said.

"They're usually not secured at all," he said. "There is usually less of an amount, but it is less secure."

Cocaine can have many harmful effects on a body, Marino said.

"In a big ingestion, you can see increased blood pressure, bleeding in the brain and brain death, bleeding in internal organs, organs can die, coronary arteries can clamp down, there can be increased clotting," he said. "There are a lot of different scenarios. It can wreak havoc on all parts of someone's body."

In Thomas' case, once it was determined he could not survive his injuries, his body was kept alive so he could donate his organs. Marino said cocaine eventually leaves the body and unaffected organs could be donated.

The previous in-custody deaths in Dauphin County last year were:

- Maliaka Evans, 53, who died Feb. 2, 2019 of natural causes, which prison officials described as a pulmonary embolism.
- Emily E. Endrizzi, 39, who died March 11, 2019 of suicide.
- James Macaulay, 45, who died March 21, 2019 of suicide.
- Ty'rique Riley, 21, who died July 1, 2019, from an illness he had prior to his arrest. The coroner ruled the death "natural" from: cerebral vasculitis/encephalitis, thromboemboli and rhabdomyolysis. The vasculitis to the brain was consistent with cocaine usage or infection, according to officials.

**READ**: [Half of last year's killings in Harrisburg went unsolved](#)

Note to readers: if you purchase something through one of our affiliate links we may earn a commission.

---

# Around the web



Registration on or use of this site constitutes acceptance of our **User Agreement**, **Privacy Policy and Cookie Statement**, and **Your California Privacy Rights** (each updated 1/1/20).

© 2020 Advance Local Media LLC. All rights reserved (**About Us**).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Advance Local.

**Community Rules** apply to all content you upload or otherwise submit to this site.

▷**Ad Choices**