## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERELLE THOMAS, | : | |
| ADMINISTRATOR OF THE ESTATE | : | No. 1:20-cv-01178 |
| OF TERELLE THOMAS and | : | |
| T.T., a minor, individually, as child of | : | (Judge Kane) |
| decedent Terelle Thomas and as his | : | |
| sole survivor, | : | |
|   Plaintiffs | : | |
| | : | |
|     v. | : | |
| | : | |
| HARRISBURG CITY POLICE | : | |
| DEPARTMENT, et al., | : | |
|   Defendants | : | |

## MEMORANDUM

Presently before the Court are five (5) motions to dismiss for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6) brought by: (1) Defendant City of Harrisburg[1]

("Defendant City") (Doc. No. 12); (2) Defendant Officers Daril Foose ("Foose") and Brian

Carriere ("Carriere") (Doc. No. 19); (3) Defendant Officers Scott Johnsen ("Johnsen"), Adrienne

Salazar ("Salazar"), and Travis Banning ("Banning") (Doc. No. 20); (4) Defendant Dauphin

County ("Defendant County") (Doc. No. 37); and (5) Defendants Dauphin County Adult Probation

("DCAP")[2] and Probation Officer Dan Kinsinger ("Kinsinger") (Doc. No. 39).  For the reasons

that follow, the Court will grant the motions.

---

[1]The complaint in this action does not name the City of Harrisburg as a defendant; rather, "Harrisburg City Police Department" is the named institutional defendant for Harrisburg.  (Doc. No. 1.)  The correct defendant is the City of Harrisburg itself rather than the police department, as acknowledged by the City in its motion to dismiss (Doc. No. 12) and by Plaintiffs in their brief in opposition (Doc. No. 22 at 1).  Accordingly, the Court will review the allegations of the complaint (Doc. No. 1) and the City of Harrisburg's response to those allegations in its motion to dismiss (Doc. No. 12) as if they were asserted against the proper defendant.

[2] Similarly, the DCAP is also not a proper party in this action.  DCAP is part of the Commonwealth of Pennsylvania's judicial branch, and it is well-established that "Pennsylvania's judicial districts,

## I.     BACKGROUND

### A.     Procedural Background

Plaintiffs Sherelle Thomas, administrator of the estate of Terelle Thomas, and T.T., a minor, as child and sole survivor of decedent Terelle Thomas, initiated the above-captioned action by filing a complaint in this Court on July 10, 2020.  (Doc. No. 1.)  Plaintiffs' complaint asserts various state law claims as well as federal claims against Defendants pursuant to 42 U.S.C. § 1983 arising from the circumstances surrounding the death of Terelle Thomas ("Thomas" or "Decedent").  (Id.)  Specifically, Plaintiffs' complaint asserts: (1) a federal conspiracy claim against Defendant Officers Foose, Kinsinger, Johnsen, Salazar, Banning, Carriere, and various John Doe Officers (collectively the "Individual Defendants") (Count I); (2) a claim for failure to intervene against the Individual Defendants (Count II); (3) claims for failure to train, supervise, control, or discipline against Defendant County and Defendant City (collectively the "Government Defendants") as well as "John Doe Supervisory Officers" (Counts III and IV); (4) a claim for failure to render medical care against all Defendants (Count V); (5) state law claims for negligence, wrongful death, and "survival action" against all Defendants (Counts VI, VII, and VIII).  (Id.)

Defendant City filed the first motion to dismiss in this action on August 10, 2020.  (Doc. No. 12.)  Defendant Officers Foose, Carriere, Johnsen, Salazar, and Banning filed two additional motions to dismiss on August 17, 2020.  (Doc. Nos. 19, 20.)  After being granted extensions of time to respond to the complaint (Doc. Nos. 18, 29), Defendants DCAP and Kinsinger and

---

including their probation and parole departments, are entitled to Eleventh Amendment immunity." See Haybarger v. Lawrence Cty. Adult Prob. & Parole, 551 F.3d 193, 197 (3d Cir. 2008) (citing Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 241 (3d Cir. 2005)).  Accordingly, the Court will dismiss DCAP as a defendant in this action and only consider the allegations of Plaintiffs' complaint as properly asserted against Defendant County.

Defendant County filed the remaining motions to dismiss (Doc. Nos. 37, 39) on September 17, 2020 and September 18, 2020.  Having been fully briefed, all five motions are ripe for disposition.

### B.    Factual Background[3]

On December 14, 2019, Defendant Officer Foose observed Decedent Thomas and another man enter a vehicle after walking away from a bar.  (Doc. No. 1 ¶ 32.)  Shortly thereafter, Foose began to follow the vehicle, and, after observing the vehicle fail to come to a complete stop at a stop sign, initiated a traffic stop.  (Id. ¶¶ 34-35, Exh. A at 6.)  Foose identified the driver of the vehicle as Theresa Henderson ("Henderson"), the other passenger as Jay Wilkerson "Wilkerson"), and Thomas.  (Id., Exh. A at 6.)  Foose observed that Thomas appeared to have something in his mouth, notified her partner, Kinsinger, that she suspected Thomas was attempting to conceal something, and asked Kinsinger to detain Thomas.  (Id. ¶¶ 36-38, Exh. A at 6.)  Kinsinger detained Thomas and directed him to spit out the items in his mouth.  (Id.)  Foose observed that "[w]here Thomas did spit was a white liquid that resembled crack cocaine attempted to be swallowed."  (Id., Exh. A at 6.)  Additional police units then arrived on the scene, including Defendant Officers Johnsen, Salazar, Banning, and Carriere.  (Doc. No. 1 ¶¶ 39, 41, 44.)

Foose then went to speak to Thomas, noting in her report that she suspected he had ingested cocaine because "[h]is lips were completely pasted white. His tongue and spit were white and forming a large amount of paste inside of his mouth.  Thomas's face appeared to be covered in a white powdery substance."  (Id., Exh. A at 6.)  Foose mirandized Thomas at which time Thomas allegedly denied having any drugs on him but marijuana and stated that "he just ate a candy cigarette and that is why his lips were so white."  (Id.)  Nonetheless, Kinsinger and Foose advised

---

[3] The following factual background is taken from the allegations of Plaintiffs' complaint (Doc. No. 1) and the exhibits attached to the complaint, which include the police reports related to the incident in question (Doc. No. 1, Exhs. A-C).

Johnsen, Salazar, and Banning that it was possible Thomas had ingested cocaine.  (Id., Exh. A at 8-10.)  According to the police reports, Thomas repeatedly denied having ingested cocaine and insisted that the white on his mouth was from a candy cigarette, even after officers advised him that it was important for them to know if he had ingested something to "inform medical staff" and "for his safety in the event that it would have any ill affect [sic] on his health."  (Id. at 6-11.)  Wilkerson and Henderson also allegedly stated that "they did not see Thomas ingest anything and did not know that he had crack."  (Id. at 8.)

At approximately 6:47 P.M., Defendant Officer Carriere transported Thomas to the Dauphin County Booking Center.  (Doc. No. 1 ¶ 47.)  Carriere alleges that he "continued to check on Thomas throughout the transport" and that Thomas "told me that he was okay."  (Id., Exh. A at 11.)  Carriere and Thomas arrived at the booking center at approximately 6:53 P.M, at which time Carriere alleges that he "advised that [Thomas] may have swallowed crack-cocaine" and that Thomas "was seen by medical staff at the booking center and was cleared to stay."  (Id.)  Carriere further alleges that "booking staff asked [Thomas] several times if he ingested crack-cocaine. Again, he denied doing so."  (Id.)  Thomas was not transferred from the booking center to a hospital and was placed in a cell at approximately 7:13 P.M.  (Doc. No. 1 ¶¶ 52, 57.)  Nearly an hour later, around 8:04 P.M., Thomas fell to the floor in his cell, hit his head, and suffered cardiac arrest.  (Id. ¶ 58.)  Thomas was then transferred to UPMC Pinnacle Harrisburg Hospital where he remained until his death on December 17, 2019.  (Id. ¶¶ 61-63.)  An autopsy determined that the cause of death was "cocaine and fentanyl toxicity."  (Id. ¶ 63.)   In an article published by Penn Live on January 17, 2020, Eric Papenfuse, mayor of the City of Harrisburg, indicated that it is the policy of the Harrisburg Police Department to divert individuals to the hospital if they have consumed narcotics "in a way that could jeopardize their health and welfare" and stated that in light of

Decedent's denials regarding consumption of cocaine "the officer exercised her best judgment as to how to proceed."  (Doc. No. 1 ¶ 66, Exh. C at 3.)

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions set forth as factual allegations.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Consistent with the Supreme Court's ruling in Twombly and Ibqal, the United States Court of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6):  (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (citation and quotation marks

omitted).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged.  See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983)

## III.    DISCUSSION

### A.    Plaintiffs' Claims Against the Individual Defendants (Counts I, II, V, VI, VII, and VIII)[4]

#### 1.    Plaintiffs' Conspiracy Claim Under 42 U.S.C. § 1983 (Count I)

##### a.    Applicable Legal Standard

Section 1983 is the vehicle by which private citizens can seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

---

[4] As an initial matter, Plaintiffs' federal claims are asserted under both the Fourth and Fourteenth Amendments to the Constitution of the United States.  However, it is well established that claims under Section 1983 asserting a denial of medical care to arrestees are Fourteenth Amendment due process claims, see Hubbard v. Taylor, 399 F.3d 150, 158 (3d. Cir. 2005), that should be analyzed under the Eighth Amendment denial of medical care standard, see Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).  Plaintiffs' complaint does not contain any claims for or allegations supporting a finding of unconstitutional seizure pursuant to the Fourth Amendment.  Accordingly, the Court will dismiss Plaintiffs' federal claims insofar as they are asserted under the Fourth Amendment and will analyze Plaintiffs' federal claims as asserting only violations of Decedent's Fourteenth Amendment rights.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Colombia, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To maintain a cause of action under Section 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

In order to state a claim for conspiracy under Section 1983, a plaintiff must show that "two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'"  See Seldomridge v. Penn State Hershey Med. Ctr., 24 F. Supp. 3d 425, 431 (M.D. Pa. 2014) (citing Luck v. Mount Airy No. 1, LLC, 901 F. Supp. 2d 547, 559 (M.D.Pa.2012)). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992).  Such allegations must be supported by specific facts regarding the agreement "as well as the basis for alleging participation with respect to each defendant."  See id. at 933.

**b.      Arguments of the Parties**

The Individual Defendants argue that Plaintiffs have failed to state a claim for conspiracy because Plaintiffs' complaint includes no specific factual allegations regarding the scope and purpose of any alleged agreement or each Individual Defendants' role in any such agreement. (Doc. No. 28 at 9-11.)[5]  In response, Plaintiffs argue that, during the approximately twenty-five (25) minutes between the time when additional units arrived at the traffic stop and the time when Defendant Carriere transported Decedent to the booking center, "a trier of fact could conclude" that "the officers discussed among themselves what to do, and that they agreed to take [Decedent] to jail rather than a hospital." (Doc. No. 36 at 7.)[6]  Plaintiffs do not assert that any such allegation was actually made in the complaint.  (Id.)

**c.      Whether the Court Should Dismiss Plaintiffs' Conspiracy Claim**

Upon review of Plaintiffs' complaint, the parties' arguments, and the applicable law, the Court will dismiss Plaintiffs' conspiracy claim.  In support of this claim, Plaintiffs alleges only that the Individual Defendants "agreed and conspired among themselves to deny [Decedent] adequate [medical] care, and then to cover and conceal their efforts" and that "in furtherance of their agreement and conspiracy, [the Individual Defendants] failed to obtain for [Decedent] adequate medical care."  (Doc. No. 1 ¶¶ 69-70.)  These are precisely the type of conclusory allegations that cannot sustain a conspiracy claim.  See Flanagan, 783 F. Supp. at 928, 933 (stating that a plaintiff asserting a conspiracy claim must "expressly allege an agreement or make

---

[5] Although laid out in three separate sets of briefs, the Individual Defendants' arguments are virtually identical in support of dismissal of all of Plaintiffs' claims.  See also (Doc. No. 23 at 8-9; Doc. No. 43 at 7-10.)

[6] Similarly, Plaintiffs' responses to these arguments are consistent throughout Plaintiffs' three briefs in opposition.  See also (Doc. No. 35 at 7-8; Doc. No. 47 at 11.)

averments of communication, consultation, cooperation, or command from which such an agreement can be inferred" and must also allege facts indicating "the basis for alleging participation with respect to each defendant"). Even viewing the facts in the light most favorable to Plaintiffs, at most the complaint and attached exhibits indicate that: (1) the Individual Defendants were present at the traffic stop and were individually aware that Decedent may have ingested an unknown quantity of cocaine (id. ¶¶ 38, 40, 42, 46, 48); (2) the Individual Defendants repeatedly asked Decedent if he had ingested cocaine and informed him that they needed to know for his health (id., Exh. A at 6-11); (3) Decedent denied ingesting cocaine and showed no symptoms of medical distress on the scene (id.); and (4) upon arrival at the booking center, Defendant Carriere informed staff that Decedent may have ingested cocaine and Decedent was seen by medical staff and cleared to stay (id. at 11). The Court cannot find that such allegations support the existence of a conspiracy among the Individual Defendants to deny Decedent medical care, especially when, as Plaintiffs acknowledge, there were medical staff present at the booking center where Decedent was taken. Accordingly, the Court will dismiss this claim.

### 2.      Plaintiffs' Claim for Failure to Intervene (Count II)

#### a.      Applicable Legal Standard

The Third Circuit laid out the elements of a constitutional claim for failure to intervene in Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002). Specifically, the court stated that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." See Smith, 293 F.3d at 650 (quoting Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986)). However, the Third Circuit clarified that such liability requires proof that the officer has a "reasonable and realistic opportunity to intervene." See id. at 651.

**b.       Arguments of the Parties**

Defendants argue that Plaintiffs' claims for failure to intervene are insufficiently pleaded as Plaintiffs' complaint fails to allege facts specifying the actions or inactions of the Individual Defendants or supporting any allegation that the Individual Defendants had a reasonable opportunity to intervene.  (Doc. No. 28 at 11-12.)[7]  In the alternative, the Individual Defendants note that a failure to intervene claim cannot be sustained in the absence of an underlying constitutional violation and, because Plaintiffs have insufficiently alleged a denial of medical care, the failure to intervene claim necessarily fails.  (Doc. No. 23 at 11.)  In response, Plaintiffs argue that "a trier of fact could conclude from the facts alleged" that each of the Individual Defendants had an opportunity to intervene and transport Decedent to a hospital but failed to do so.  (Doc. No. 36 at 10.)[8]

**c.       Whether the Court Should Dismiss Plaintiffs' Claim for Failure to Intervene**

Upon review of Plaintiffs' complaint, the parties' arguments, and the applicable law, the Court will dismiss Plaintiffs' claim for failure to intervene.  As with Plaintiffs' conspiracy claims, the claim for failure to intervene relies on the conclusory allegations that "[the Individual Defendants] individually and/or jointly, denied the decedent emergency medical care" and "[a]s the denial of medical treatment continued, none of the individuals present intervened to stop the denial of medical care."  (Doc. No. 1 ¶¶ 75-76.)  It is not clear from the allegations of the complaint or exhibits what opportunity each Individual Defendant did or did not have to intervene in any alleged denial of medical care.  Nor, as discussed in more detail infra, is it clear that Decedent was

---

[7] See also (Doc. No. 43 at 10-11.)

[8] See also (Doc. No. 35 at 10; Doc. No. 47 at 12-14.)

denied medical care, which alone requires dismissal.  See Bryant v. City of Phila., 890 F. Supp. 2d 591, 601 (E.D. Pa. 2012) (noting that a failure to intervene claim "requires the existence of a constitutional violation"), aff'd (3d Cir. Mar. 15, 2013).  Absent additional facts, the Court cannot find that the Individual Defendants failed to intervene in a constitutional violation where, by all accounts, an arrestee who was exhibiting no signs of medical distress was transported to a facility with medical staff, the Individual Defendants' suspicions regarding the potential ingestion of cocaine was communicated to medical staff, and medical staff cleared the arrestee for booking. Accordingly, the Court will dismiss this claim.

### 3.   Plaintiffs' Claim for Failure to Render Medical Care (Count V)

#### a.   Applicable Legal Standard

Claims for denial of medical care to arrestees are analyzed under the same standards as Eighth Amendment claims for denial of medical care to prisoners.  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).   In order to state a claim for denial of medical care, a plaintiff must allege sufficient facts to show the defendant acted with deliberate indifference to his or her medical needs.  See id. at 582.  The Third Circuit has noted that deliberate indifference requires evidence of "(i) a serious medical need, and (ii) acts or omissions by [] officials that indicate deliberate indifference to that need."  See id.  Further, deliberate indifference may exist in circumstances where there was "'objective evidence that [a] plaintiff had a serious need for medical care,' and [] officials ignored that evidence" or "where 'necessary medical treatment is delayed for non-medical reasons.'"  See id. at 582 (citing Nicini v. Morra, 212 F.3d 798, 815 n.14 (3d Cir. 2000); Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a

doctor's attention." See Monmouth Cty., 834 F.2d at 347 (citing Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981)).  Deliberate indifference is a subjective standard analogous to criminal law's "recklessness" standard, meaning a plaintiff must demonstrate a reckless disregard of a known "substantial risk of serious harm."  See Peters v. Brown, 793 F. App'x 118, 123 (3d Cir. 2019).  Further, an official must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists" and must "also draw the inference."  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

**b.      Arguments of the Parties**

The Individual Defendants argue that Plaintiffs have failed to demonstrate that Decedent had a serious medical need while in their custody and have further failed to allege facts indicating deliberate indifference.  (Doc. No. 23 at 9-11)[9]  In support of this argument, the Individual Defendants rely on the averments in Plaintiffs' Exhibit A that Decedent was coherent and not demonstrating any medical symptoms while in their presence, that Decedent regularly denied consuming cocaine, and that Decedent was cleared by medical staff at the booking center.  (Id.) In response, Plaintiffs argue that the Individual Defendants should have been aware that Thomas "was in serious medical danger and needed immediate emergency medical care [at a hospital]" because the Individual Defendants suspected that he may have consumed some unknown quantity of cocaine and because he "had powdery residue on [his] face."  (Doc. No. 35 at 9.)[10]  Plaintiffs make no argument regarding Decedent's medical clearance at the booking center.

---

[9] See also (Doc. No. 28 at 16-20; Doc. No. 43 at 11-13.)

[10] See also (Doc. No. 36 at 10-11; Doc. No. 47 at 15-17.)

c.       **Whether the Court Should Dismiss Plaintiffs' Claim for Failure to Render Medical Care**

Upon review of Plaintiffs' complaint, the parties' arguments, and the applicable law, the Court will dismiss Plaintiffs' claim for failure to render medical care.  Plaintiffs' argument appears to be that the Individual Defendants denied Decedent medical care because they transported him to the booking center rather than to a hospital.  However, Plaintiffs concede that there were medical staff at the booking center and the exhibits attached to the complaint indicate that Decedent was assessed by medical staff and cleared to stay.  (Doc. No. 1 ¶¶ 50-51, Exh. A at 11.)  Although the Individual Defendants suspected that Decedent may have ingested an unknown quantity of cocaine, he repeatedly denied having done so as did other witnesses in the vehicle, provided a plausible explanation for the powder on his mouth—that he had eaten a candy cigarette—and demonstrated no symptoms of illness or other medical distress.  (Id., Exh. A at 6-11.)  Further, while Defendant Carriere did not take Decedent to a hospital, Decedent was taken to a facility that had medical staff on hand, medical staff were informed that Decedent may have ingested cocaine, and he was assessed medically.  (Id. at 11.)

It is not apparent to the Court from the allegations of the complaint that Decedent's medical need was "so obvious that a lay person would easily recognize the necessity" for hospitalization rather than assessment by medical staff at the booking facility.  See Monmouth Cty., 834 F.2d at 347.  In addition, the Court has identified several persuasive cases that present analogous circumstances to those present here in which no deliberate indifference was found.  See, e.g., Peters, 793 F. App'x at 122 (affirming finding of no deliberate indifference where medical staff assessed plaintiff and medically cleared him for jail); Nykiel v. Borough of Sharpsburg, 778 F. Supp. 2d 573, 584 (W.D. Pa. 2011) (finding no deliberate indifference where decedent detainee suffered a cocaine overdose in a holding room after officers failed to transport decedent detainee

13

to the hospital despite noticing a "white, crusty substance" on decedent's lips and detainee having admitted to ingesting drugs earlier that evening); Kachmar v. City of Pottsville, No. 4:05-cv-413, 2005 WL 2591871, at *8 (M.D. Pa. Oct. 13, 2005) (dismissing claim for failure to provide medical care where the defendant officer had no reason to believe that the plaintiff needed to remain in the hospital and allowed him to leave).  Absent additional facts suggesting that Decedent was not provided with adequate medical care by the medical staff at the booking center, or clarifying how the Individual Defendants were deliberately indifferent to Decedent's medical needs when he exhibited no symptoms until an hour after leaving the custody of the Individual Defendants, the Court cannot find that Plaintiffs have stated a claim against the Individual Defendants for failure to render medical care.  Accordingly, the Court will dismiss this claim.[11]

### 4. Plaintiffs' State Law Claims (Counts VI, VII, and VIII)

Plaintiffs' complaint includes state law claims for negligence (Count VI), wrongful death (Count VII), and a survival action (Count VIII).  As a threshold inquiry, the Court must determine whether Defendants have immunity from state tort claims.

Under Pennsylvania law, the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. § 8541, et seq., grants municipalities, municipal agencies, and municipal officers acting in an official capacity immunity from liability for all state law tort claims, unless the suit falls within one of nine enumerated exceptions.  Specifically, the relevant provision states that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  See 42 Pa. C.S.A. § 8541.  The enumerated exceptions to the PSTCA are:  (1) vehicle liability; (2)

---

[11] Because the Court finds that Plaintiffs have failed to adequately state a claim for failure to render medical care, it does not reach the Individual Defendants' arguments that, in the alternative, they are protected by qualified immunity.

care, custody, control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals; and (9) sexual abuse.  See 42 Pa. C.S.A. § 8542.  These exceptions are strictly construed and narrowly interpreted.  See Granchi v. Borough of N. Braddock, 810 A.2d 747, 749 (Pa. Commw. Ct. 2002) (citing Jones v. Southeastern Pa. Transp. Auth., 772 A.2d 435, 440 (Pa. 2001)). It is clear from the allegations in the complaint that none of the enumerated exceptions apply in this case.

Plaintiffs argue that their state law claims can be sustained because employee immunity does not extend to acts that are judicially determined to be crimes, actual fraud, actual malice, or willful misconduct.  (Doc. No. 35 at 13)[12] (citing 42 Pa. C.S.A. § 8550).  However, once again, the Court notes that Plaintiffs have not pled facts to support an inference of actual malice or willful misconduct.  Plaintiffs have merely averred in a conclusory manner that Defendants' acts were "malicious and sadistic" and that Defendants acted "unlawfully, wantonly, unreasonably, maliciously, unnecessarily and/or with deliberate and reckless indifference to the health and welfare of the Decedent."  (Doc No. 1 ¶¶ 20, 100, 105.)  Such statements are not entitled to the assumption of truth when unsupported by factual allegations.  See Santiago, 629 F.3d at 130. Accordingly, the Court finds that Plaintiffs' complaint contains insufficient factual matter for the Court to determine that an exception to the employee immunity provision of the PSTCA applies to Plaintiffs' state law claims against the Individual Defendants and will dismiss these claims.[13]

---

[12] See also (Doc. No. 36 at 14; Doc. No. 47 at 21.)

[13] However, in light of the fact that the employee immunity exception exists, and acknowledging that the Court cannot determine at this time that Plaintiffs could not plead facts to support a finding of actual malice or willful misconduct, the dismissal of Plaintiffs' state law claims as to the Individual Defendants will be without prejudice to Plaintiffs' right to file an amended complaint addressing the deficiencies identified herein.

**B.      Plaintiffs' Claims Against the Government Defendants (Counts III, IV, V, VI-VIII)**

      **1.      Plaintiffs' <u>Monell</u> Claims Against Defendant City for Failure to Train, Supervise, Control or Discipline and Failure to Render Medical Care (Counts IV and V)[14]**

            **a.      Applicable Legal Standard**

Count IV of Plaintiffs' complaint asserts a claim against Defendant City for failure to properly train, supervise, control or discipline the Individual Defendants. (Doc. No. 1.) Count V of Plaintiffs' complaint asserts a claim for failure to render medical care against all Defendants. (<u>Id.</u>) In <u>Monell v. N.Y.C. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), the Supreme Court established that municipalities can be held liable for constitutional violations under 42 U.S.C. § 1983. <u>See id.</u> at 690. However, municipal liability is limited to those actions for which the municipality itself is actually responsible. <u>See</u> <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479 (1986). Specifically, liability attaches when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>See</u> <u>Monell</u>, 436 U.S. at 694. That is, a municipality is subject to Section 1983 liability to the extent it maintained an unconstitutional custom or policy that caused the constitutional violations alleged by the claimant, but is not liable for injuries on the sole basis that they were inflicted by its employees. <u>See id.</u>

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S.

---

[14] Plaintiffs similarly assert <u>Monell</u> claims against Defendant County for failure to train and failure to render medical care (Counts III and V). However, Defendant County's motion to dismiss is styled as a partial motion to dismiss and only affirmatively seeks dismissal of Plaintiffs' state law claims. (Doc. No. 37.) Accordingly, the Court will address the sufficiency of Plaintiffs' <u>Monell</u> claims exclusively as to Defendant City.

378, 385 (1989).  A custom is "an act 'that has not been formally approved by an appropriate decision maker,' but is 'so widespread as to have the force of law.'"  See Natale, 318 F.3d at 584 (quoting Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997)).  "[A] policy or custom may also exist where 'the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"  Id.  In order to recover from a municipality under this theory of liability, a Plaintiff must show "a direct causal link between the municipal policy or custom and the alleged constitutional deprivation."  See City of Canton, 489 U.S. at 385.

In the alternative, a municipality may be liable under Section 1983 for a failure to train, monitor, or supervise; however, the failure alleged in such a circumstance must amount to "deliberate indifference to the constitutional rights of persons with whom the police come in contact."  See City of Canton, 489 U.S. at 388.  In order to establish deliberate indifference, a plaintiff must generally show the failure alleged "has caused a pattern of violations."  See Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).  Where a failure to train claim is alleged based on a single incident, the complaint must contain allegations that policymakers "kn[e]w to a moral certainty" that the alleged constitutional deprivation would occur and the need for further training "must have been plainly obvious."  See City of Canton, 489 U.S. at 390 n.10.  Further, "[l]iability cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury.'"  See Thomas v. Cumberland Cty., 749 F.3d 217, 226 (3d Cir. 2014) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir. 1991)).

17

**b.      Arguments of the Parties**

Defendant City argues that Plaintiffs have not stated a <u>Monell</u> claim against it because Plaintiffs' complaint "contains no factual averments of a pattern of similar constitutional violations by untrained police officers upon which a finding of deliberate indifference can be predicated." (Doc. No. 22 at 7.)  Defendant City notes that the complaint "does not allege that [Defendant City] had a custom or policy of not training its officers in addressing medical emergencies" and that "there is no factual predicate for a plausible claim that the conduct alleged in the complaint is likely to recur."  (<u>Id.</u> at 8-9.)  In response, Plaintiffs argue that they have "alleged facts from which it may be inferred that Defendant [City] allowed to exist an unwritten policy of not adequately training its officers in the importance of diverting persons with serious medical needs to hospitals." (Doc. No. 34 at 6.)  Plaintiffs further assert that "[t]he fact that, after deliberation, [the Individual Defendants] did not know that they were to divert [Decedent] to the hospital . . . would allow a trier of fact to conclude that, while a diversion policy existed on paper . . . Defendant [City] made no effort to train and instruct its officers in how to implement its policy."  (<u>Id.</u> at 8.)

**c.      Whether the Court Should Dismiss Plaintiffs' <u>Monell</u> Claims**

Upon review of Plaintiffs' complaint, the parties' arguments, and the applicable law, the Court will dismiss Plaintiffs' <u>Monell</u> claims against the Defendant City.  As an initial matter, the Court's review of Plaintiffs' complaint indicates that although Count V regarding the failure to render medical care is asserted against "all Defendants," this claim includes allegations against the Individual Defendants only.  (Doc. No. 1 ¶¶ 96-97.)  Further, the fact that Plaintiffs' arguments in opposition to dismissal of this claim focuses on a potential failure to train belies the fact that

Plaintiffs have not asserted any basis for liability on this claim separate from the failure to train claims at Count IV.[15]  Accordingly, the Court will dismiss Count V as to Defendant City.

Turning to Count IV, the Court's review of Plaintiffs' complaint indicates that the allegations specific to Plaintiffs' failure to train claims are that Defendant City as well as various John Does have "exclusive management and control of the policies and practices" regarding "the method and manner of recognizing individuals in custody whom require emergency medical care" and that Defendant City has a "custom and practice of failing to train, instruct, supervise, control and discipline" officers "in recognizing individuals in custody whom require emergency medical care."  (Doc. No. 1 ¶¶ 90, 91.)  Plaintiffs further allege broadly that the Defendant City has "policies or customs, practices and usages that are so pervasive that they constitute the policies of [Defendant City] such that they are and were the moving force behind and thereby caused the constitutional deprivations of Decedent."  (Id. ¶¶ 86, 92.)  Plaintiffs allege that these "pervasive" policies or practices include:

> The officers of [Defendant City] conduct traffic stops without regard for the lack of reasonable suspicion or probable cause, or without regard for the legality of the stop; The officers of [Defendant City] fail to render emergency medical care to persons in custody without regard for whether the individual faces imminent death; The officers of [Defendant City] engage in conduct that violates the constitutional rights of citizens with whom they come in contact, including, but not limited to arresting, and detaining people in violation of the constitution and laws, both by the acts and means by which they are accomplished; The officers of [Defendant City] conspire [among themselves] to "cover" for and protect one another from criminal and/or civil sanctions that might arise from the violation of the constitutional rights of a citizen.

(Id. ¶ 93.)

---

[15] Indeed, Plaintiffs assert that there was an official policy indicating that individuals who had consumed narcotics "in a way that would jeopardize their health and welfare" should be diverted to a hospital (Doc. No. 1 ¶ 66), and that officers not taking Decedent to a hospital is allegedly indicative of a failure on the part of Defendant City to adequately train officers on the implementation of this policy (Doc. No. 34 at 8).

These allegations are insufficient to support a <u>Monell</u> claim for failure to train against Defendant City.  First, the allegations are largely conclusory.  Second, Plaintiffs have not alleged any facts from which the Court could find a pattern of constitutional violations existed that would have put Defendant City on notice of a need for additional training or supervision.  <u>See</u> <u>Berg</u>, 219 F.3d at 276 (noting that a plaintiff asserting deliberate indifference must generally show that an alleged failure to train "has caused a pattern of violations").  Nor have Plaintiffs alleged facts, based on this single incident, from which the Court can infer that Defendant City's policymakers "kn[e]w to a moral certainty" that there were any problems with the implementation of policies relating to the provision of medical care to arrestees or that a need for further training was "plainly obvious."  <u>See</u> <u>City of Canton</u>, 489 U.S. at 390 n.10.  Additionally, Plaintiffs do not identify any particular deficiency in any relevant training program that caused the alleged constitutional deprivation.  <u>See</u> <u>id.</u> at 390-91 (stating "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program").  As noted, "[l]iability cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury.'"  <u>See</u> <u>Thomas</u>, 749 F.3d at 226.  Absent additional facts supporting an inference that Defendant City was on notice of a need for additional training regarding the provision of emergency medical care and was deliberately indifferent to that need, the Court cannot find that Plaintiffs have sufficiently stated a claim for failure to train.  Accordingly, the Court will dismiss Count IV of Plaintiffs' complaint.

### 2.    Plaintiffs' State Law Claims (Counts VI, VII, and VIII)

As discussed <u>supra</u>, the PSTCA grants municipalities, municipal agencies, and municipal officers acting in an official capacity immunity from liability for all state law tort claims, unless

the suit falls within one of nine enumerated exceptions.  See 42 Pa. C.S.A. §§ 8541-42.  Regarding

the applicability of PSTCA immunity to the Government Defendants, Plaintiffs argue that the

motor vehicle exception applies because "Defendant Carriere, a government employee, used a

vehicle owned by Defendant [City] to divert [Decedent] from the hospital to arrive at the wrong

location, the Booking Center."  (Doc. No. 34 at 10.)  The Court rejects this assertion.  The vehicle

liability exception provides that liability may be imposed on a local agency where injury is caused

by the "operation of any motor vehicle in the possession or control of the local agency."  See 42

Pa. C.S.A. § 8542.  Even in the sole case relied upon by Plaintiffs, the issue was whether an

employee's decision to illegally park a government vehicle, a vehicle that was subsequently hit by

another vehicle and caused injuries, constituted "operation" for purposes of the exception.  See

Balentine v. Chester Water Auth., 191 A.3d 799, 809 (Pa. 2018).  However, this Court has found

no case, nor have Plaintiffs cited any, suggesting that the vehicle exception applies to

circumstances like those present here, in which an individual was safely transported in a vehicle

only to later suffer a medical emergency.  As acknowledged previously, the PSTCA exceptions

are strictly construed and narrowly interpreted.  See Granchi, 810 A.2d at 749.  Accordingly, the

Court finds that no exception to the PSTCA applies with regard to Plaintiffs' state law claims.

Further, the Court finds that—unlike the Individual Defendants—there are no additional facts that

Plaintiffs could plead to support liability against the Government Defendants in light of the

PSTCA's immunity provision.  Accordingly, the Court's dismissal of these claims against the

Government Defendants will be with prejudice.

> ### C.    Leave to Amend

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a

district court must permit a curative amendment, unless an amendment would be inequitable or

futile."  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)).  With the exception of Plaintiffs' state law claims as asserted against the Government Defendants, the Court cannot conclude at this time that Plaintiffs could not plead facts in an amended complaint that would allow their claims to survive a renewed motion to dismiss.  Accordingly, the Court's dismissal of Plaintiffs' claims is without prejudice to Plaintiffs' right to file an amended complaint addressing the deficiencies identified herein.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss (Doc. Nos. 12, 19, 20, 37, 39) and dismiss Counts I, II, IV, VI, VII, and VIII of Plaintiffs' complaint (Doc. No. 1) in their entirety and will dismiss Count V as to all Defendants except Defendant County. An appropriate Order follows.