**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

-----------------------------------------------------------------X

SHERELLE THOMAS, ADMINISTRATOR OF :
THE ESTATE OF TERELLE THOMAS           :
                                                         :
and                                                    :          **CIVIL NO. 1:20-cv-01178**
                                                         :
**T.T., a minor**, individually, as child of decedent :
Terelle Thomas and as his sole survivor,     :          **JURY TRIAL DEMANDED**
                                                         :
                                   Plaintiffs         :
                                                         :
                v.                                      :
                                                         :
**CITY OF HARRISBURG;**                       :
**OFFICER DARIL FOOSE;**                     :
**OFFICER SCOTT JOHNSEN;**              :
**OFFICER ADRIENNE SALAZAR;**        :
**OFFICER TRAVIS BANNING;**             :
**OFFICER BRIAN CARRIERE;**             :
**HARRISBURG CITY POLICE DEPT**      :
**JOHN DOE POLICE OFFICERS 1 – 5;**  :
                                                         :
and                                                    :
                                                         :
**DAUPHIN COUNTY;**                            :
**DAUPHIN COUNTY ADULT PROBATION** :
**JOHN DOE SUPERVISORY OFFICERS 1-5;** :
**DAUPHIN COUNTY PRISON JOHN DOE**  :
**PRISON OFFICIALS 1-5;**              :
**PROBATION OFFICER DAN KINSINGER;** :
                                                         :
and                                                    :
                                                         :
**PRIMECARE MEDICAL, INC.;** and        :
**PRIMECARE JOHN DOE MEDICAL**        :
**EMPLOYEES 1-5**                              :
                                                         :
                                   Defendants    :
-----------------------------------------------------------------X

1

## AMENDED COMPLAINT

### JURISDICTION AND VENUE

1.   This action is brought pursuant to 42 U. S. C. §1983, the Fourteenth Amendment

to the United States Constitution, the Constitution of the Commonwealth of

Pennsylvania, and Pennsylvania Law.

2.   This Middle District of Pennsylvania Court has original jurisdiction over the

Plaintiffs' federal law claims pursuant to 28 U. S. C. §§1331 and 1343, in that the

claims raise questions of federal law, and jurisdiction over the pendent State Law

claims pursuant to 28 U. S. C. §1367(a) where the state claims are so related to

federal claims in the action within this Court's original jurisdiction that they form

part of the same case or controversy under Article III of the United States

Constitution.

3.   Venue is proper in this Middle District of Pennsylvania pursuant to 28 U. S. C.

§1391(b)(1) where all the Defendants reside in the Commonwealth of

Pennsylvania and 28 U. S. C. §1391(b)(2) where a substantial part of the events

or omissions giving rise to the Plaintiffs' federal claims occurred within the

geographical limits of this District.

4.   This action is also brought under the laws of The Commonwealth of

Pennsylvania as Wrongful Death, Survival, and Negligence actions pursuant to

claims arising from Defendants' deliberate and malicious indifference in failing to

train its various personnel in the recognition and treatment of medical issues in

arrestees and inmates and further in depriving decedent Terelle Thomas of his

rights to both due process and equal protection constitutionally guaranteed him,

all of which eventually led to his death at the young age of thirty-one (31) years old.

## PARTIES

5.  Plaintiff Sherelle Thomas, Administrator of the Estate of Terelle Thomas, as Administrator of the said Estate of Terelle Thomas, brings this action pursuant to 42 Pa. C. S. A. §8302 (Survival).

6.  Administrator Sherelle Thomas was appointed Administrator by the Dauphin County Register of Wills on the 11th day of March 2020, under Administrative File Number 2220-0262.

7.  Plaintiff T.T., a minor, is the decedent's natural daughter and only survivor, and she resides in Harrisburg, Pennsylvania. Because the decedent was single and had no other survivors, the Plaintiff brings this action on her own behalf as the only person entitled to recover as the decedent's survivor pursuant to 42 Pa. C. S. A. §8301 (Wrongful Death).

8.  Plaintiffs' Decedent is Terelle Thomas, who died in Harrisburg, Pennsylvania on December 17, 2019 as the direct and proximate result of the Defendants' individual and joint actions and omissions, all of which occurred in the City of Harrisburg, Dauphin County, Pennsylvania.

9.  A Defendant is Dauphin County, PA ("Dauphin County"), a county, political subdivision, and governmental entity in the Commonwealth of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 101 Market Street, Harrisburg, PA 17101. At all times relevant hereto, Defendant Dauphin County was responsible for

Dauphin County Adult Probation and Dauphin County Judicial Center and Prison. Dauphin County Judicial Center and Prison houses the Central Booking Facility ("Booking Center") for all police departments in Dauphin County. Defendant Dauphin County employed and was responsible for training and supervising the probation officers and prison officials who daily engaged probationers and persons taken into custody, and who participated in and were the cause of decedent Terelle Thomas's death.

10.     One or more Defendants are Dauphin County Adult Probation John Doe Supervisory Officers ("DCAP John Doe(s)") 1 - 5,[1] having a place of business at 917 Gibson Blvd. in Steelton, PA 17113.  At all times relevant hereto, DCAP John Does participated in and was/were the cause of decedent Terelle Thomas's death.

11.     One or more Defendants are Dauphin County Prison John Doe Prison Officials ("DCP John Doe(s)") 1 - 5, having a place of business at 451 Mall Blvd. in Harrisburg, PA 17111.  At all times relevant hereto, DCP John Does participated in and was/were the cause of decedent Terelle Thomas's death.

12.     A Defendant is Dan Kinsinger, an Adult Probation Officer with Dauphin County Adult Probation, having a main place of business at 917 Gibson Blvd, Steelton, PA, 17113.  At all times relevant hereto, said Probation Officer participated in and was the cause of decedent Terelle Thomas's death.

13.     A Defendant is the City of Harrisburg, having a main place of business at 10 N.

---

[1] Plaintiffs are **not** suing Dauphin County Adult Probation.  Instead, as in the Original Complaint, Plaintiffs are suing John Doe Supervisory Officers of Dauphin County Adult Probation.

2nd St, Harrisburg, PA, 17110.  At all times relevant hereto, Defendant City of Harrisburg employed, trained and supervised the several Harrisburg police officers that participated in and were the cause of decedent Terelle Thomas's death. Defendant City of Harrisburg failed to adequately train its police personnel in recognizing and identifying arrestees with serious health issues requiring diversion to a hospital.

14.  A Defendant is Daril Foose, a Police Officer with Harrisburg Police, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Terelle Thomas's death.

15.  A Defendant is Scott Johnsen, a supervisory Police Officer with Harrisburg Police, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Terelle Thomas's death.

16.  A Defendant is Adrienne Salazar, a Police Officer with Harrisburg Police, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Terelle Thomas's death.

17.  A Defendant is Travis Banning, a Police Officer with Harrisburg Police, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Terelle Thomas's death

18.  A Defendant is Brian Carriere, a Police Officer with Harrisburg Police, having a

main place of business at 123 Walnut Street, Harrisburg, PA, 17110. At all times relevant hereto, said Police Officer participated in and was the cause of decedent Terelle Thomas's death.

19.    One or more Defendants are Harrisburg Police Department John Doe Police Officers (Harrisburg John Doe(s)) 1 - 5, having a main place of business at 123 Walnut Street, Harrisburg, PA, 17110. At all times relevant hereto, said Harrisburg John Does participated in and were the cause of decedent Terelle Thomas's death.

20.    A Defendant is PrimeCare Medical, Incorporated ("Defendant PrimeCare"), a corporation having a main place of business at 3490 Locust Lane, Harrisburg, Pennsylvania, 17109. At all times relevant hereto, Defendant PrimeCare was a corporation that provided, under contract with Dauphin County, the medical personnel that failed to provide medical care to decedent Terelle Thomas and thereby participated in and were the cause of decedent Terelle Thomas's death.

21.    At all times relevant hereto, Defendant PrimeCare had a duty to comply with generally accepted medical and mental health standards of care in their medical treatment of decedent Terelle Thomas.

22.    Defendant PrimeCare, by and through its agents, workers, doctors and nurses, violated their duty of care to decedent Terelle Thomas.

23.    Defendant PrimeCare's violation of its duty of care was a direct and proximate cause and a substantial factor in bringing about the decedent's injuries and death.

24.    One or more Defendants are PrimeCare John Doe Medical Employees

("PrimeCare John Doe") 1 – 5, having a place of business at 3490 Locust Lane in Harrisburg, PA, 17109.   At all times relevant hereto, said PrimeCare John Does participated in and were the cause of decedent Terelle Thomas's death, and their complained-of acts and omissions were objectively unreasonable, malicious and intended to cause harm.

25.     The complained-of acts and failures to act by Harrisburg Police supervisory and non-supervisory Defendants herein were objectively unreasonable and were malicious and sadistic and intended to cause harm.

26.     The acts and failures to act by DCAP John Does and non-supervisory Defendants herein were objectively unreasonable and were malicious and sadistic and intended to cause harm.

27.     At all times relevant hereto, the within described corporate, departmental and individual Defendants were state actors, and the individual Defendants were acting in the course and scope of their duties with their respective corporate or departmental employers, to wit, the City of Harrisburg, PrimeCare and Dauphin County, and in furtherance of those corporate or departmental employers' business objectives and purposes.

28.     At all times relevant hereto, the within described corporate and/or departmental employers, to wit, the City of Harrisburg, PrimeCare and Dauphin County, were liable for the acts and failures to act of the individual Defendants, both known and unknown to Plaintiffs, under theories of agency, master-servant, respondeat superior and/or control or right of control.

29.     Plaintiffs bring this action in part under and by virtue of the Pennsylvania

Wrongful Death Act, 42 Pa. C.S.A. §8301, and the Survival Act, 42 Pa. C.S.A. §8302, to recover damages legally appropriate thereunder, including, but not limited to damages for all hospital, medical, funeral, burial and estate administration expenses incurred, loss of support and contribution which the family would have received from the decedent from the time of his death for the duration of his work life expectancy; compensated for the pecuniary value of the services, society and comfort he would have given to his daughter had he lived; and compensated for the loss of the services the decedent would have contributed to his daughter, and also for the net amount of money the decedent would have earned from the date of his death and would have earned between that date and the end of his life work expectancy; compensation for the mental and physical pain and suffering and inconvenience the decedent endured from the moment of his injury to the moment of his death.

30. Plaintiffs' decedent did not bring an action during his lifetime for actual injuries or damages sought here.

31. At all times relevant hereto, Defendants individually and jointly, and at each successive stage from his initial arrest to his incarceration at the Dauphin County Booking Center, were under a duty and obligation to recognize and identify that decedent Terelle Thomas had serious medical health problems and to divert him from a prison environment to a hospital so that he might receive treatment instead of punishment.

32. At all times relevant hereto, Defendants individually and jointly breached that duty by failing to recognize and identify that decedent Terelle Thomas had

serious medical problems and failing to divert him from a prison environment to a hospital at which he would have received treatment instead of incarceration.

33.   As a direct and proximate result of that breach, decedent Terelle Thomas died on December 17, 2019 at the age of thirty-one (31) years old.

34.   At all times relevant hereto, Defendants also breached that duty by treating decedent Terelle Thomas unreasonably and inhumanely and denying him emergency medical treatment as described herein, and by further failing to properly document or record their contact with decedent Terelle Thomas.

35.   As a direct and proximate result of said unreasonable and inhumane treatment and denial of emergency medical treatment as described herein to which he was subjected at the hands of the Defendants, individually and/or jointly, Terelle Thomas died on December 17, 2019 at the age of thirty-one (31) years old.

36.   All Defendants, with the exception of City of Harrisburg, PrimeCare and Dauphin County, are being sued in their individual capacity.

### OPERATIVE FACTS

### Officers Arrest Decedent And Conclude That He Ingested Cocaine

37.   On or about December 14, 2019, at approximately 6:15 PM, Defendant Foose observed Decedent Thomas and another male walk from the area of a bar and enter a vehicle as passengers.

38.   The two men were walking, laughing, and conversing with each other when observed by Defendant Foose.

39.   Shortly thereafter, Defendant Foose began to follow the vehicle.

40.   Defendant Foose initiated a traffic stop at the intersection of South 17th Street

and Holly Street.

41.   Upon initiating contact with Decedent Thomas, Defendant Foose observed that
      Decedent Thomas spoke to her as if he had "cotton mouth" and a large amount
      of an unknown item inside of his mouth.

42.   As Decedent Thomas spoke, Defendant Foose saw strands in his mouth that
      were almost like gum and paste.

43.   Defendant Foose's knowledge, training and experience informed her that
      Decedent Thomas's behavior was common among individuals who have
      ingested something in order to conceal it from police.

44.   Defendant Foose then notified her partner Defendant Kinsinger that she believed
      Decedent Thomas was concealing something in his mouth and directed
      Defendant Kinsinger to detain Decedent Thomas.

45.   While being detained by Defendant Kinsinger, Decedent Thomas did not spit out
      the large item believed to be in his mouth, but instead only spit out a white liquid.

46.   After detaining the other occupants of the vehicle, Defendant Foose return to
      Decedent Thomas and after speaking to him, quickly concluded that Decedent
      Thomas had in fact ingested a large amount of cocaine.

47.   According to her report, Defendant Foose's conclusion that Decedent Thomas
      had ingested cocaine was based on several observations. Those observations
      included Decedent Thomas' lips being pasty white; Decedent Thomas' tongue
      and spit were white; a large amount of paste inside of Decedent Thomas' mouth;
      and Decedent Thomas' face was covered with a white powdery substance.
      Exhibit A at 6.

48.     Decedent Thomas informed Defendant Foose that the only drugs on his person
        was a small amount of marijuana and that his lips were white because he had
        consumed a candy cigarette.

49.     These assertions turned out to be untrue as Defendant Foose observed cocaine
        rocks fall out of Decedent Thomas's shirt has he unzipped his hoodie and she
        failed to find any candy cigarettes inside the vehicle or on any of the occupants of
        the vehicle.

50.     At approximately 6:22 p.m., Defendant Johnsen arrived at the location of the
        traffic stop.

51.     Upon his arrival, Defendant Kinsinger informed Defendant Johnsen that he had
        also reached the conclusion that Decedent had ingested crack cocaine.   Exhibit
        A at 8.

52.     Defendant Johnsen acknowledged the seriousness of ingesting cocaine by
        warning Decedent Thomas that he could possibly die from ingesting drugs.

53.     At approximately 6:22 p.m., Defendant Salazar arrived at the location of the
        traffic stop.

54.     Upon her arrival, Defendant Salazar was informed by Defendant Foose that
        Defendant Foose believed that Decedent Thomas had ingested crack cocaine.

55.     Defendant Salazar observed a white powder substance covering Decedent
        Thomas' lips and also reached the conclusion that Decedent Thomas had
        ingested cocaine.

56.     Like Defendant Johnsen, Defendant Salazar acknowledged the seriousness of
        ingesting cocaine by warning Decedent Thomas that doing so could have an ill

11

effect on his health. Exhibit A at 9.

57.    Defendant Salazar asked Decedent Thomas *what* he ingested, thus indicating a

belief that Decedent Thomas had in fact ingested cocaine as advised by

Defendant Foose.

58.    At approximately 6:22 p.m., Defendant Banning arrived at the location of the

traffic stop.

59.    Like the other officers, Defendant Banning observed a large amount of white

residue around and on Decedent Thomas' lips.

60.    Defendant Foose advised Defendant Banning that she believed Decedent

Thomas had eaten crack cocaine. Exhibit A at 10.

61.    Like Defendant Foose, Defendant Banning searched for and did not locate any

evidence of candy cigarettes to support Decedent's explanation for the white

residue around his lips.  Exhibit A at 10.

62.    Defendant Carriere subsequently arrived on the scene.

63.    Defendant Carriere was also informed by Defendant Foose that she suspected

Decedent Thomas had swallowed crack cocaine. Exhibit A at 11.

64.    In total, Defendants Foose, Kinsinger, Johnsen, Salazar, Banning and Carriere

(together, "Defendant Officers") had observed the following of Decedent Thomas:

- He spoke as if he had "cotton mouth";

- He had a large amount of an unknown item inside of his mouth;

- He never spit out the large unknown item;

- Cocaine rocks fell from his shirt and were all around where he sat in the car

despite his assertion that he only had marijuana on his person;

- He had a white substance on his lips and shirt; and

- No candy cigarettes or candy cigarette box were found despite his assertion that the white substance was the result of eating candy cigarettes.

65. Given these observations and the fact that Defendants Foose, Johnsen, and Salazar actually filed police reports indicating that they concluded that Decedent Thomas had ingested cocaine, Defendant Officers had no basis to believe Decedent's denials that he had ingested cocaine.

66. Finally, in a clear indication that Defendant Officers believed that Decedent ingested cocaine, Defendant Foose prepared and signed an Affidavit of Probable Cause alleging that she observed Decedent Thomas consume crack cocaine and criminally charged him with Tampering with Evidence. Exhibit B at 4.

**Despite Believing that Decedent Thomas had Swallowed a Large Amount of Cocaine, Defendant Officers Decided to Violate Departmental Policy and Take Decedent to Jail Instead of a Hospital**

67. As reported by Defendant Salazar, the officers on the scene subsequently made a decision to have Defendant Carriere transport Decedent Thomas to the Dauphin County Booking Center, which is located in the Dauphin County Jail. Exhibit A at 9.

68. The decision was made to take Decedent Thomas to the Dauphin County Booking Center for the purposes of detaining and processing Decedent as an arrestee.

69. Decedent Thomas was **not** taken to the Dauphin County Booking Center to receive medical attention.

13

70.    Indeed, none of the individual Defendants who completed a police report about this incident even suggested that anyone sought to provide Decedent Thomas with medical attention, much less take him to the Dauphin County Booking Center for a medical assessment by Defendant PrimeCare medical staff.  Exhibit A.

71.    Defendant Officers on the scene did not discuss taking Decedent Thomas to the Booking Center for medical treatment nor was a decision made to seek medical treatment for Decedent, despite their belief that Decedent had ingested a large amount of cocaine.

72.    Defendant Officers' failure to seek medical treatment amounted to a decision to violate Departmental policy and showed deliberate indifference to Decedent Thomas's need for medical care.

73.    The Harrisburg Police Department has a policy to take an arrestee to the hospital rather than the booking center if they have consumed illegal narcotics in a way that could jeopardize their health and welfare.

74.    Indeed, Harrisburg Mayor Eric Papenfuse has admitted that Decedent Thomas "should have received urgent medical care, and I deeply regret that he did not." See Exhibit C.

75.    Upon information and belief, this policy acknowledges the inherent danger in ingesting illegal narcotics and seeks to address this danger.

76.    Furthermore, upon information and belief, it is considered to be best practice to seek immediate medical treatment when an individual is suspected of ingesting illegal drugs.

77.   However, despite the Harrisburg Police Department policy, Defendant Officers made the decision to send Decedent Thomas to Dauphin County Booking Center in Defendant Carriere's police vehicle.  Exhibit A at 9.

78.   To that end, Defendant Salazar led Decedent Thomas to the caged compartment of Defendant Carriere's vehicle.

79.   At approximately 6:47 p.m., Defendant Carriere transported Decedent Thomas from the area South 17th Street and Holly Street to the Dauphin County Booking Center.

80.   Upon being placed in the police car, Decedent told Defendant Carriere that he was hot and requested that Defendant Carriere lower the window.  Defendant Carriere did so.

81.   This request was yet another indication that Decedent had ingested cocaine and was in need of medical attention.

82.   Specifically, the air temperature at the time was approximately 46 degrees. Decedent Thomas's complaint of being hot and needing his window down was an indication that he was in physical distress and in need of emergency medical attention.

**Dauphin County Prison[2] Was Not the Fit to Render Proper Medical Services**

83.   Defendant Dauphin County contracts with Defendant PrimeCare to provide limited medical care to inmates incarcerated in the Dauphin County Prison.

---

[2] The Dauphin County Prison and Dauphin County Booking Center are used interchangeably herein.  Upon information and belief, The Booking Center and Judicial Center are located within the Prison and arrestees enter the Prison once they are processed through the Booking Center.  Defendants PrimeCare John Does and DCP John Does work interchangeably in the Booking Center and Prison.

84.    Defendant PrimeCare asserts on its website that it offers health care programs that are customized to meet the specific needs of its clients.

85.    Specifically, in the Dauphin County Prison, Defendant PrimeCare focuses on providing correctional health care specific to the Dauphin County correctional facility.

86.    As such, Defendant PrimeCare is not outfitted like a hospital or even like the Emergency Room of a hospital.

87.    Upon information and belief, Defendant PrimeCare is not equipped to perform tasks routinely performed at hospitals such as x-rays; CT-scans, stomach-pumping or setting broken bones.

88.    Instead, Defendant PrimeCare must tranfer inmates to nearby UPMC Pinnacle Harrisburg Hospital for tests, treatment, scans, etc.

89.    As such, Defendant PrimeCare is not equipped or designed to behave like a hospital or emergency room and treat new arrivals like Decedent who show up to Dauphin County Prison with ailments like ingesting cocaine.

90.    Moreover, by December 14, 2019, Defendant PrimeCare and Dauphin County Prison had developed a reputation of not providing adequate health care to inmates thereby underscoring the notion that Dauphin County Prison was not fit to render proper medical services to an individual who had ingested cocaine.

91.    Specifically, in the 5 years before Decedent Thomas died in custody, 10 people housed in Dauphin County Prison died, with many of them receiving questionable medical care.  These deaths include:

   • Ty'rique Riley (21 years old) fell unconscious on June 26, 2019 and died on July

1, 2019 from a medical crisis.  Defendant PrimeCare is currently being sued for, *inter alia*, failing to provide Mr. Riley with proper medical care;

- James Macaulay (45) died March 21, 2019 of suicide;

- Emily E.Endrizzi (39) died March 11, 2019 of suicide; and

- Sarah E. Quinn (29) died September 17, 2017 of suicide.

    https://www.pennlive.com/news/2019/07/ten-prisoners-died-in-dauphin-county-4-of-them-from-suicide-in-past-5-years.html.

92. Mr. Riley's death and the string of suicides indicate at the very least issues with the medical care and monitoring occurring at Dauphin County Prison when the Defendant Officers decided to take Decedent Thomas to the prison instead of the hospital.

**Decedent Thomas was taken to Dauphin County Prison and Ignored**

93. Upon arrival at the Dauphin County Booking Center, Defendant Carriere informed DCP John Doe(s) and Dauphin County Prison medical staff that Decedent Thomas may have swallowed crack cocaine. See Exhibit A, page 11.

94. Defendant DCP John Does and Defendant PrimeCare John Does noted that Decedent Thomas had white powder on his lips.

95. Despite receiving information suggesting that Decedent Thomas ingested cocaine, neither Defendant PrimeCare John Does nor Defendant DCP John Does took actions to transfer Decedent to a hospital where he could be properly monitored and treated.

96. The Dauphin County Prison was ill-equipped to determine if Decedent Thomas had ingested cocaine and ill-equipped to provide medical care to address a

cocaine ingestion.  As such, Defendants PrimeCare John Does and DCP John

Does could not properly assess Decedent Thomas and clear him to stay at the

prison.

97.     Despite this, at approximately 7:13 p.m. Decedent Thomas was placed in a cell

at Dauphin County Booking Center and given no medical care or proper

observation.

98.     At approximately 8:04 p.m., Decedent Thomas is seen on surveillance video

falling backwards on to the floor and hitting his head. Decedent Thomas then

suffered cardiac arrest and "coded" on the floor of the Booking Center cell.

99.     Shortly thereafter, Defendants PrimeCare John Does and DCP John Does

arrived to find Decedent Thomas with white powder still on his lips. Decedent

Thomas was unresponsive, pulseless and apneic.

100.    Decedent Thomas falling backwards on to the floor during cardiac arrest was

recorded on a Booking Center camera.

101.    At approximately 8:24 p.m. Decedent Thomas was finally transported by

emergency medical technicians to UPMC Pinnacle Harrisburg Hospital for

medical treatment.

102.    Decedent Thomas remained hospitalized at UPMC Pinnacle Harrisburg Hospital

until December 17, 2019.

103.    At approximately 5:05 p.m. on December 17, 2019, Decedent Thomas died, and

after an autopsy was performed, the cause of death was determined to be

cocaine and fentanyl toxicity.

104.    On December 27, 2019, Defendant City of Harrisburg, in an attempt to obtain

negative information regarding Decedent Thomas, directed a police Sargent to the home of Decedent Thomas' sister Sherelle Thomas where she was coerced to sign a consent form to search the contents of Decedent Thomas' cellular phone.

**Defendants Repeatedly Failed Decedent Thomas**

105.    Despite the suspicions of Defendant Officers that Decedent Thomas had swallowed a dangerous drug, Decedent Thomas was taken to a prison instead of a hospital for emergency medical treatment.

106.    Once at the Dauphin County Prison, Defendants DCP John Does and PrimeCare John Does were deliberately indifferent to Decedent Thomas' health crisis and his need for emergency medical treatment, and failed to transfer him to a hospital for observation and treatment.

107.    Instead of taking Decedent Thomas to a hospital or other medical facility, and because they had been poorly trained to recognize dangerous health issues, all of the individual police and probation officers involved in the arrest of Decedent Thomas ignored police and county protocol that called for Decedent Thomas to be taken to the hospital for emergency medical care and instead Defendant Carriere took Decedent Thomas to the Dauphin County Booking Center at Dauphin County Jail.

108.    In failing to train its police, probation officers, medical staff and prison officials in detecting and recognizing medical emergencies among the people its officers arrested, Defendants City of Harrisburg, PrimeCare and Dauphin County exposed its deliberate indifference to the medical needs of people its officers

might be called upon to arrest.

109.   Defendants City of Harrisburg, PrimeCare, Dauphin County and their officers and

staff were under a duty to obtain for Decedent Thomas and other arrestees

medical attention when it appeared they needed it, but said Defendants made no

effort to train their officers to detect, recognize, and/or respond to medical

emergencies in the people their officers arrested or to provide or obtain any

medical attention for Decedent Thomas.

## FEDERAL CLAIMS

**COUNT I:   Sherelle Thomas, Administrator of the Estate of Terelle Thomas, Deceased -v- Defendants Officer Daril Foose, Probation Officer Dan Kinsinger, Officer Scott Johnsen, Officer Adrienne Salazar, Officer Travis Banning, Officer Brian Carriere, DCP John Does and PrimeCare John Does. (Deprivation of Rights Guaranteed Under the 14th Amendment to the U. S. Constitution, addressable via 42 U. S. C. §1983; Failure to Intervene)**

110.   The allegations contained in all preceding Paragraphs are here incorporated and

included by reference as if fully set forth here.

111.   As indicated above, Defendant Officers, Defendant DCP John Does and

Defendant PrimeCare John Does individually and/or jointly failed to provide

Decedent Thomas with needed emergency medical care.

112.   As the denial of medical treatment continued, none of the individuals present

intervened to stop the denial of medical care or otherwise bring it to a halt despite

having several opportunities to do so, whether at the scene of the arrest or at

Dauphin County Prison.

113.   At any point at the scene of the arrest, any one of Defendants Foose, Johnsen,

Salazar, Banning, Carriere and Kinsinger could have stepped in to provide

Decedent Thomas with medical care by taking him to the hospital given the fact that Defendant Officers believed that he had ingested cocaine and given the Harrisburg Police Department policy to take individuals suspected of ingesting narcotics to a hospital rather than the Dauphin County Prison.

114. Likewise, at any point at the Dauphin County Booking Center within the Dauphin County Prison, any one of Defendants DCP John Does or PrimeCare John Does could have stepped in to transfer Decedent Thomas to a hospital for proper monitoring and treatment.

115. Indeed, Defendant Officers, Defendant DCP John Does and Defendant PrimeCare John Does all had reasonable and realistic opportunities to intervene as the denials of medical care occurred in their presence and were ongoing.

116. These failures to intervene in the denial of emergency medical treatment were so malicious and objectively unreasonable that it would shock the conscience of a reasonable person.

117. Defendants' failure to intervene exceeded the normal standards of decent conduct, exhibited a deliberate indifference to Decedent's health and well-being and was willful, malicious, oppressive, outrageous, and unjustifiable.  Therefore, punitive damages are necessary and appropriate.

118. As a direct and proximate result of Defendants' failure to intervene as more particularly described above, Decedent Thomas's rights protected under the Fourteenth Amendment were violated, and he suffered injury as a result.

119. Defendants subjected Decedent Thomas to these deprivations of rights unreasonably, intentionally, wantonly, outrageously, and with conscious and

reckless disregard for whether his rights would be violated by their actions.

120.  As a direct and proximate result of Defendants' failure to intervene, Decedent

Thomas suffered deprivations of his rights, physical injuries, pain and suffering,

emotional distress, and mental anguish, all to his great detriment and loss.

**WHEREFORE**, Plaintiff demands judgment in its favor and against said

Defendants, individually and/or jointly, and requests all appropriate relief in an amount

in excess of FIVE MILLION ($5,000,000.00) DOLLARS, including, but not limited to,

compensatory damages, court costs, punitive damages, attorneys fees and all other

relief as the Court deems appropriate.

**COUNT II:   Sherelle Thomas, Administrator of the Estate of Terelle Thomas, Deceased -v- Dauphin County, PrimeCare, DCAP John Doe Supervisory Officers, DCP John Doe Prison Officials and PrimeCare John Doe (Deprivation of Rights Guaranteed Under the 14th Amendment to the U. S. Constitution, addressable via 42 U. S. C. §1983; Failure to Train, Supervise, Control or Discipline)**

121.  The allegations contained in all preceding Paragraphs are here incorporated and

included by reference as if fully set forth here.

122.  Dauphin County and DCAP John Doe Supervisory Officers, have exclusive

management and control of the policies and practices of Dauphin County Adult

Probation regarding the method and manner of recognizing individuals in custody

whom require emergency medical care and are responsible for insuring that

Dauphin County Adult Probation Officers otherwise conduct themselves in a

lawful manner in undertaking and performing their duties. Defendants Dauphin

County and DCAP John Does are vested with the authority to establish policies

or customs, practices and usages of Dauphin County Adult Probation through

training, supervision, discipline and otherwise controlling the officers of Dauphin County Adult Probation.

123.    Dauphin County and DCP John Doe Prison Officials, have exclusive management and control of the policies and practices of Dauphin County Booking Center regarding the method and manner of recognizing individuals in custody whom require emergency medical care and are responsible for insuring that corrections officers working in the Booking Center otherwise conduct themselves in a lawful manner in undertaking and performing their duties. Defendants Dauphin County and DCP John Does are vested with the authority to establish policies or customs, practices and usages of the Booking Center through training, supervision, discipline and otherwise controlling the officers of Booking Center.

124.    PrimeCare and PrimeCare John Does have exclusive management and control of the policies and practices of PrimeCare Medical Staff operating in the Dauphin County Prison regarding the method and manner of recognizing individuals in custody whom require emergency medical care and are responsible for insuring that medical staff working in the Booking Center and Prison otherwise conduct themselves in a lawful manner in undertaking and performing their duties. Defendants PrimeCare and PrimeCare John Does are vested with the authority to establish policies or customs, practices and usages of the Booking Center through training, supervision, discipline and otherwise controlling the medical staff of Booking Center and Prison.

125.    Defendants Dauphin County, PrimeCare, DCAP John Does,DCP John Does and

PrimeCare John Does violated the Decedent's rights by the custom and practice of failing to train, instruct, supervise, control and discipline the probation officers of Dauphin County Adult Probation,the corrections officers of Dauphin County Prison and the medical staff working in the Dauphin County Prison in recognizing individuals in custody whom require emergency medical care. Said customs, practice and usage caused the deprivation of Decedent's rights secured under the Fourteenth Amendment to the United States Constitution, other laws of the United States, and the laws of the Commonwealth of Pennsylvania.

126. There exists within Dauphin County Adult Probation and the Dauphin County Booking Center policies or customs, practices and usages that are so pervasive that they constitute the policies of the Probation Department and Booking Center, such that they are and were the moving force behind and thereby caused the constitutional deprivations of the Decedent as have been set forth herein.

127. The polices, customs, practices and usages that exist include the following:

- The officers of DCAP detain individuals at the direction of Harrisburg police officers and in doing so, disregard Harrisburg Police Department policy and ignore obvious needs for medical attention; and

- The officers of DCAP and the Dauphin County Booking Center and the PrimeCare medical staff fail to render emergency medical care to persons in custody without regard for whether the individual faces imminent death.

128. As a result of Dauphin County, PrimeCare, DCAP John Does, DCP John Does and PrimeCare John Does' failure to train, discipline or supervise their officers, they deprived Decedent Thomas of his rights to be free from the denial of

24

medical care in violation of the Fourteenth Amendment to the Constitution of the United States and remediable under 42 U.S.C. §1983.

**WHEREFORE**, Plaintiff demands judgment in its favor and against said Defendants individually and/or jointly, and requests all appropriate relief in an amount in excess of FIVE MILLION ($5,000,000.00) DOLLARS, including, but not limited to, compensatory damages, court costs, punitive damages, attorneys fees and all other relief as the Court deems appropriate.

**COUNT III:   Sherelle Thomas, Administrator of the Estate of Terelle Thomas, Deceased -v- City of Harrisburg,  Harrisburg Police John Does
(Deprivation of Rights Guaranteed Under the 14th Amendment to the U. S. Constitution, addressable via 42 U. S. C. §1983; Failure to Train, Supervise, Control or Discipline)**

129.    The allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

130.    The City of Harrisburg and Harrisburg Police John Does, have exclusive management and control of the policies and practices of the Harrisburg Police Department regarding the method and manner of recognizing individuals in custody whom require emergency medical care and are responsible for insuring that members of the Harrisburg Police Department otherwise conduct themselves in a lawful manner in undertaking and performing their duties. Defendants City of Harrisburg and Harrisburg Police John Does are vested with the authority to establish policies or customs, practices and usages of the Harrisburg Police Department through training, supervision, discipline and otherwise controlling the officers of Harrisburg Police Department.

131.    Defendants City of Harrisburg and Harrisburg Police John Does violated the Decedent's rights by the custom and practice of failing to train, instruct, supervise, control and discipline the officers of the Harrisburg Police Department in recognizing individuals in custody who require emergency medical care. Said customs, practice and usage caused the deprivation of decedent's rights secured under the Fourteenth Amendment to the United States Constitution, other laws of the United States, and the laws of the Commonwealth of Pennsylvania.

132.    There exists within Harrisburg Police Department policies or customs, practices and usages that are so pervasive that they constitute the policies of the Harrisburg Police Department, such that they are and were the moving force behind and thereby caused the constitutional deprivations of the Decedent as have been set forth herein.

133.    The polices, customs, practices and usages that exist include the following:

- The officers of the Harrisburg Police Department detain individuals and disregard Harrisburg Police Department policy by ignoring obvious needs for medical attention; and

- The officers of the Harrisburg Police Department fail to render emergency medical care to persons in custody without regard for whether the individual faces imminent death.

134.    As a result of the City of Harrisburg and Harrisburg Police John Does' failure to train, discipline or supervise their officers, they deprived Decedent Thomas of his rights to be from the denial of medical care in violation of the Fourteenth Amendment to the Constitution of the United States and remediable under 42

U.S.C. §1983.

**WHEREFORE**, Plaintiff demands judgment in its favor and against said Defendants, individually and/or jointly, and requests all appropriate relief in an amount in excess of FIVE MILLION ($5,000,000.00) DOLLARS, including, but not limited to, compensatory damages, court costs, punitive damages, attorneys fees and all other relief as the Court deems appropriate.

### COUNT IV: Sherelle Thomas, Administrator of the Estate of Terelle Thomas, Deceased -v- Defendant Officers, PrimeCare John Does and DCP John Does (Failure to Render Medical Care)

135.   The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

136.   Decedent Thomas had a constitutional right to appropriate medical care when he was placed under arrest by law enforcement officials who believed that he had ingested a large amount of cocaine.

137.   Likewise, Decedent Thomas had a constitutional right to appropriate medical care when he was received by the Dauphin County Prison as an arrestee and a pre-trial detainee by officials and medical staff who were informed that he may have ingested a large amount of cocaine.

138.   At all times mentioned herein, the failure to render medical care to Decedent Thomas by Defendants Daril Foose, Dan Kinsinger, Scott Johnsen, Adrienne Salazar, Travis Banning, and Brian Carriere ("Defendant Officers") was a violation of Decedent's constitutional rights in that it amounted to a deprivation of health, life, and property in violation of the Due Process Clause of the Fourteenth

Amendment to the Constitution of the United States, in each and all of the following ways:

- By performing their duties as police officers and first responders with deliberate indifference for the serious medical condition of Decedent Thomas;

- By failing to take appropriate steps to protect Decedent Thomas from a known danger when the defendants were aware of a serious medical need based on Decedent Thomas' actions and symptoms and based on the officers' own beliefs;

- By failing to take the appropriate steps when the failure to treat Decedent Thomas' medical condition could and did result in further significant injury and the unnecessary and wanton infliction of death;

- By failing to take the appropriate steps when the existence of Decedent Thomas' medical condition was such that a reasonable police officer would find it important and worthy of comment or treatment;

- By failing and refusing to transport Decedent Thomas to a hospital for emergency medical help;

- By deliberately denying decedent medical attention and causing decedent's death;

- By failing to follow the policies and procedures of Harrisburg Police

Department.

139. As shown above, Defendant Officers believed that Decedent Thomas had ingested cocaine to avoid detection.

140. As also stated above, given Decedent Thomas's false assertions when arrested, combined with Defendant Officers' observations, it stands to reason that Defendant Officers had no basis to believe Decedent's denials that he had ingested cocaine.

141. Moreover, it is illogical to believe that an individual who ingested illegal drugs would readily admit to doing so since his objective in swallowing the drugs is to avoid detection.

142. Any attempt to argue that Defendant Officers relied on Decedent's assertions that he did not ingest cocaine is undermined by the fact that Defendant Foose asserted in a Criminal Complaint that Decedent was observed consuming crack coaine and that he was charged with tampering with evidence.

143. By making the decion to take Decedent Thomas to the Dauphin County Booking Center instead of the hospital given their beliefs that he ingested cocaine, and given the Departmental policy requiring a transport to the hospital, Defendant Officers were deliberately indifferent to Decedent's serious need for medical attention.

144. Defendant Carriere displayed further deliberate indifference by reporting to the officials at the Booking Center that Decedent *may* have ingested cocaine when he and the other Defendant Officer acutally believed that Decedent had in fact ingested cocaine.

145.   At the Dauphin County Booking Center, PrimeCare John Does and DCP John Does deprived Decedent Thomas of health, life, and property in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, in each and all of the following ways:

- By refusing to admit Decedent to the Dauphin County Prison given PrimeCare's inability to properly treat someone suspected of ingesting cocaine;

- By failing to immediately transfer Decedent to a hospital upon learning that he may have ingested cocaine given their inability to adequately determine, monitor and treat Decedent;

- By failing to monitor Decedent and thereby allowing him to "code" on the floor of his jail cell;

- By failing to correctly assess Decedent as proof of their failed assessment was the fact that Decedent died of cocaine and fentanyl toxicity.

146.   At all times mentioned herein Defendants Daril Foose, Dan Kinsinger, Scott Johnsen, Adrienne Salazar, Travis Banning, Brian Carriere, PrimeCare John Does and DCP John Does individually and/or jointly were deliberately indifferent to the serious medical condition of Decedent Terelle Thomas, notwithstanding notice and actual knowledge thereof.

**WHEREFORE**, Plaintiff demands judgment in its favor and against said, individually and/or jointly, and requests all appropriate relief, in an amount in excess of

FIVE MILLION ($5,000,000.00) DOLLARS, including, but not limited to, compensatory

damages, court costs, punitive damages, attorneys fees and all other relief as the Court

deems appropriate.

## STATE LAW CLAIMS

### COUNT V:   Sherelle Thomas, Administrator of the Estate of Terelle Thomas, Deceased -v- Defendants PrimeCare and PrimeCare John Does (Medical Negligence)

147.   The allegations contained in all preceding Paragraphs are here incorporated and

included by reference as if fully set forth here.

148.   At all times relevant hereto, Defendant PrimeCare and its medical providers

including PrimeCare John Does had a duty to comply with generally accepted

medical health standards of care in its medical and mental health treatment of

Decedent Thomas.

149.   Defendant PrimeCare had a duty to establish polices, practices, and procedures

to ensure that its respective agents, workers, doctors and nurses correctly

assess arrestees brought to the Dauphin County Prison for admission; refuse to

admit arrestees that they cannot properly treat; and, once admitted, properly treat

and care for pre-trial detainees.

150.   Defendant PrimeCare, by and through its respective agents, workers, doctors

and nurses, including PrimeCare John Does, violated its duty of care to

Decedent Thomas and provided care that was below applicable standards of

care for admitting, monitoring, supervising and treating arrestees in need of

medical treatment.

151.   As a direct and proximate result of that breach, decedent Terelle Thomas

31

suffered deprivations of his rights, physical injuries, pain and suffering, emotional distress, mental anguish, and eventually death on December 17, 2019 at the age of thirty-one (31) years old.

**WHEREFORE**, Plaintiff demands judgment in its favor and against said Defendants, individually and/or jointly, and requests all appropriate relief, in an amount in excess of FIVE MILLION ($5,000,000.00) DOLLARS, including, but not limited to, compensatory damages, court costs, punitive damages, attorneys fees and all other relief as the Court deems appropriate.

### COUNT VI:  Plaintiff T.T., a minor -v- Defendants PrimeCare and PrimeCare John Does
### (Wrongful Death)

152.   The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

153.   Decedent's sole survivor is his daughter, T.T., a minor, who is entitled to recover damages for his death, and on whose behalf this action is brought pursuant to the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. Section 8301 et seq.

154.   Decedent's death was caused by the intentional, malicious, and/or grossly negligent conduct of said Defendants, individually and/or jointly.

155.   As described above, said Defendants, through their medical negligence, caused the death of Decedent Terelle Thomas.

156.   As a direct and proximate result of said Defendants' individual and joint actions, Decedent Terelle Thomas was unnecessarily caused extreme physical pain, mental anguish and suffering, and death, and was deprived of the enjoyment and pleasure of life.

157.  As a further direct and proximate result of said Defendants' actions, decedent's survivor has suffered serious emotional pain and economic loss due to the wrongful death of her father, Terelle Thomas.

158.  As a direct and proximate result of said Defendant's actions, decedent's daughter is entitled to recover damages for:

      (a)  the loss of the value of decedent's services;

      (b)  loss of decedent's comfort and society;

      (c)  contributions decedent would have made to the plaintiffs from his labor;

      (d)  all damages recoverable under the statute.

**WHEREFORE**, Plaintiff T.T., a minor, demands judgment in her favor and against said Defendants, individually and/or jointly, and request all appropriate relief, including, in an amount in excess of FIVE MILLION ($5,000,000.00) DOLLARS, including but not limited to, compensatory damages, court costs, attorneys fees and all other relief as the Court deems appropriate.

## COUNT VII: Estate of Terelle Thomas -v- Defendants PrimeCare and PrimeCare John Does
### (Survival Action)

159.  The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

160.  As a direct and proximate result of said Defendants' actions as described herein, Terelle Thomas suffered grievous bodily injury, and mental and physical pain and suffering.

161.  From the time of his arrest until the time of his death, and throughout his

detention, Decedent Thomas was conscious and aware of the denial of medical care and other harmful acts to which he was subjected by said Defendants, individually and/or jointly, and felt extreme pain and suffering as a result thereof.

162. On behalf of the Estate of Terelle Thomas, Sherelle Thomas, Administrator of the Decedent's Estate, brings this action under the Pennsylvania Survival Act, 42 Pa. C.S.A. Section 8302, and claims for Terelle Thomas's Estate compensation for all damages suffered by Terelle Thomas and recoverable under the statute by reason of the grievous bodily injury, mental and physical pain and suffering caused him by said Defendants as described above.

**WHEREFORE**, the Estate of Terelle Thomas demands judgment in its favor and against Defendants, individually and/or jointly, and requests all appropriate relief, in an amount in excess of FIVE MILLION ($5,000,000.00) DOLLARS, including, but not limited to, compensatory damages, court costs, attorneys fees and all other relief as the Court deems appropriate.

Respectfully submitted,

**MINCEY FITZPATRICK ROSS, LLC**

/s/ Kevin V. Mincey
Kevin V. Mincey


/s/ Riley H. Ross III
Riley H. Ross III

Date:  March 25, 2021                    ***Attorneys for Plaintiffs***