**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHERELLE THOMAS, | : | |
| ADMINISTRATOR OF THE ESTATE | : | No. 1:20-cv-01178 |
| OF TERELLE THOMAS and | : | |
| T.T., a minor, individually, as child of | : | (Judge Kane) |
| decedent Terelle Thomas and as his | : | |
| sole survivor, | : | |
|   Plaintiffs | : | |
| | : | |
|    v. | : | |
| | : | |
| HARRISBURG CITY POLICE | : | |
| DEPARTMENT, et al., | : | |
|   Defendants | : | |

**MEMORANDUM**

Presently before the Court are six (6) motions to dismiss for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6) brought by: (1) Defendant City of

Harrisburg ("Defendant City") (Doc. No. 55); (2) Defendant Officers Daril Foose ("Foose") and

Brian Carriere ("Carriere") (Doc. No. 56); (3) Defendant Officers Scott Johnsen ("Johnsen"),

Adrienne Salazar ("Salazar"), and Travis Banning ("Banning") (Doc. No. 54); (4) Defendant

Probation Officer Dan Kinsinger ("Kinsinger") (Doc. No. 57); and (5) Defendant PrimeCare

Medical, Inc. ("PrimeCare") (Doc. Nos. 87, 90).  Defendant Dauphin County ("Defendant

County") has filed a motion for judgment on the pleadings.  (Doc. No. 73.)  Also before the

Court are: (1) PrimeCare's motion to strike Plaintiffs' amended certificate of merit in support of

their state law claims (Doc. No. 98); (2) a joint motion to strike Plaintiffs' notices of

supplemental authority (Doc. Nos. 95, 96, 97) brought by Defendants Foose, Carriere, Johnsen,

Salazar, and Banning (Doc. No. 101); and (3) Plaintiffs' motion for leave to file an untimely

opposition to PrimeCare's motion to strike (Doc. No. 104).  For the reasons that follow, the

Court will deny the motions.

# I.    BACKGROUND

## A.    Procedural Background

Plaintiffs Sherelle Thomas, administrator of the estate of Terelle Thomas, and T.T., a minor, as child and sole survivor of decedent Terelle Thomas, initiated the above-captioned action by filing a complaint in this Court on July 10, 2020.  (Doc. No. 1.)  Plaintiffs' complaint asserted various state law claims as well as federal claims against Defendants pursuant to 42 U.S.C. § 1983 arising from the circumstances surrounding the death of Terelle Thomas ("Decedent").  (Id.)  The Court dismissed Plaintiffs' complaint on February 23, 2021.  (Doc. No. 50.)  The order terminated Dauphin County Adult Probation as a defendant on sovereign immunity grounds, but granted Plaintiffs leave to file an amended complaint to rectify all other pleading deficiencies identified by the Court.  (Id.)  Plaintiffs subsequently filed an amended complaint adding PrimeCare and PrimeCare John Doe Employees as defendants.  (Doc. No. 52.)  Plaintiffs' amended complaint asserts: (1) a federal claim for failure to intervene against Defendant Officers Foose, Kinsinger, Johnsen, Salazar, Banning, Carriere, and various John Doe Officers and PrimeCare employees (collectively the "Individual Defendants") (Count I); (2) claims for failure to train, supervise, control, or discipline against Defendant County and Defendant City (collectively the "Government Defendants") as well as PrimeCare, John Doe Dauphin County Adult Probation ("DCAP") Supervisory Officers, John Doe Prison Officials, John Doe PrimeCare employees, and Harrisburg Police John Does (Counts II and III); (3) a claim for failure to render medical care against the Individual Defendants (Count IV); and (4) state law claims for medical negligence, wrongful death, and survival action against PrimeCare and PrimeCare John Does (Counts V, VI, and VII).  (Id.)

Defendants Banning, Johnsen, Salazar, Carriere, Foose, and Defendant City filed motions to dismiss Plaintiffs' amended complaint on April 8, 2021.  (Doc. Nos. 54, 55, 56.)  Defendant Kinsinger filed a motion to dismiss the following day.  (Doc. No. 57.)  On April 15, 2021, Defendant County filed an answer to the amended complaint with affirmative defenses and a crossclaim against all other Defendants.  (Doc. No. 58.)  All other Defendants filed responses to Defendant County's answer (Doc. Nos. 68, 70, 71, 72), after which Defendant County filed a motion for judgment on the pleadings (Doc. No. 73).

On May 5, 2021, PrimeCare filed a notice of intention to file a motion to dismiss Plaintiffs' state law claims for failure to file a certificate of merit pursuant to Pennsylvania law. (Doc. No. 69.)  Pursuant to the deadline PrimeCare provided in the notice, PrimeCare filed a motion to dismiss on June 14, 2021.[1]  (Doc. No. 87.)  Plaintiffs subsequently filed a certificate of merit.  (Doc. No. 89.)  When PrimeCare filed a supplemental motion to dismiss on June 23, 2021 (Doc. No. 90), Plaintiffs filed an amended certificate of merit (Doc. No. 92).  PrimeCare then filed a motion to strike Plaintiffs' amended certificate of merit.  (Doc. No. 98.)  On July 3, 2021, Plaintiffs filed three notices of supplemental authority in support of their opposition to the pending motions to dismiss, alerting the Court to a June 28, 2021 decision of the United States Supreme Court.  (Doc. Nos. 95, 96, 97.)  On July 12, 2021, the Individual Defendants filed a joint motion to strike Plaintiffs' supplemental filings for noncompliance with the Local Rules of this Court.  (Doc. No. 101.)  On July 28, 2021, Plaintiffs filed a revised notice of supplemental authority in response to the arguments raised in the Individual Defendants' motion to strike to

---

[1] The record is somewhat unclear on this point as PrimeCare's notice indicates a deadline of June 4, 2021, but PrimeCare's later submissions to the Court indicate that Plaintiffs requested extensions of time to file the certificate of merit and PrimeCare agreed to extend the deadline through June 18, 2021.  (Doc. No. 98 ¶¶ 3-6.)

bring Plaintiffs' filing into compliance with the Middle District of Pennsylvania Local Rules for notices of supplemental authority.[2]  (Doc. No. 106.)  Plaintiffs also filed a motion for leave to file an untimely opposition to PrimeCare's motion to strike.  (Doc. No. 104.)  All pending motions are now ripe for disposition.

### B.    Factual Background[3]

On December 14, 2019, at approximately 6:15 p.m., Defendant Officer Foose observed Decedent and another man enter a vehicle after walking away from a bar.  (Doc. No. 52 ¶ 37.) Shortly thereafter, Foose began to follow the vehicle and ultimately initiated a traffic stop.  (Id. ¶¶ 39-40.)  Foose observed that Decedent appeared to have something in his mouth.  (Id. ¶¶ 41-43.)  Foose then notified her partner, Kinsinger, that she suspected Decedent was attempting to conceal something and asked Kinsinger to detain Decedent.  (Id. ¶ 44.)  While being detained by Kinsinger, Decedent spat out a white liquid.  (Id. ¶ 45.)

Foose then went to speak to Decedent, noting in her report that she suspected he had ingested a large amount of cocaine because "[h]is lips were completely pasted white. His tongue and spit were white and forming a large amount of paste inside of his mouth.  [Decedent's] face appeared to be covered in a white powdery substance."  (Id. ¶ 47, Exh. A at 6.)  Decedent denied ingesting cocaine and told Foose that his lips were white because he had consumed a candy cigarette.  (Id. ¶ 48.)  However, Foose observed cocaine rocks falling out of Decedent's shirt when he unzipped his hoodie. (Id. ¶ 49.)  No candy cigarettes were found in the vehicle or on the

---

[2] In light of Plaintiffs' filing of the revised notice of supplemental authority in compliance with the Local Rules of this Court, the Court will not consider Plaintiffs' previously filed notices and will deny the Individual Defendants' motion to strike as moot.

[3] The following factual background is taken from the allegations of Plaintiffs' amended complaint. (Doc. No. 52.)

occupants of the vehicle.  (Id.)  When Officers Johnsen, Salazar, and Banning arrived on the

scene, Kinsinger and Foose advised them that they believed Decedent had ingested cocaine.  (Id.

¶¶ 50-55, 58-60.)  Carriere was also informed of the suspicions of the other officers when he

arrived on the scene.  (Id. ¶ 63.)  After the conclusion of the incident, Foose prepared and signed

an affidavit of probable cause alleging that she observed Decedent consume cocaine and

criminally charged him with tampering with evidence.  (Id. ¶ 66, Exh. B at 4.)

Carriere transported Decedent to the Dauphin County Booking Center ("Booking

Center").  (Id. ¶ 67.)  Plaintiffs assert that Decedent was not taken to the Booking Center to

receive medical attention, but rather for the purposes of detaining and processing Decedent as an

arrestee.  (Id. ¶ 68.)  During the transport, Decedent complained that he was hot and requested

that Carriere roll down the window despite the temperature being approximately forty-six (46)

degrees.  (Id. ¶¶ 80-82.)  Several of the Individual Defendants completed police reports pursuant

to the incident.  (Id. ¶¶ 70-71, Exh. A.)  None of those reports indicate that any officer sought to

provide Decedent with medical attention or that any discussion about the provision of medical

treatment occurred at the time of arrest.  (Id.)  Plaintiffs allege that this decision was in violation

of Harrisburg Police Department policy that requires arrestees to be taken to the hospital if they

have consumed illegal narcotics in a way that could jeopardize their health and welfare.  (Id. ¶

73.)

Upon arrival at the Booking Center, Carriere informed various John Does and medical

staff that Decedent may have ingested cocaine.  (Id. ¶ 93.)  Despite this information and despite

observing white powder on Decedent's mouth, John Does failed to take any action to transfer

Decedent to a hospital for monitoring and treatment.  (Id. ¶¶ 94-95.)  Decedent, still with white

powder on his lips, was instead placed in a cell without medical care or physical observation.

(Id. ¶ 97.)  Decedent subsequently fell backwards onto the floor and hit his head, after which he suffered cardiac arrest.  (Id. ¶ 98.)  Not until almost 20 minutes later was Decedent finally transported by emergency medical technicians to UPMC Pinnacle Harrisburg Hospital for medical treatment.  (Id. ¶ 101.)  Decedent was pronounced dead on December 17, 2019.  (Id. ¶ 103.)  The cause of death was later determined to be cocaine and fentanyl toxicity.  (Id.)

Defendant County contracts with PrimeCare to provide limited medical care to inmates at Dauphin County Prison.  (Id. ¶ 83.)  Plaintiffs allege that PrimeCare is not outfitted like a hospital or emergency room and not equipped to perform tasks routinely performed in hospitals such as x-rays, CT scans, stomach pumping, or setting broken bones.  (Id. ¶¶ 86-87.)  Instead, PrimeCare must transfer inmates to the UPMC Pinnacle Harrisburg Hospital for tests, treatment, and scans.  (Id. ¶ 88.)  Accordingly, Plaintiffs allege that PrimeCare is not equipped or designed to treat new arrivals like Decedent who are suspected to have ingested drugs.  (Id. ¶ 89.)

Furthermore, Plaintiffs allege that on the date of Decedent's arrest, PrimeCare and Dauphin County Prison were unfit to render proper medical services to an inmate who had ingested cocaine.  (Id. ¶ 90.)  Plaintiffs assert that PrimeCare and Dauphin County Prison had a history of providing "questionable medical care."  (Id. ¶ 91.)  Specifically, in the five years before the incident in question, ten (10) individuals housed in Dauphin County Prison died.  (Id.)  Plaintiffs note that these facts indicate ongoing issues with the quality and availability of medical care at Dauphin County Prison at the time Individual Defendants decided to take Decedent to the Booking Center rather than a hospital.  (Id. ¶ 92.)

## II.  LEGAL STANDARD

### A.  Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Foglia v. Renal Ventures Mgmt., 754 F.3d 153, 154 n.1 (3d Cir. 2014).  However, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  The Court need not accept legal conclusions set forth as factual allegations.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Review of the pleadings at the motion to dismiss stage "requires the reviewing court to draw on its judicial experience and common sense."  See Iqbal, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See id. (quoting Fed. R. Civ. P. 8(a)(2)).

Consistent with the Supreme Court's ruling in Twombly and Ibqal, the United States Court of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6):  (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and internal quotation marks omitted).  A complaint is properly dismissed where the factual content in the

complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678.  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged.  See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  However, there is no "probability requirement at the pleading stage."  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 555).  Rather, the Twombly standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  See id. (internal quotation marks omitted).

### B.    Motion for Judgment on the Pleadings Standard

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings once pleadings are closed.  See Fed. R. Civ. P. 12(c).  In order to prevail on a motion pursuant to Rule 12(c), a moving party must demonstrate "that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  See Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. PanAm. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)).  When reviewing a motion for judgment on the pleadings, a court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party," a standard which is essentially identical to that applied in assessing motions to dismiss under Rule 12(b)(6).  See id.

III.    **DISCUSSION**

The Court will begin the disposition of the pending motions by addressing Defendant City's motion to dismiss Plaintiffs' claim under the 14th Amendment for failure to train, supervise, control, or discipline (Count III).  (Doc. No. 55.)  Next, the Court will address Plaintiffs' claims against the Individual Defendants for failure to intervene (Count I) and failure to render medical care (Count IV), and Individual Defendants' associated motions to dismiss. (Doc. Nos. 54, 56, 57.)   The Court will then decide whether the Individual Defendants are entitled to qualified immunity. Then, the Court will address Plaintiffs' claims against PrimeCare for failure to train, supervise, control, or discipline (Count II), and Defendant PrimeCare's associated partial motion to dismiss.  (Doc. No. 87.)  Next, the Court will turn to the Defendant PrimeCare's partial motion to dismiss (id.) and supplemental partial motion to dismiss (Doc. No. 90) Plaintiffs' claims against it for medical negligence (Count V), wrongful death (Count VI), and Plaintiffs' state law survival action (Count VII).  Additionally, the Court will rule on PrimeCare's motion to strike Plaintiffs' amended certificate of merit (Doc. No. 92) as to Plaintiffs' state law claims (Doc. No. 98)  Finally, the Court will rule on Defendant County's motion for judgment on the pleadings concerning Plaintiffs' claim against it for failure to train, supervise, control, or discipline the Individual Defendants (Count II).  (Doc. No. 73.)

A.      **Plaintiffs' Claim Against Defendant City (Count III)**

Count III of Plaintiffs' amended complaint asserts a claim against Defendant City for failure to properly train, supervise, control, or discipline the Individual Defendants.  (Doc. No. 52.)  In Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658 (1978), the Supreme Court established that municipalities can be held liable for constitutional violations under 42 U.S.C. § 1983.  See id. at 690.  However, municipal liability is limited to those actions for which the

municipality itself is actually responsible.  See Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986).

Specifically, liability attaches when "execution of a government's policy or custom, whether

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury."  See Monell, 436 U.S. at 694.  Liability can also attach under Monell

where a municipal entity fails to train, supervise, control, or discipline its employees.  See Reitz

v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).   In sum, a municipality is subject to § 1983

liability to the extent it maintained an unconstitutional custom or policy that caused the

constitutional violations alleged by the claimant, but is not liable for injuries on the sole basis

that they were inflicted by its employees.  See Monell, 436 U.S. at 694.

        In support of its motion to dismiss Plaintiffs' claim against it, Defendant City asserts that

Plaintiffs have failed to adequately allege a Monell claim, an argument based at least in part on

the assertion that Plaintiffs have failed to adequately allege an underlying constitutional violation

committed by the Individual Defendants.  (Doc. Nos. 55, 64 at 10.)  In response, Plaintiffs

requested that the Court allow them to voluntarily withdraw their claim against Defendant City

without prejudice to their right to refile claims against Defendant City before the expiration of

the statute of limitations and to terminate Defendant City from the instant action at this time.

(Doc. No. 79.)  Defendant City does not concur in this request. (Doc. No. 84.)

        The Court will grant Plaintiffs' request and deny Defendant City's motion to dismiss

(Doc. No. 55) as moot.  As discussed, infra, the Court finds that Plaintiffs have adequately

alleged an underlying constitutional violation committed by the Individual Defendants.

Therefore, the Court will not foreclose Plaintiffs' further amendment of claims against any other

Defendants, including Defendant City, particularly when the statute of limitations has not yet

expired.  The Court further notes that Plaintiffs would need to seek leave of Court for future

amendments, including any that might reassert claims against Defendant City, and the Court would assess the adequacy of those claims in determining whether to allow further amendment. Accordingly, the Court finds that a dismissal of Plaintiffs' claim against Defendant City without prejudice is appropriate.

**B.      Plaintiffs' Claims Against the Individual Named Defendants (Counts I and IV)**

**1.      Plaintiffs' Failure to Intervene Claim Under 42 U.S.C. § 1983 (Count I)**

Count I of Plaintiffs' amended complaint asserts a claim against the Individual Defendants for failure to intervene, with an underlying constitutional violation of failure to render medical care.  (Doc. No. 52.)  For the reasons that follow, the Court will deny the Individual Defendants' motions to dismiss as to this claim.  (Doc. Nos. 54, 56, 57.)

**a.      Applicable Legal Standard**

Section 1983 is the vehicle by which private citizens can seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Colombia, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To maintain a cause of action under § 1983, a plaintiff must demonstrate that:  (1) the conduct complained of was committed by persons acting under color of state law;

and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws

of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005)

(quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

The Third Circuit laid out the elements of a constitutional claim for failure to intervene in

Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002).  Specifically, the court stated that "[i]f a police

officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation

… takes place in his presence, the officer is directly liable under Section 1983."  See id. at 650

(quoting Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986) (internal quotation marks omitted).

The Third Circuit has clarified that such liability requires proof that the officer had a "reasonable

and realistic opportunity to intervene."  See id. at 651.

### b.      Arguments of the Parties

The Individual Defendants argue that Plaintiffs' claims for failure to intervene cannot be

sustained because Plaintiffs' amended complaint fails to sufficiently plead an underlying

constitutional violation for failure to provide medical care.  (Doc. No. 63 at 6-10.)[4]  In the

alternative, the Individual Defendants assert that Plaintiffs have insufficiently alleged that they

had a reasonable opportunity to intervene.  (Id. at 10-11.)[5]  In response, Plaintiffs argue that they

have sufficiently pleaded a claim for failure to provide medical care (Doc. No. 78 at 2-8)[6] and

that the amended complaint includes allegations related to the Individual Defendants'

opportunities to intervene in an ongoing denial of medical care (id. at 9-10).[7]

---

[4] See also (Doc. No. 62 at 7-9; Doc. No. 65 at 10-18).

[5] See also (Doc. No. 62 at 9-10; Doc. No. 65 at 18-20).

[6] See also (Doc. No. 77 at 2-8; Doc. No. 80 at 2-10).

[7] See also (Doc. No. 77 at 8-9; Doc. No. 80 at 10-11).

c.     **Whether the Court Should Dismiss Plaintiffs' Failure to
          Intervene Claim**

Upon review of Plaintiffs' amended complaint, the parties' arguments, and the applicable

law, and accepting as true all factual allegations in Plaintiffs' amended complaint and construing

all reasonable inferences to be drawn therefrom in the light most favorable to Plaintiffs, the

Court finds that Plaintiffs have plausibly alleged a failure to intervene claim.  Plaintiffs have

alleged, and the exhibits to the complaint further indicate, that the Individual Defendants were all

aware that Decedent ingested cocaine, a circumstance which should have required emergency

medical care, and they could have made a decision to take Decedent to a hospital.  (Doc. No. 52

¶¶ 64, 67-71, 93-95, 105-107.)  Furthermore, the amended complaint adds allegations to those

from Plaintiffs' previous complaint to clarify the fact that Decedent was not taken to the Booking

Center for medical care and that, even if he had been, the Individual Defendants knew or should

have known that medical staff at the Booking Center were not equipped to provide adequate

medical care for an arrestee who had ingested narcotics.  (Id. ¶¶ 70-77, 85-89, 96.)  Accordingly,

the Court finds that Plaintiffs have plausibly alleged a failure to intervene claim and will

therefore deny the Individual Defendants' motions to dismiss this claim.

2.     **Plaintiffs' Claim for Failure to Render Medical Care (Count IV)**

Count IV of Plaintiffs' amended complaint asserts a claim against the Individual

Defendants for failure to render medical care.  (Doc. No. 52.)  For the reasons that follow, the

Court will deny the Individual Defendants' motions to dismiss as to this claim.  (Doc. Nos. 54,

56, 57.)

a.     **Applicable Legal Standard**

Claims for denial of medical care to arrestees are analyzed under the same standards as

Eighth Amendment claims for denial of medical care to prisoners.  See Natale v. Camden Cnty.

Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).   In order to state a claim for denial of medical

care, a plaintiff must allege sufficient facts to show the defendant acted with deliberate

indifference to his or her medical needs.  See id. at 582.  The Third Circuit has noted that

deliberate indifference requires evidence of "(i) a serious medical need, and (ii) acts or omissions

by [] officials that indicate deliberate indifference to that need."  See id. (citation omitted.)

Further, deliberate indifference may exist in circumstances where there was "'objective evidence

that [a] plaintiff had a serious need for medical care,' and [] officials ignored that evidence" or

"where 'necessary medical treatment is delayed for non-medical reasons.'"  See id. at 582 (citing

Nicini v. Morra, 212 F.3d 798, 815 n.14 (3d Cir. 2000)); Monmouth Cnty. Corr. Inst. Inmates v.

Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).

A serious medical need is "one that has been diagnosed by a physician as requiring

treatment or one that is so obvious that a lay person would easily recognize the necessity for a

doctor's attention."  See Monmouth Cnty., 834 F.2d at 347 (quoting Pace v. Fauver, 479 F. Supp.

456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981)) (internal quotation marks omitted).

Deliberate indifference is a subjective standard analogous to criminal law's "recklessness"

standard, meaning a plaintiff must demonstrate a reckless disregard of a known "substantial risk

of serious harm."  See Farmer v. Brennan, 511 U.S. 825, 836 (1994).  Further, an official must

"be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists" and "must also draw the inference."  See id. at 837.

### b.  Arguments of the Parties

The Individual Defendants argue that Plaintiffs have failed to plausibly allege that

Decedent had a serious medical need while in their custody and have further failed to allege facts

indicating deliberate indifference.  (Doc. No. 63 at 6-10.)[8]  In support of this argument, the Individual Defendants rely on the averments in Plaintiffs' Exhibit A that Decedent was coherent and not demonstrating any medical symptoms while in their presence, that Decedent denied consuming cocaine several times, and that Decedent was cleared by medical staff at the booking center.  (Id.)  In response, Plaintiffs argue that:  the Individual Defendants acted in violation of their own department policy; they were aware that ingestion of drugs was a serious medical concern; they did not believe Decedent's denials of ingesting cocaine; and Decedent was not taken to the Booking Center for medical care.  (Doc. No. 78 at 2-8.)[9]

### c.   Whether the Court Should Dismiss Plaintiffs' Claim for Failure to Render Medical Care

Upon review of Plaintiffs' amended complaint, the parties' arguments, and the applicable law, and accepting as true all factual allegations in Plaintiffs' amended complaint and construing all reasonable inferences to be drawn therefrom in a light most favorable to Plaintiffs, the Court concludes that Plaintiffs have plausibly alleged a claim for failure to render medical care.  The allegations of Plaintiffs' amended complaint clarify that the Individual Defendants at no point specifically sought medical care for Decedent despite believing that he had ingested a large amount of cocaine.  (Doc. No. 52  ¶¶ 64, 67-71, 93-95.)[10]  Furthermore, Decedent was exhibiting at least one symptom of medical distress when he was taken to the Booking Center because he mentioned that he was hot despite the cold temperature outside.  (Id. ¶¶ 80-82.)  Although Decedent was transported to the Booking Center, where medical staff were present, the amended

---

[8] See also (Doc. No. 62 at 7-9; Doc. No. 65 at 10-18).

[9] See also (Doc. No. 77 at 2-8; Doc. No. 80 at 2-10).

[10] See also (Doc. No. 52 ¶¶ 41-49, 51-52, 54-57, 59-61, 63-66, 97-100, 105-106).

complaint and exhibits plausibly allege that the Individual Defendants did not send Decedent to the Booking Center for medical treatment and either knew or should have known that medical staff at the Booking Center were not equipped to assess and treat an arrestee suspected of ingesting narcotics.   (Id. ¶¶ 70-77, 85-89, 96.)

The Court's reading of the amended complaint indicates that Decedent's medical need was "so obvious that a lay person would easily recognize the necessity" for some form of medical treatment, see Monmouth Cnty., 834 F.2d at 347 (quoting Pace, 479 F. Supp. at 458) (internal quotation marks omitted), and that the Individual Defendants failed to seek any treatment for Decedent.  In addition, the Court has identified persuasive cases that present analogous circumstances to those present here which similarly find a plausible inference of deliberate indifference, albeit at summary judgment.[11]  See, e.g., Sandoval v. Cnty. of San Diego, 985 F.3d 657, 670-71 (9th Cir. 2021) (finding deliberate indifference where an arrestee died of a methamphetamine overdose while in custody after jail medical staff failed to monitor him or provide care, despite the arrestee showing signs of physical distress);  Reynolds v. Mun. of Norristown, No. 15-cv-0016, 2019 WL 1429550, at *8-10 (E.D. Pa. Mar. 28, 2019) (finding deliberate indifference and denying qualified immunity where arrestee had a head injury and diabetes and defendant officers did not seek medical care despite suspecting medical need);  Imhoff v. Temas, 67 F. Supp. 3d 700, 712 (W.D. Pa. 2014) (finding deliberate indifference and

---

[11] The Court additionally finds persuasive allegations that the Individual Defendants acted in violation of their own department policy which instructed that arrestees suspected of ingesting drugs should be taken to a hospital.  See Darden v. City of Fort Worth, Tex., 880 F.3d 722, 732 n.8 (5th Cir. 2018) (noting that the existence of a policy and the notice it provides to officers is relevant to analyzing the reasonableness of a particular decision); Pierce v. Cherry Hill Twp., No. 09-cv-6487, 2013 WL 3283952, at *11 (D.N.J. June 26, 2013) (denying qualified immunity where officers suspected medical need but nonetheless transported the detainee to jail rather than a hospital despite training on identifying and responding to medical emergencies).

denying qualified immunity where detainee was denied treatment for drug withdrawal and a withdrawal-related asthma attack).  At a minimum, the Court finds that Plaintiffs have plausibly alleged a claim for failure to provide medical care.  Accordingly, the Court will deny the Individual Defendants' motions to dismiss Plaintiffs' claim.[12]

### 3.    Qualified Immunity

The Individual Defendants claim they are entitled to qualified immunity because 1) plaintiffs have not adequately pleaded claims for failure to render medical care or failure to intervene; and 2) the law regarding the alleged constitutional violations was not clearly established as to the circumstances of Decedent's death.  (Doc. Nos. 62 at 11-13, 63 at 11-12, 65 at 21-23.) The Court rules that the Individual Defendants are not entitled to qualified immunity at this juncture, for reasons explained at length below.

### a.    Applicable Legal Standard

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

---

[12] The Individual Defendants also seek to dismiss Plaintiffs' claims for punitive damages.  The Court notes that the Individual Defendants do not dispute that punitive damages are an available remedy in § 1983 cases (Doc. No. 63 at 13-14), but rather assert that Plaintiffs' amended complaint does not adequately plead facts in support of their request for punitive damages (id.). However, because "an inquiry into the availability of punitive damages and the intent behind a defendant's conduct is inherently fact-specific," see Judge v. Shikellamy Sch. Dist., 135 F. Supp. 3d 284, 300 (M.D. Pa. 2015), the Court will not determine at this stage of the proceedings whether Plaintiffs are entitled to request punitive damages.

See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 226 (2009)) (internal quotation marks omitted).  "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity."  Id.  Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  See al-Kidd, 563 U.S. at 741.  As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"  See District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited."  See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).  In making this determination, the Court looks to applicable Supreme Court precedent, but if none exists, "a 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity."  See id. (quoting Taylor v. Barkes, 575 U.S. 822, 826 (2015)).

The United States Supreme Court's decision in White v. Pauly, 137 S. Ct. 548 (2017), clarifies the Court's inquiry in this regard.  In that opinion, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate."  See id. at 551 (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)) (internal quotation marks omitted).  The Supreme Court reiterated that the clearly-established law "must be 'particularized' to the facts

of the case," and cautioned that the presentation of a unique set of facts by a case is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right.  See id. at 552 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal quotation marks omitted).  However, a constitutional deprivation that occurs under unique factual circumstances does not necessarily warrant an automatic grant of qualified immunity.  See Hope v. Pelzer, 536 U.S. 730, 741 (2002) (holding that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").  There may be the rare "obvious case," where "a body of relevant case law" is not necessary,  see Brosseau v. Haugen, 543 U.S. 194, 199 (2004), especially when the case in question presents "extreme circumstances" to which "a general constitutional rule already identified in the decisional law may apply with obvious clarity."  See Taylor v. Riojas, 141 S. Ct. 52, 53-54 (2020) (quoting Hope 536 U.S. at 741) (internal citation and quotation marks omitted).

### b.  Arguments of the Parties

The Individual Defendants argue that, even if Plaintiffs have sufficiently pleaded a claim for denial of medical care, they are entitled to qualified immunity.  (Doc. No. 63 at 11-13.)[13] Although the Individual Defendants do not contest that there is a general constitutional right to medical care, they assert that it was not clearly established at the time of the incident that failure to provide medical care in the circumstances alleged here, or failure to take Decedent to a hospital, would be a constitutional violation.  (Id.)  In response, Plaintiffs argue that a reasonable officer should have known the actions taken by the Individual Defendants violated Decedent's right to medical care and note that, within the Third Circuit, courts regularly deny qualified

---

[13] See also (Doc. No. 62 at 10-13; Doc. No. 65 at 20-23).

immunity to officials where a plaintiff has sufficiently pleaded deliberate indifference, as Plaintiffs have done in this case.  (Doc. No. 78 at 10-13.)[14]

### c. Whether the Individual Defendants are Protected by Qualified Immunity

Upon review of Plaintiffs' amended complaint, the parties' arguments, and the applicable law, the Court declines to find that the Individual Defendants are protected by qualified immunity at this juncture.  As discussed, supra, the Court finds that Plaintiffs have sufficiently alleged the violation of a constitutional right.  Accordingly, the only remaining inquiry is whether that right was clearly established at the time of the incident in question.

The Court finds that the right to medical care was sufficiently clearly established at the time of this incident in December 2019 such that the Individual Defendants should have been on notice that their failure to provide Decedent with medical care under the circumstances alleged amounted to a constitutional violation.  At a minimum, there is no dispute that there is a clearly established right to medical care for persons in custody of law enforcement.  See Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983); Estelle v. Gamble, 429 U.S. 97 (1976).   It has additionally been clearly established for decades within this Circuit that officers may not ignore evidence of a need for medical care.  See Natale, 318 F.3d at 582 (collecting cases).

However, more specifically, the Third Circuit has regularly indicated that where there are sufficient allegations of deliberate indifference, a defendant cannot credibly claim qualified immunity, especially at the motion to dismiss stage.  See, e.g., Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (noting that where deliberate indifference requires actual knowledge or awareness, "a defendant cannot have qualified immunity if she was deliberately

---

[14] See also (Doc. No. 77 at 10-12; Doc. No. 80 at 11-14).

indifferent" and "conduct that is deliberately indifferent to an excessive risk . . . cannot be

objectively reasonable conduct"); Carter v. City of Philadelphia, 181 F.3d 339, 356 (3d Cir.

1999) (finding that if a plaintiff plausibly alleges deliberate indifference at the motion to dismiss

stage, a defendant's conduct is not objectively reasonable and qualified immunity is

unavailable); see also Reynolds, 2019 WL 1429550, at *8-10 (finding a genuine issue of material

fact as to deliberate indifference and denying qualified immunity where arrestee had a head

injury and diabetes and defendant officers did not seek medical care despite suspecting medical

need); Nealman v. Laughlin, No. 15-cv-1579, 2016 WL 4539203, at *7 (M.D. Pa. Aug. 31,

2016) (rejecting qualified immunity defense for defendants because there was "no debate" that

the claim could proceed against "custodial officers who are aware of and act with reckless

indifference to a detainee's 'particularized vulnerability'"); Imhoff, 67 F. Supp. 3d at 712

(finding a plausible claim for deliberate indifference and denying qualified immunity where

detainee was denied treatment for drug withdrawal and a withdrawal-related asthma attack);

Gioffre v. Cnty. of Bucks, No. 08-cv-4232, 2009 WL 3617742, at *6 (E.D. Pa. Nov. 2, 2009)

(finding adequately pleaded allegations of deliberate indifference and denying qualified

immunity on a motion to dismiss where prisoner was denied treatment for drug withdrawal).[15]

Accordingly, it follows that where a pretrial detainee's right to medical care is concerned,

reasonable officers are on notice that they violate that right where they are subjectively aware of

---

[15] The Sixth Circuit Court of Appeals has also indicated that there is a clearly established right to medical care specifically in the context of a detainee's use of illegal drugs where officers were deliberately indifferent to the risk of harm.  See Border v. Trumbull Cnty. Bd. Of Comm'rs, 414 F. App'x 831, 839-40 (6th Cir. 2011) (affirming district court's denial of qualified immunity on summary judgment where detainee died of a drug overdose in custody, where adequate medical care was allegedly not provided); see also Gomez v. City of Memphis, No. 2:19-cv-02412, 2021 WL 1647923, at *9-10 (W.D. Tenn. Apr. 27, 2021) (denying qualified immunity where the decedent was allegedly denied medical care after ingesting marijuana at the time of arrest and charged with tampering with evidence), appeal filed (6th Cir., May 7, 2021).

a medical need and nonetheless deliberately fail to obtain medical care for the detainee.  See

Natale, 318 F.3d at 582-83 (collecting cases).

        In the present case, the Court has already found that, interpreting the facts in the light

most favorable to the Plaintiffs, Plaintiffs have plausibly alleged that the Individual Defendants

believed that Decedent had ingested cocaine, knew that the ingestion of cocaine was dangerous,

and went so far as to inform Decedent that if he had ingested cocaine he could die.  (Doc. No. 52

¶ 52, Exh. A at 8.)  Indeed, Defendant Foose signed an affidavit saying that she observed

Decedent consume crack cocaine and criminally charged him with tampering with evidence on

those grounds.  (Id. ¶ 66, Exh. B at 4.)  Nonetheless, the Individual Defendants transported

Decedent, in violation of their own department policy directing that he should be taken to a

hospital, to the Booking Center, where medical staff were not equipped to assess and treat

individuals who had ingested narcotics.  (Id. ¶¶ 67-74, 83-92.)  Plaintiffs allege that Decedent

was not provided with any legitimate medical care at the Booking Center.  (Id. ¶¶ 93-104.)  Upon

consideration of these allegations, as well as the above-cited case law, the Court concludes that

there is a sufficient body of law within this Circuit to have put the Individual Defendants on

notice that suspecting a medical need upon arrest based on ingestion of narcotics and yet failing

to seek medical care for an arrestee like Decedent is a clearly established constitutional violation.

Even if no such body of law did exist in this Circuit, the duty of officers to render medical care

applies with "obvious clarity" to a situation in which officers know an arrestee is likely

experiencing an overdose.  See Taylor, 141 S.Ct. at 53-54.  Put another way, viewing Plaintiffs'

allegations in the light most favorable to Plaintiffs, the Court finds that a reasonable officer in the

position of the Individual Defendants would have known that the law required them to provide

Decedent with medical care.  See Schmidt, 639 F.3d at 598.  Accordingly, the Court declines to grant the Individual Defendants qualified immunity.

### C.      Plaintiffs' Claims Against Defendant PrimeCare

#### Plaintiffs' Federal Claim Against PrimeCare for Failure to Train, Supervise, Control, or Discipline (Count II)[16]

Count II of Plaintiffs' amended complaint asserts a Monell claim against Defendant PrimeCare for failure to train, supervise, control, or discipline the Individual Defendants.  (Doc. No. 52.)  For the reasons below, the Court will deny Defendant PrimeCare's partial motion to dismiss as to this claim.  (Doc. Nos. 87.)

#### a.  Applicable Legal Standard

"Generally, private actors do not act under color of state law, thus are not liable under Section 1983.  However, in certain circumstances, a private individual may be treated as a state actor if there is a close nexus between parties."  Luck v. Mount Airy #1, LLC, 901 F. Supp. 2d 547 (M.D. Pa. 2012) (citing Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005)).  One circumstance in which the Supreme Court has found such a nexus is when state prison systems contract with private groups to provide medical care to incarcerated persons.  See West, 487 U.S. at 56-57.  In such cases, private healthcare providers are "clothed with the authority of state law."  See id. at 55 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)) (internal quotation marks omitted).   When a plaintiff asserts a claim against a private corporation providing medical care, the plaintiff "must allege a policy or custom that resulted in the alleged constitutional violations."  See Palakovic v. Wetzel, 854 F.3d 209, 232 (3d Cir. 2017) (citing

---

[16] Plaintiffs similarly assert a Monell claim against Defendant County for failure to train, supervise, control, or discipline (Count II).  However, Defendant County has filed a motion for judgment on the pleadings (Doc. No. 73) and, therefore, the Court addresses that claim separately.

Natale, 318 F.3d at 583-84)).  Allegations of this sort are analyzed under the Monell framework.

See Natale, 318 F.3d at 583-84.

Under Monell, a municipality or other entity acting under color of state law may be liable

under § 1983 for a failure to train its employees.  See Reitz, 125 F.3d at 145.  The failure to train

must amount to "deliberate indifference to the constitutional rights of persons with whom

[officials] come in contact."  See City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).  A

finding of deliberate indifference "consists of a showing as to whether (1) municipal

policymakers know that employees will confront a particular situation, (2) the situation involves

a difficult choice or a history of employees mishandling, and (3) the wrong choice by an

employee will frequently cause deprivation of constitutional rights."  See Forrest v. Parry, 930

F.3d 93, 106 (3d Cir. 2019) (citing Carter, 181 F.3d at 357).  More specifically, "the identified

deficiency in a city's training program must be closely related to the ultimate injury."  See City

of Canton, 489 U.S at 391.  A failure-to-train inquiry must focus on "the adequacy of the training

program in relation to the tasks particular officers must perform."  See id. at 390.  Ultimately, a

plaintiff alleging failure to train must "identify a failure to provide specific training that has a

causal nexus with their injuries" and show that "the absence of that specific training can

reasonably be said to reflect a deliberate indifference to whether the alleged constitutional

deprivations occurred."  See Reitz, 125 F.3d at 145 (citation omitted).

In order to establish deliberate indifference arising from the failure to train, supervise,

control, or discipline officers, a plaintiff must generally show that the failure alleged "has caused

a pattern of violations."  See Berg v. City of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (citing

Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 408-409 (1997)).  In

certain narrow circumstances a single constitutional violation may suffice to support a claim for

failure to train.  See Connick v. Thompson, 563 U.S. 51, 71-72 (2011).  In such a case, the

complaint must contain allegations that policymakers "kn[e]w to a moral certainty" that the

alleged constitutional deprivation would occur, and the need for further training "must have been

plainly obvious."  See City of Canton, 489 U.S. at 390 n.10.  In single-incident cases, liability

depends on "the likelihood that the situation will recur and the predictability that an officer

lacking specific tools to handle that situation will violate citizens' rights."  See Thomas v.

Cumberland Cnty., 749 F.3d 217, 223-24 (3d Cir. 2014) (quoting Bryan Cnty., 520 U.S. at 409)

(internal quotation marks omitted).

  While the bar for establishing a Monell claim for failure to train is ultimately quite high,

the Third Circuit has held that requiring plaintiffs to identify a particular policy responsible for

the underlying constitutional deprivation and to attribute that policy to a specific policymaker at

the motion to dismiss stage, prior to discovery, is "unduly harsh."  See Carter, 181 F.3d at 357-

58 (finding that a plaintiff alleging a failure to train claim could not be expected to know

"exactly what training policies were in place or how they were adopted").  Accordingly, district

courts in this circuit often do not require plaintiffs to allege the specific policies, procedures,

customs, or training protocols that led to their injury until litigation has reached its later stages.

See, e.g., Ravert v. Monroe Cnty., 4:20-cv-0889, 2021 WL 1017372, at *4-6 (M.D. Pa. Mar. 17,

2021) (finding that a plaintiff's Monell claim survived a motion to dismiss where no specific

policy or custom was alleged, but where there existed a "reasonable inference that the acts

complained of were undertaken pursuant to a policy, procedure, or custom"); Ramos-Vazquez v.

PrimeCare Medical, Inc., No. 09-cv-00364, 2010 WL 3855546, at *9 (E.D. Pa. Sept. 30, 2010)

(holding that a plaintiff's Monell claim against PrimeCare survived a motion to dismiss, because

"[p]laintiff cannot be expected to specify and articulate which policy, procedure or custom

resulted in these actions; nor should he be expected to know which entity formulated each policy").

### b. Arguments of the Parties

Plaintiffs allege a federal claim for failure to train, supervise, control, or discipline against Defendant PrimeCare (Count II).  (Doc. No. 52.)  The underlying constitutional violation alleged is a claim for failure to render medical care against PrimeCare John Does (Count IV).[17] (Id.)  Defendant PrimeCare argues that Plaintiffs have failed to allege a federal claim for failure to train, supervise, control, or discipline against it because "[Decedent] was evaluated by medical personnel" and "therefore, Plaintiff[s] [are] unable to demonstrate a deliberate indifference to a serious medical condition for an underlying violation of [Decedent's] constitutional rights." (Doc. No. 88 at 9.)  PrimeCare further argues that "it is clear from the allegations in the Complaint that there was a process in place for detainees to undergo a medical evaluation" and "there is no defective policy or practice which in any way contributed to [Decedent's] death which arose from his ingestion of illegal drugs."  (Id.)  In response, Plaintiffs argue that "PrimeCare is vested with the authority to establish policies or customs, practices and usages of the Dauphin County Booking Center, and did in fact establish policies, customs, practices and usages whereby PrimeCare medical staff would not render emergency medical care to persons in

---

[17] PrimeCare argues that "it is not possible for Plaintiffs to demonstrate the requisite state of mind of the unnamed medical personnel to violate Mr. Thomas' rights" and therefore Plaintiffs' Monell claim fails because the underlying claim for failure to render medical care (Count IV) is insufficient.  (Doc. No. 100 at 5.)  However, PrimeCare has not moved to dismiss Count IV, nor has PrimeCare's legal counsel entered an appearance on behalf of the PrimeCare John Does.  As of the issuance of this Memorandum and Order, the PrimeCare John Does are unrepresented, unidentified, and have not appeared before this Court.  As the issue of failure to render medical care is raised neither by the appropriate parties nor in relation to the appropriate claim, the Court cannot address it at this time. For the foregoing reasons the Court declines to address PrimeCare's arguments regarding the sufficiency of Plaintiffs' allegations as to failure to render medical care by the PrimeCare John Does.

custody without regard for whether the individual faces imminent death." (Doc. No. 94 at 4.)

Plaintiffs note that "[p]ursuant to these policies, customs, practices and usages, PrimeCare

medical staff failed to render emergency medical care to [Decedent] despite receiving valid

information suggesting that [Decedent] may have ingested drugs." (Id.)  Further, Plaintiffs argue

that the amended complaint alleges a pattern and practice of failures to render adequate medical

care by PrimeCare at Dauphin County Prison that resulted in ten deaths in the five years prior to

Decedent's death.  (Id. at 4-5.)  As evidence of deliberate indifference, Plaintiffs point to the fact

that PrimeCare staff members were informed that Decedent may have ingested drugs and that

they noted white powder in and around his mouth, but nonetheless failed to treat him as a patient

likely experiencing an overdose.  (Id. at 5-6.)

### c.  Whether the Court Should Dismiss Plaintiff's Claim for Failure to Train, Supervise, Control, or Discipline Against PrimeCare

Upon review of Plaintiffs' amended complaint, the parties' arguments, and the applicable

law, and accepting as true all factual allegations in Plaintiffs' amended complaint and construing

all reasonable inferences to be drawn therefrom in the light most favorable to Plaintiffs, the

Court finds that Plaintiffs have adequately alleged a claim for failure to train, supervise, control,

or discipline against PrimeCare.  Plaintiffs have plausibly alleged that PrimeCare failed to

adequately train its employees to recognize signs of a drug overdose and to respond

appropriately.  Plaintiffs' amended complaint alleges that PrimeCare employees were informed

when Decedent arrived at the Booking Center that he had likely just ingested crack cocaine.

(Doc. No. 52 ¶ 93.)  Indeed, the amended complaint asserts that Decedent still had white powder

coating his mouth at the time he was evaluated by PrimeCare employees.  (Id. ¶ 94.)  According

to the amended complaint, instead of transporting Decedent to an adequately equipped

emergency room or, at the very least, monitoring him for signs of an overdose, PrimeCare's

medical professionals provided no care of any sort.  (Id. ¶ 97.)  Rather, Decedent was left, unmonitored, in a holding cell until he collapsed to the floor.  (Id. ¶ 100.)  Not until twenty minutes after his collapse was Decedent taken to the emergency room to receive proper treatment.  (Id. ¶ 101.)  Plaintiffs' material allegations, when taken as true, support a finding that medical professionals, if properly trained to provide care at a detention center, would not have ignored such obvious indictors that a detainee was experiencing an overdose as a result of ingesting narcotics.  In addition to the failings in this case, Plaintiffs have alleged a pattern or practice of failure to render medical care by PrimeCare, which led to a number of inmate deaths at Dauphin County Prison.  (Id. ¶ 90-92.)  Even absent such allegations, if this court were to find that Plaintiffs' claim rests only on a single incident, a drug overdose of an individual in custody is a situation highly likely to recur at Dauphin County Prison, and without adequate training, the probability is high that PrimeCare employees will violate the rights of individuals by failing to render to medical care under similar circumstances in the future.  See Thomas, 749 F.3d at 223-24.

While Plaintiffs will ultimately bear the burden of identifying specific deficiencies in PrimeCare's training program that are causally connected to the constitutional violations alleged, requiring such a showing at the motion to dismiss stage would run counter to precedent.  To survive a motion to dismiss, Plaintiffs must plead only "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element."  See Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555).  Although Plaintiffs have not alleged specific deficiencies in PrimeCare's training program, the allegations of Decedent's treatment by PrimeCare staff raise a plausible inference that PrimeCare could ultimately be found liable under a failure to train theory.  Failure to train claims are highly fact-intensive inquiries, as they require

28

scrutiny of training programs and the job responsibilities of specific individuals.  To establish

these facts, plaintiffs need access to information typically available only through discovery.

Given the nature of the claim and the facts alleged by Plaintiffs in their amended complaint,

Plaintiffs have raised a reasonable expectation that discovery may reveal deficiencies in

PrimeCare's training programs that led to the failure to treat Decedent's overdose in a manner

that rises to the level of deliberate indifference.  Given this expectation, dismissing Plaintiffs'

federal claim prior to discovery because they fail to allege a specific defect in PrimeCare's

training or supervision would be "unduly harsh."  See Carter, 181 F.3d at 357-58.  Accordingly,

the Court declines to dismiss Plaintiffs' claim against PrimeCare for failure to train, supervise,

control, or discipline.

### 1.    Plaintiffs' State Law Claims (Counts V, VI, and VII) and PrimeCare's Motion to Strike

PrimeCare's arguments in support of dismissal of Plaintiffs' state law claims are entirely

based on the argument that Plaintiffs' originally filed certificate of merit (Doc. No. 89) is

deficient and that Plaintiffs' amended certificate of merit (Doc. No. 92) is untimely and should

be stricken from the record.  Because the Court finds that Plaintiffs' original certificate of merit

is sufficient and, in the alternative, that PrimeCare has not established that Plaintiffs' amended

certificate of merit should be stricken, the Court will deny PrimeCare's motion to dismiss (Doc.

No. 87) and supplemental motion to dismiss (Doc. No. 90) Plaintiffs' state law claims and will

deny PrimeCare's motion to strike (Doc. No. 98).

### a.    Applicable Legal Standard

Under Pennsylvania law, a plaintiff seeking to assert either a professional liability claim

against a licensed professional such as a physician or a nurse, or a claim of corporate negligence

against a hospital must file a certificate of merit.  See Pa. R. Civ. P. 1042.1, 1042.3; Liggon –

Redding v. Est. of Sugarman, 659 F.3d 258, 260 (3d Cir. 2011).  A certificate of merit must be

signed by an attorney or pro se party, and must affirm that:

> (1) an appropriate licensed professional has supplied a written statement that there
> exists a reasonable probability that the care, skill or knowledge exercised or
> exhibited in the treatment, practice or work that is the subject of the complaint, fell
> outside acceptable professional standards and that such conduct was a cause in
> bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard
> is based solely on allegations that other licensed professionals for whom this
> defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for the
> prosecution of the claim.

See Pa. R. Civ. P. 1042.3(a)(1)–(3). When a plaintiff asserts both a claim of direct liability and

vicarious liability against a defendant, the plaintiff must file either separate certificates of merit

as to each theory or a single certificate of merit that lists both theories.  See Pa. R. Civ. P.

1042.3(b)(2); see also Aul v. Correct Care Sols., No. 3:18-cv-02142, 2021 WL 1837571, at *6

(M.D. Pa. May 7, 2021).  The Court, upon good cause shown, is authorized to extend the time

for filing a certificate of merit.  See Pa. R. Civ. P. 1042.3(d).

### b.    Arguments of the Parties

PrimeCare asserts that Plaintiffs' state law claims should be dismissed because Plaintiffs'

amended certificate of merit is untimely and because Plaintiffs "filed a[n] [original] [c]ertificate

of [m]erit only as to a vicarious liability claim."  (Doc. No. 91 at 8.)  Therefore, PrimeCare

argues, Plaintiffs were "unable to provide a [c]ertificate of [m]erit to support a direct cause of

action for negligence against PrimeCare" and "[t]his failure is fatal to any direct cause of action

against PrimeCare."  (Id.)  In response, Plaintiffs note that their original certificate of merit

supports both direct and vicarious liability theories and that each paragraph "track[s] the

language" of the relevant sections of the applicable rule.  (Doc. No. 94 at 6-7.)  Plaintiffs did, however, request leave of Court to file their amended certificate of merit for purposes of clearing up any confusion.  (Id. at 8.)

### c.   Whether the Court Should Dismiss Plaintiffs' State Law Claims

Upon review of Plaintiffs' certificates of merit, the parties' arguments, and the applicable law, the Court declines to dismiss Plaintiffs' state law claims against PrimeCare.  As an initial matter, the Court agrees with Plaintiffs that the original certificate of merit tracks the language of Rule 1042.3 for both direct and vicarious liability claims.  (Doc. No. 89.)  Accordingly, it is difficult for the Court to see how it could find Plaintiffs' certificate of merit deficient for using language laid out in the rule at issue.  PrimeCare has not identified any authority in support of its argument that the certificate of merit is deficient for doing so.  However, even if Plaintiffs' original certificate of merit was not as clear as it could have been, Pennsylvania law authorizes the Court to overlook "procedural errors" where a party has "substantially complied with the requirements of a rule and no prejudice would result."  See Womer v. Hilliker, 908 A.2d 269, 277 (Pa. 2006).  Plaintiffs filed an original certificate of merit by the deadline agreed upon by the parties that substantially complied with Rule 1042.3.  Plaintiffs subsequently requested leave to file the amended certificate of merit in their opposition to PrimeCare's supplemental motion to dismiss for the sake of clarity only.  (Doc. No. 94 at 8.)  PrimeCare's only argument that it would be prejudiced by the Court allowing the amended certificate of merit to be filed appears to be that the original certificate does not support claims of direct liability.  As the Court determines that the original certificate of merit is sufficient to support Plaintiffs' claims of direct liability against PrimeCare, there does not appear to be any prejudice to PrimeCare in allowing the amended certificate of merit to be filed for clarity to all parties.  Accordingly, the Court will

deny PrimeCare's motions to dismiss Plaintiffs' state law claims (Doc. Nos. 87, 90) and will

deny PrimeCare's motion to strike (Doc. No. 98).[18]

### D.      Defendant County's Motion for Judgment on the Pleadings

Count II of Plaintiffs' amended complaint asserts a Monell claim against Defendant

County for failure to properly train, supervise, control, or discipline the Individual Defendants.

(Doc. No. 52.)  For the reasons that follow, the Court will deny Defendant County's motion for

judgment on the pleadings on this claim.  (Doc. No. 73.)

### 1.      Applicable Legal Standard

As noted, supra, municipal liability is limited to those actions for which the municipality

itself is actually responsible.  See Pembaur, 475 U.S. at 479.  Specifically, liability attaches when

"execution of a government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  See

Monell, 436 U.S. at 694.  That is, a municipality is subject to § 1983 liability to the extent it

maintained an unconstitutional custom or policy that caused the constitutional violations alleged

by the claimant, but is not liable for injuries on the sole basis that they were inflicted by its

employees.  See id.  Under Monell, an entity acting under color of state law may be liable under

§ 1983 for a failure to train its employees.  See Reitz, 125 F.3d at 145.  The failure to train must

amount to "deliberate indifference to the constitutional rights of persons with whom [officials]

come in contact."  See City of Canton, 489 U.S. at 388.

### 2.      Arguments of the Parties

---

[18] Plaintiffs did not file a timely opposition to PrimeCare's motion to strike, but rather filed a
motion for leave to file an untimely opposition asserting good cause and excusable neglect for
the failure to file their opposition.  (Doc. No. 104.)  Because the Court disposes of PrimeCare's
motion to strike within its disposition of PrimeCare's supplemental motion to dismiss, it need not
consider Plaintiffs' proposed brief in opposition to the motion to strike and will deny Plaintiffs'
motion as moot.

Defendant County argues that it is entitled to judgment on the pleadings because:  (1) the County is not liable for the conduct of Defendant Kinsinger; (2) Plaintiffs' Monell claim fails because Plaintiffs have not stated a claim for an underlying constitutional violation by John Doe Corrections Officers; (3) Plaintiffs' Monell claim fails because Plaintiffs have not alleged a policy or custom of failure to address medical emergencies; and (4) Plaintiffs' claim for punitive damages against Defendant County fails as a matter of law.  (Doc. No. 74 at 14-25.)  Defendant County further argues that the pleadings when viewed as a whole indicate that Plaintiffs have not established that Decedent was denied medical care or a pattern of similar incidents that would establish deliberate indifference on the part of policymakers.  (Id. at 17-19, 22-25.)  In response, Plaintiffs argue that:  (1) Defendant County's arguments are based primarily on disputed facts that preclude dismissal at this time; (2) Defendant County lacks standing to seek the dismissal of claims against John Does that it does not represent; and (3) the amended complaint includes sufficient allegations related to the failure to provide medical care by Dauphin County and PrimeCare to support a Monell claim.  (Doc. No. 81 at 1-2, 4, 6-7, 11-12.)

### 3.    Whether Defendant County is Entitled to Judgment on the Pleadings

Upon review of the pleadings in this matter, the parties' arguments, and the applicable law, and viewing the allegations of Plaintiffs' amended complaint in the light most favorable to Plaintiffs, the Court declines to dismiss Plaintiffs' Monell claim against Defendant County and will deny Defendant County's motion for judgment on the pleadings.  As an initial matter, Defendant County's arguments that it is entitled to relief because Plaintiffs have failed to plead an underlying constitutional violation are foreclosed by the Court's determination, supra, that Plaintiffs' amended complaint adequately pleads an underlying constitutional violation on the part of the Individual Defendants.  The same analysis is applicable to the currently unnamed

John Doe Defendants.[19]  Further, it is clearly established that disputes of fact preclude a ruling in

favor of the moving party on a motion for judgment on the pleadings.  See Sikirica v.

Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005) (stating that "[j]udgment will not be

granted unless the movant clearly establishes there are no material issues of fact").

Regarding Defendant County's argument that Plaintiffs have failed to allege that

Defendant County and various John Doe Defendants maintain a custom and practice of failing to

train, instruct, supervise, control, or discipline officers in recognizing individuals in custody who

require emergency medical care, the Court finds this argument unpersuasive.  Plaintiffs

specifically allege that Defendant County and its supervisory John Does maintain such a

practice, and, further, Defendant County contracts with Defendant PrimeCare and relies on

Defendant PrimeCare for medical expertise despite the above-noted alleged pattern and practice

of PrimeCare's deficient provision of medical care.  (Doc. No. 52 ¶¶ 83, 90-92, 106-109, 122-

28.)  Several of Circuit Courts of Appeal have acknowledged that governments may not absolve

themselves of responsibility for constitutional deprivations because they contract with private

entities for the provision of medical care.  See, e.g., King v. Kramer, 680 F.3d 1013, 1020 (7th

---

[19] To the extent that Defendant County argues that it cannot be held liable for the actions of
Defendant Kinsinger and John Doe DCAP Supervisory Officers, and that DCAP John Does
should be dismissed from this action, the Court agrees with Plaintiffs that because Defendant
County's counsel did not enter an appearance on behalf of DCAP John Does, Defendant County
does not have standing to seek dismissal of these defendants.  See e.g., Deeds v. Bayer, No. 3:03-
cv-453, 2007 WL 1232230, at *6 (D. Nev. Apr. 26, 2007) (finding that the Attorney General's
office lacked standing to bring a motion to dismiss a party that it did not represent).  Further, the
Court agrees with Plaintiffs that Kinsinger and DCAP John Does are not entitled to immunity
under the Eleventh Amendment because they are not being sued for work as probation officers or
the supervision of employees acting of Pennsylvania's judicial district, but rather, inter alia, for
actions outside of those ascribed to employees of Pennsylvania's judicial district committed in
connection with Defendant County.  (Doc. No. 81 at 4-5.)  At a minimum, the Court finds that
Plaintiffs are entitled to discovery regarding the relationship between Dauphin County and
Kinsinger's role as an arresting officer.

Cir. 2012); <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700, 705 (11th Cir. 1985) (stating that "if the county permitted the sheriff and/or prison health officials that it contracted with to establish [an unconstitutional] policy or custom, it may also be liable") (internal citations omitted).  Accordingly, the Court will deny Defendant County's motion for judgment on the pleadings.[20]

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny the motions to dismiss filed by the Individual Defendants and Defendant PrimeCare (Doc. Nos. 54, 56, 57, 87, 90), deny as moot the motion to dismiss filed by Defendant City (Doc. No. 55), as well as the motions to strike filed by PrimeCare and the Individual Defendants (Doc. Nos. 98, 101), and the motion for leave to file a brief in opposition to PrimeCare's motion to strike (Doc. No. 104), and will deny Defendant County's motion for judgment on the pleadings (Doc. No. 73).  Consistent with Plaintiffs' requests to voluntarily dismiss Defendant City from this action and to withdraw their claim for punitive damages against Defendant County, the Court will direct that Defendant City be terminated as a defendant without prejudice and that Plaintiffs' claim for punitive damages against Defendant County be dismissed with prejudice.  An appropriate Order follows.

---

[20] Plaintiffs agreed to voluntarily withdraw their claim for punitive damages against Defendant County.  (Doc. No. 81 at 12.)  Accordingly, the Court does not reach Defendant County's arguments regarding punitive damages.