THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERELLE THOMAS, ADMINISTRATOR OF THE ESTATE OF TERELLE THOMAS, et al., | |
| Plaintiffs, | CIVIL ACTION DOCKET NO. 1:20-cv-01178-YK |
| v. | |
| OFFICER DARIL FOOSE, et al., | |
| Defendants. | |

**SUR-REPLY IN OPPOSITION TO THE PLAINTIFFS'
MOTION FOR LEAVE TO FILE A SECOND AMENDED
COMPLAINT OF DEFENDANT, THE COUNTY OF DAUPHIN**

Defendant, the County of Dauphin ("the County"), by and through its attorneys, MacMain Leinhauser PC, hereby files this Sur-Reply in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 158) and Plaintiffs' Reply Brief (ECF No. 173) and avers as follows:

**I.  INTRODUCTION**

The County submits this Sur-Reply to address the factual inaccuracies contained in Plaintiffs' Reply Brief (ECF No. 173). Furthermore, where Plaintiffs' Reply also contains misstatements of law, the County does not waive argument with regard to the same and, instead, will rely upon the legal argument set forth in its Response in Opposition to the Motion (ECF No. 167)

II.    **COUNTER STATEMENT OF THE BACKGROUND**

Plaintiffs' arguments that the "text messages"[1] somehow establish that all of the proposed newly-named parties received notice of the suit and knew the action would have been brought against them but for a mistake is factually inconsistent with the text messages, and thus fatally flawed.  In summary, Plaintiffs have taken great liberties with interpreting the content of the text messages and, in doing so, have made arguments based on their unreasonable inferences and conclusions.  Furthermore, Plaintiffs have failed to identify the parties involved in the three discreet text message exchanges.  Instead, they skip this crucial step and, without any factual basis, have attempted to impute every utterance contained in the text messages to each of the newly-proposed defendants.

Despite Plaintiffs' claims to the contrary, and at best, it could be inferred that "Nathan FA"[2] read an article about the lawsuit which "talked about how hbg city officers handled it wrong and even mentioned foose name in the article and all that".  (ECF No. 173-1 at pg. 1).  The text message is apparently referencing a

---

[1] The first page of "text messages" appear to be from a direct messaging app and not a traditional SMS text message.  Since discovery has not yet been completed regarding the messages and, for simplicity, we have adopted Plaintiffs' usage of the term "text message" while referencing the entire group message for the purpose of the response herein.

[2] Presumably, later discovery will reveal that "Nathan FA" is one of the proposed newly-named defendants, Nathan McKillop.  Additionally, the County believes that the other party to this exchange was another one of the proposed newly-named defendants, Raelynn Parson.

PennLive article that starts with the text, "[r]elatives of a man who died after collapsing at the Dauphin County booking center where he was taken after ingesting crack cocaine ***have filed a wrongful death lawsuit against the county and Harrisburg Police Department*** seeking at least $35 million." (ECF No. 173-1 at pg. 2).  Based upon the foregoing text exchange and substance of the article, it is incomprehensible how Plaintiffs have come to the expansive conclusion that each and every single one of the proposed new defendants both received notice of the suit and knew the action would have been brought against them four (4) years later, but for a mistake concerning identity.

    Since Plaintiffs have failed provide an explanation, we can only presume that their allegation is based upon their belief that **<u>one</u>** of the proposed new defendants read the article, in its entirety, and that this officer would have jumped to the same conclusion as Plaintiffs' counsel where, at the very end of the article, it offhandedly mentions that the "lawsuit said the series of officers and prison staff members []took certain actions," or where it indicates that the suit "also names a number of 'John Doe' police officers and prison officials."  However, nothing in the text messages supports this conclusion; to the contrary, the text exchange only mentions other defendants, just like the title of the article, "[f]amily files $35M suit, claims Harrisburg police took…"  (ECF No. 173-1 at pg. 1 and ECF No. 172-1 at pg. 1).  Thus, even assuming that he had the read the entire article, it

3

is not clear how or why this corrections officer, without the assistance of counsel, would have come to this conclusion. Finally, without any explanation or reasoning to support the argument, Plaintiffs then ask this Court to impute their interpretation of what they believe this single proposed new defendant may have understood the article to mean to all the proposed new defendants. This final leap of faith by Plaintiffs is neither supported by any facts nor applicable law.

While Plaintiffs have generally attributed the text messages and knowledge of their content to all of the newly-proposed defendants, they actually consist of three discreet exchanges. The first consists of three messages between "Nathan FA" and an unknown party that the County believed was possibly Raelynn Parson. (ECF 173-1 at pg. 1). The second is a longer text message exchange between Raelynn Parson and an unidentified individual[3] whom, based upon the context was present at the booking center at the relevant time period. (ECF 173-1 at pgs. 2-5). Lastly, there is a group of text messages exchanged between someone identified as "Teresa Sviben-" and an unidentified individual who indicates that they performed CPR on Mr. Thomas. (ECF 173-1 at pgs. 6-8). Thus, Plaintiffs' blanket conclusion that these exchanges "conclusively establish[] both actual and

---

[3] Once again, while it has not been established, the County believes that the unidentified individual in the second and third text message exchanges (ECF 173-1 at pgs. 2-8) was proposed new defendant, Ashley Shay.

constructive notice" for ***all*** of the proposed new defendants is not supported by any facts that could be reasonably inferred from the content of the text messages.

Plaintiffs have also mispresented both the context and content of the text messages, including the messages dated December 14, 2019, and December 15, 2019.  First, Plaintiffs allege that the text message exchanges "reveal that the proposed defendants had early awareness [] of Mr. Thomas's death."  (ECF 173 at pg. 1).  However, almost all of the messages were sent before he passed on December 17, 2019, and even explicitly reference the fact that, at that time, he was in the "ICU… [on] life support."  (ECF 173-1 at pgs. 2-8).  In fact, only three messages, which are part of a separate later exchange, were sent after he passed; these text messages were sent seven months later, at some point after litigation was commenced.  (ECF 173-1 at pg. 1).

Furthermore, contrary to Plaintiffs' claims, there is no discussion or reasonable inference that parties to the text message exchanges recognized or acknowledged "the likelihood of litigation and their own potential liability."[4] (ECF 173 at pg. 1).  The first exchange, three messages, merely discussed the above referenced article and mentions how it "talked about how hbg city officers

---

[4] This argument of "potential liability" is overly broad and, even assuming the mere concept or thought of *potential liability* crossed the minds of the individuals who were engaged in this exchange before Mr. Thomas passed, it does not prove that they knew, *after the litigation was commenced*, that the action would have been brought against them but for a mistake.

handled it wrong." (Id.). There is clearly no indication of potential liability on the part of the individuals engaged in this discussion. In further support of the allegation, Plaintiffs cherry-pick small segments of the early text exchanges and skip over relevant segments:

> [Unknown:] Is there anyway that can come back to us on why was he accepted? I mean **_medical cleared so we are good right_**.
>
> [Raelynn Parson:] **_Especially not you guys_**. I should've overrode it but it's the DON ! **_If anything I should've have had medical check him_** once in there.

(ECF 173-1 at pgs. 2-5) (emphasis added). Additionally, the text message attributed to Raelynn Parson reads: "You guys handled it! I did nothing," and "Seriously every [sic] was good." (Id.). In taking the exchange out of context, Plaintiffs improperly concluded that Raelynn Parson had "early awareness" of her "own potential liability." (ECF 173 at pg. 1). Finally, the last exchange notes that the lieutenants indicated that "everyone did a good job." (ECF 173-1 at pgs. 6-8). There is no discussion in the exchanges that predates the filing of the complaint or reasonable inference that could be drawn that anyone knew of the "likelihood of litigation," as alleged by the Plaintiffs.

Plaintiffs, in an apparent attempt to mislead this Honorable Court, allege that the "messages document detailed conversations about specific **_allegations in the complaint_**, the presence of white powder around Mr. Thomas's mouth, decisions about medical clearance," in support of their notice arguments. (ECF 173 at pg. 3)

6

(emphasis added). However, there is no question that those discussions long predate the institution of the instant litigation and they are conversations about the ***criminal complaint*** in decedent's underlying arrest. (ECF 173 at pgs. 2-8). These conversations clearly would not result in the proposed new defendants, as argued by Plaintiffs, having notice of the filing of the civil complaint seven (7) months after the exchange occurred, and them being named four (4) years later. Finally, Plaintiffs' claims that these personal and unofficial text messages, which occurred before Mr. Thomas even passed, somehow demonstrate that the parties to the exchanges were "central participants" and "in internal investigations" following the commencement of litigation are purely fictional arguments which should be ignored by this Honorable Court.

    Thus, based on all of the text exchanges, there is no inference that could be drawn that, as proposed by Plaintiffs, all of the newly-proposed defendants had actual or constructive notice of the lawsuit within the Rule 4(m) period and that they knew or should have known the action would have been brought against them but for a mistake concerning identity. Furthermore, there is no evidence to support Plaintiffs' claims that the newly-proposed defendants and amendment would relate back under the "identity of interest" method.

## III. <u>CONCLUSION</u>

For the reasons set forth herein and in the Defendants' Response in Opposition to the Motion, Defendant, County of Dauphin, respectfully requests that this Honorable Court deny the relief sought in Plaintiffs' Motion.

                                            Respectfully submitted,

                                            **MacMAIN LEINHAUSER PC**

Dated: <u>February 7, 2025</u>        By:   <u>*/s/ David J. MacMain*</u>
                                                      David J. MacMain, Esquire
                                                      Brian M. Marchese, Esquire
                                                    Attorney I.D. No. 59320 / 311118
                                                    433 West Market Street, Suite 200
                                                    West Chester, Pennsylvania 19320
                                                    *Attorney for Defendant,*
                                                    *The County of Dauphin*