IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERELLE THOMAS,<br>Administrator of the Estate<br>of Terelle Thomas and T.T., a minor,<br>individually, as child of decedent<br>Terelle Thomas and as his sole survivor,<br>     Plaintiffs<br><br>          v.<br><br>OFFICER DARIL FOOSE, et al.,<br>     Defendants | No. 1:20-cv-01178<br><br>(Judge Kane) |

**ORDER**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**:

On February 11, 2025, this Court issued an Order directing nonparty City of Harrisburg ("the City") to submit for in camera review materials related to the death of Terelle Thomas to include audio recordings of defendant officers, relevant interdepartmental reports, and a copy of the Internal Affairs Report ("IA Report") (collectively "the Materials"). The Court's February 11, 2025 Order also directed the City to submit a supplemental brief identifying and describing with specificity the Materials and any privilege that it may seek to assert regarding the Materials. (Doc. No. 178.) On February 21, 2025, the City submitted the Materials in hard copy to the Court, as directed, and filed its brief electronically. (Doc. No. 179.)

The City has submitted for in camera review audio recordings and transcriptions of interviews with five named Defendant Officers, interdepartmental reports prepared by those officers, and an April 21, 2020 Harrisburg Bureau of Police Internal Affairs Unit Report marked "confidential final report." The City concedes that no privilege applies to most of the audio recordings and to the interdepartmental reports because they contain factual accounts. (Id. at 4.)

However, the City asserts that the deliberative process privilege attaches to the entirety of the IA Report and to Defendant Officer Foose's audio recording from 12:06 to 12:35.  (Id. at 2–4.)

Federal Rule of Civil Procedure 26(b) provides as follows regarding the scope of discovery available to the parties:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in this action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

See Fed. R. Civ. P. 26(b)(1).  If "the proposed discovery is outside the scope permitted by Rule 26(b)(1)," the court must limit discovery.  See Fed. R. Civ. P. 26(b)(2)(C)(iii).  Pursuant to Rule 26(c), "[a] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" and limit the scope of discovery.  See Fed. R. Civ. P. 26(c)(1).  Relief available under Rule 26(c) includes, but is not limited to, "forbidding the disclosure or discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]"  See Fed. R. Civ. P. 26(c)(1)(A), (D).

The United States Court of Appeals for the Third Circuit ("Third Circuit") instructs that "[t]he deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'"  See Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 853 (3d Cir. 1995) (quoting In re Grand Jury, 821 F.2d 946, 959 (3d Cir. 1987)).  A court reviewing a party's assertion of deliberative process privilege must follow a two-step process: (1) "determine whether the communications are in fact privileged"; and (2) "balance the parties' interests."  See id. at 854.  Under the first step of the inquiry, the governmental entity asserting the privilege must show that the material sought is predecisional and deliberative.  See id. at 853–54;

Abdelfattah v. U.S. Dep't of Homeland Sec., 488 F.3d 178, 183 (3d Cir. 2007).  The moving party must also satisfy three requirements:

> [(1)]There must be a formal claim of privilege, [(2)] lodged by the head of the department which has control over the matter, [and (3)] after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for a claim of privilege . . . .

See United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980) (quoting United States v. Reynolds, 345 U.S. 1, 7–8 (1953)); see also Quick v. Township of Bernards, No. 17-cv-05595, 2019 WL 3416851, at *4 (D.N.J. July 29, 2019) (noting that the procedural requirements are necessary for establishing the first step of the Redland two-step inquiry); Yang v. Reno, 157 F.R.D. 625, 632 (M.D. Pa. 1994) (citing Reynolds, 345 U.S. at 7–8) (applying the procedural requirement for the assertion of the executive privilege to a party's assertion of the deliberative process privilege).

At the second step of the inquiry, a court must balance the competing interests of the parties.  See Redland Soccer Club, Inc., 55 F.3d at 854.  The party seeking disclosure has the burden of "showing that its need for the documents outweighs the [proponent's] interest," and may satisfy that burden by "showing a sufficient need for the material in the context of the facts or the nature of the case . . . or by making a prima facie showing of misconduct." See id. (internal quotations and citations omitted).  Courts must at least take into account the following factors when balancing the parties' interests:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

See id. (internal quotations and citations omitted).

3

Upon examination of the Materials and consideration of the relevant authority, the Court finds that the City fails to satisfy the Redland Soccer Club standard for deliberative process privilege as to both the contested portion of the interview and the IA Report.  As to the portion of Defendant Officer Foose's audio recording claimed as privileged, the City argues that because this exchange discloses who initiated the investigation, the privilege applies.  The IA Report at issue provides a timeline of the internal investigation, a factual summary of the Defendant Officers' actions, an assessment of whether department policy was violated, and a recommendation regarding potential discipline of the officers involved.  The report is directed to the Police Commissioner.

The City argues that because the materials at issue are deliberative and predecisional in character, they are ipso facto protected by the deliberative process privilege as defined by Redland Soccer.  (Doc. No. 179 at 2.)  Yet, the City has offered no factual support or legal authority to support a finding that the Materials relate to "deliberations of law or policymaking."  Indeed, the City concedes that courts in this district and elsewhere have routinely concluded that internal investigations related to police conduct are not within the ambit of the deliberative process privilege at all.  See (id. at 3 (citing Trotter v. Logan, No. 23-cv-01065, 2024 WL 2972181 (S.D. Ind. June 13, 2024) and Hughes v. Herbster, No. 20-cv-02204, 2021 WL 4123977 (M.D. Pa. Sept. 9, 2021))).[1]

---

[1] The City's reliance on Holt v. City of Harrisburg, No. 19-cv-01986, 2021 WL 5233317 (M.D. Pa. Nov. 10, 2021), is unavailing.  In Holt, Magistrate Judge Arbuckle held that an internal affairs report that addressed "steps that [the] police department should take to educate officers, including use of the [sic] Rosinski's dash cam video as a training tool" was protected by the deliberative process privilege presumably because the report included recommendations of policy changes to police procedures that met the Redland standard as predecisional and deliberative.  See id. at *4.  No such policy recommendation is included in the IA Report at issue here.

This Court is persuaded by the United States Court of Appeals for the Second Circuit's reasoning in Tigue v. United States Department of Justice, 312 F.2d 70 (2d Cir. 2002), that documents sought to be protected by the deliberative process privilege must relate to policymaking and new law.  See id. at 80 (stating that predecisional documents "must bear on the formulation or exercise of policy-oriented judgment"); see also Reid v. Cumberland County, 34 F. Supp. 3d 396, 410 (D.N.J. 2013) (holding that, in Section 1983 cases, the deliberative process privilege is limited to materials that contribute to the formulation of important public policy or new law).  The IA Report at issue here was prepared not for the development of policy but for a recommendation as to whether the officers in question adhered to departmental policies.  See Reid, 34 F. Supp. 3d at 410 (holding that internal affairs reports were not privileged because they were part of a decisionmaking process unrelated to policymaking or new law); see also Nat'l Cong. For Puerto Rican Rights ex rel. Perez v. City of New York, 194 F.R.D. 88, 95 (S.D.N.Y. 2000) (holding that the deliberative process privilege is inapplicable to internal affairs records because they are personnel decisions).

Even were this Court able to find as a threshold matter that the Materials are privileged, the City has failed to satisfy the formal procedural requirements to assert the privilege.  Although the City has submitted briefs describing the agency's reasons for asserting the privilege and the government information sought to be shielded from disclosure, those submissions have been through its attorney—rather than the head of the department—and without any indication that the head of the department "made the type of personal careful examination which must precede invocation of the privilege."  See O'Neill, 619 F.2d at 226 (stating that it may be inappropriate for a formal claim of executive privilege to be invoked by an attorney and invocation of executive privilege requires an indication that the department head conducted a "personal careful

examination" of the materials); Scott Paper Co. v. United States, 943 F. Supp. 489, 497 (E.D. Pa. 1996) (citing O'Neill, 619 F.2d at 225).

As the court in Scott Paper Co. stated, "when courts refer to the head of the agency claiming the privilege, they are referring to the top official." See id.  The other requirements of the formal procedural hurdle must also be satisfied by the head of the department: i.e., the head of the department must provide precise and certain reasons for asserting the privilege and identify and describe the materials.  See id.; see, e.g., Barron v. State, No. 17-cv-00735, 2020 WL 6391201, at *3 (D.N.J. Nov. 2, 2020) (holding that the deliberative process privilege was properly invoked by Major James A. Parker who was head of the New Jersey State Police, provided precise and certain reasons for the assertion of the privilege, and identified and described the documents).  Here, the City has submitted no affidavit or declaration from the head of the department indicating that the department head conducted a "personal careful examination" of the Materials.  See O'Neill, 619 F.2d at 226.  Therefore, this Court concludes that the City has not satisfied the procedural requirement for its claim of deliberative process privilege.

Even had the City demonstrated privilege at the outset, and satisfied Redland's procedural requirement, the remaining Redland criteria would not support a finding that the Materials qualify for protection.  See Redland Soccer Club, Inc., 55 F.3d at 854.  As to the first factor, relevance, the IA Report and the contested portion of Defendant Officer Foose's audio recording both concern Terelle Thomas' death.  Plaintiffs allege a Monell claim of failure to train, supervise, control, or discipline pursuant to Section 1983 against Defendant Dauphin County.  Here, the IA Report and the withheld portion of Defendant Officer Foose's audio recording include information about an investigation into whether Defendant Corporal Scott

Johnsen and Defendant Officer Foose violated department policy. That information is relevant to Plaintiffs' claim that Dauphin County's policies or customs are implicated here. See Reid, 34 F. Supp. 3d at 412 ("[T]he [c]ourt finds that the evaluative materials contained in the IA reports regarding the incident in question . . . to be highly relevant to [p]laintiff's Monell claim against the [c]ounty [d]efendants and [p]laintiff's claims against the [o]fficer [d]efendants."). Therefore, the Court finds that the IA Report and the contested portion of Defendant Officer Foose's audio recording are relevant, and this factor weighs in favor of disclosure.

Turning to the second factor, the availability of other evidence, the Court finds that this factor weighs in favor of disclosure as well. Where, as here, the issue of liability turns on Plaintiffs adducing evidence of a policy or custom that caused the alleged constitutional violation, the production of additional evidence should not be precluded. See Wayne Land & Mineral Grp., LLC v. Delaware River Basin Comm'n, No. 16-cv-00897, 2020 WL 762835, at *14 (M.D. Pa. Feb. 14, 2020). As to the third factor, the "seriousness" of the litigation, this factor weighs in favor of disclosure given Plaintiffs' allegations of a policy or custom of failing to train, supervise, control, or discipline police officers to render medical care and of police officers failing to render medical care.

As to the fourth factor, the role of the government in the litigation, the Court finds that it weighs in favor of disclosure. Although the City is not a party to this litigation, having been voluntarily dismissed without prejudice (Doc. No. 111), the Court notes that if Plaintiffs' claims are proven, it would be the City's policies or customs that gave rise to the current suit. See Chisler v. Johnston, 796 F. Supp. 2d 632, 641 (W.D. Pa. 2011) (holding that a nonparty governmental entity's role in the litigation is "critical" if its alleged inaction, if proven true, gave rise to the suit).

Lastly, as to the fifth factor, "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable," this factor weighs in favor of disclosure. See Redland Soccer Club, Inc., 55 F.3d at 854. The Court acknowledges that police officers may exhibit future timidity in the internal investigations process after an incident as a result of disclosure of the IA Report and the contested portion of Defendant Officer Foose's audio recording. However, it is worth noting that most of the relevant information in the IA Report, which the City seeks to shield with the privilege, is contained in the audio recordings, which the City concedes is purely factual and disclosable. See (Doc. No. 179 at 4). Moreover, as in Chisler, this Court finds that the timidity would be minimal where, as here, "the only new evidence that needs to be disclosed specifically relates to . . . possible discipline." See Chisler, 796 F. Supp. 2d at 641. Thus, all five factors weigh in favor of disclosure. Accordingly, even if the City satisfied the threshold requirement for its claim of privilege, the Court would grant Plaintiffs' request to obtain the Materials.

**AND SO**, on this 12th day of May 2025, upon consideration of the foregoing, **IT IS ORDERED THAT** Plaintiffs' request for production of the Materials is **GRANTED**, and the Materials **SHALL BE PRODUCED** within ten (10) days of the date of this Order.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania