**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHERELLE THOMAS,** | : | |
| **Administrator of the Estate** | : | **No. 1:20-cv-01178** |
| **of Terelle Thomas and T.T., a minor,** | : | |
| **individually, as child of decedent** | : | **(Judge Kane)** |
| **Terelle Thomas and as his sole survivor,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER DARIL FOOSE, <u>et al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Plaintiffs' fully briefed motion for leave to file a second amended

complaint.  (Doc. No. 158.)  For the reasons that follow, the Court will grant the motion in part

and deny it in part.

**I.    BACKGROUND**[1]

On July 10, 2020, Plaintiffs initiated this action, arising out of the death of Terelle

Thomas ("Thomas" or the "decedent"), on December 17, 2019.  (Doc. No. 1.)  On March 25,

2021, Plaintiffs filed an amended complaint asserting the following claims: (1) a 42 U.S.C. §

1983 claim ("Section 1983") for violation of Thomas's rights under the Fourteenth Amendment

for "failures to intervene in the denial of emergency medical treatment" against defendants

Corporal Scott Johnsen ("Corporal Johnsen"), Officers Daril Foose, Adrienne Salazar, Travis

Banning, Brian Carriere, Probation Officer Dan Kinsinger (collectively the "Officer

Defendants"), John/Jane Doe Police Officers 1–5, and Primecare John/Jane Doe Medical

---

[1]  Because the parties are intimately familiar with the factual background of this case, and
because the Court previously detailed that factual background in its October 15, 2021
Memorandum and Order (Doc. Nos. 110, 111), the Court sets forth only the procedural
background relevant to the instant motion.

Employees 1–5 (Count I); (2) a Section 1983 claim for violation of Thomas's rights under the Fourteenth Amendment for "failure to train, discipline or supervise [] officers" against Defendants Dauphin County, Primecare Medical ("Primecare"), Dauphin County Adult Probation John Doe Supervisory Officers 1–5, Dauphin County John Doe Prison Officials 1–5, and Primecare John/Jane Doe Medical Employees 1–5 (Count II); (3) a Section 1983 claim for violation of Thomas's rights under the Fourteenth Amendment for "failure to train, discipline or supervise [] officers" against the City of Harrisburg and John/Jane Doe Police Officers 1–5 (Count III); (4) a Section 1983 claim for violation of Thomas's rights under the Fourteenth Amendment for "failure to render medical care" against Officer Defendants, Dauphin County John Doe Prison Officials, and Primecare John/Jane Doe Medical Employees (Count IV); and (5)–(7) state law medical negligence, wrongful death, and survival action claims against Primecare and Primecare John/Jane Doe Medical Employees (respectively, Counts V, VI, and VII).[2]  (Doc. No. 52 at 20–33.)

The Officer Defendants, the City of Harrisburg, and Primecare all filed motions to dismiss the amended complaint.  (Doc. Nos. 54–57, 87, 90.)  Dauphin County filed a motion for

---

[2]  The amended complaint seeks a remedy pursuant to Pennsylvania's wrongful death statute, 42 Pa. C.S.A. § 8301 (Count VI), and survival statute, id. § 8302 (Count VII).  (Doc. No. 52 at 32, 33.)  Pursuant to Pennsylvania law, "wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death."  See Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 700 (E.D. Pa. 2011).  Accordingly, Plaintiffs' amended complaint asserted essentially five claims: (1) a Section 1983 claim against Corporal Johnsen, the Officer Defendants, and Primecare John/Jane Does for failure to intervene (Count I); (2) a Section 1983 supervisor liability claim against Dauphin County, Primecare, Dauphin County Prison John/Jane Does, Primecare John/Jane Does (Count II); (3) a Section 1983 municipal liability claim against the City of Harrisburg and Police John/Jane Does (Count III); (4) a Section 1983 claim against Corporal Johnsen, the Officer Defendants, Primecare John/Jane Does, and Dauphin County Prison John/Jane Does for failure to render medical care (Count IV); and (5) a medical negligence claim against Primecare and Primecare John/Jane Does (Count V).

judgment on the pleadings. (Doc. No. 73.) On October 15, 2021, the Court issued an Order denying the motion to dismiss and the motion for judgment on the pleadings. (Doc. No. 111.) The Court's Order also dismissed the claim against the City of Harrisburg as moot upon Plaintiffs' request to withdraw their Section 1983 claim against the City of Harrisburg. (Id.; Doc. No. 110 at 10.) The Officer Defendants subsequently filed notices of appeal limited to the issue of whether they were entitled to qualified immunity. (Doc. Nos. 112, 114, 118, 119.) The United States Court of Appeals for the Third Circuit ("Third Circuit") issued an opinion on December 6, 2023, in which it affirmed the Court's denial of qualified immunity regarding the Officer Defendants' failure to render medical care. (Doc. No. 122); see Thomas v. City of Harrisburg, 88 F.4th 275, 278 (3d Cir. 2023). However, the Third Circuit reversed the Court's denial of qualified immunity as to the claim of failure to intervene. (Doc. No. 122); see Thomas, 88 F.4th at 278. The Court subsequently issued an Order pursuant to the Third Circuit's opinion dismissing Count I with prejudice and scheduling a case management conference for February 15, 2024. (Doc. No. 124.) After the Third Circuit's decision, the following claims remain pending: (1) a Monell[3] failure to train, supervise, control, or discipline claim against Dauphin County, Primecare, Dauphin County Prison John/Jane Does, Primecare John/Jane Does; (2) a Monell failure to train, supervise, control, or discipline claim against Police John/Jane Does; (3) a Section 1983 failure to render medical care claim against Corporal Johnsen, the Officer

---

[3] The term "Monell claim" is derived from the case Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), in which the Supreme Court held that a local government may be held liable under Section 1983 "when execution of [that] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible." See id. at 694–95.

Defendants, Primecare John/Jane Does and Dauphin County Prison John/Jane Does; and (4) a medical negligence claim against Primecare and Primecare John/Jane Does.

At the February 15, 2024 case management conference, the Officer Defendants disclosed their intention to petition for writs of certiorari from the Supreme Court of the United States.  On June 13, 2024, the Court ordered the parties to file a status report outlining a discovery plan. (Doc. No. 132.)  On June 21, 2024, the parties filed their proposed discovery plan staying discovery related to the Officer Defendants but allowing discovery to continue as to all other Defendants.  (Doc. No. 134.)  The Court issued an Order approving the proposed discovery plan on June 24, 2024.  (Doc. No. 135.)

On October 8, 2024, the Officer Defendants informed the Court that the Supreme Court denied their petitions for writs of certiorari.  (Doc. No. 141.)  The Court thereafter held a status conference on October 23, 2024, after which it issued a Case Management Order establishing a close of fact discovery date of March 31, 2025, as to all Defendants.  (Doc. No. 144.)

On December 18, 2024, Plaintiffs filed the instant motion for leave to amend (Doc. No. 158), seeking leave to file a second amended complaint and add eight newly-identified defendants to the existing claims.  Plaintiffs filed a brief in support of the motion and the proposed second amended complaint.  (Doc. Nos. 158-2, 159.)  Dauphin County filed a brief in opposition to the motion with exhibits on January 16, 2025.  (Doc. No. 167–167-5.)  Dauphin County's exhibits include the following: (1) an initial disclosure letter detailing the names of witnesses and preliminary documents that have been disclosed (Doc. No. 167-1) ("Exhibit A"); (2) incident reports from LauraJo Funck, Corrections Officers Lieutenant Raelynn Parson, Nicholas Ceresini, Matthew Brandt, Nathan McKillop, Ashley Shay, and "A. [sic] Gabriele" related to Thomas's death while in custody at Dauphin County Booking Center on December 17,

2019 (Doc. No. 167-2 at 2, 6, 8–10, 12, 21, 22) ("Exhibit B"); and (3) an email thread discussing

the scheduling of depositions of the above-mentioned corrections officers (Doc. No. 167-3)

("Exhibit C").  Corporal Johnsen and Primecare filed their briefs in opposition on January 17,

2025.  (Doc. Nos. 170, 172.)

On January 29 and 30, 2025, Plaintiffs filed reply briefs with exhibits responding to the

briefs in opposition filed by Dauphin County, Corporal Johnsen, and Primecare.  (Doc. Nos.

173–75.)  Plaintiffs' exhibits include a July 10, 2020 online news article from PennLive and text

messages from Corrections Officer Nathan McKillop, Lieutenant Raelynn Parson, and an

unknown sender.  (Id.)  The July 10, 2020 PennLive news article ("Exhibit 2") reports on the

decedent's family filing a lawsuit against Dauphin County and the Harrisburg Police Department

seeking thirty-five million dollars.  (Doc. No. 173-2 at 2.)  The text messages from Corrections

Officer Nathan McKillop, Lieutenant Raelynn Parson, and the unknown sender ("Exhibit 1") are

conversations about Thomas's death and the PennLive news article about Plaintiffs' lawsuit.

(Doc. No. 173-1.)  After the Court granted them leave to file sur-replies, Corporal Johnsen and

Dauphin County filed sur-reply briefs on April 9, 2025.  (Doc. Nos. 183–86.)  Having been fully

briefed, Plaintiffs' motion is ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) generally governs requests for amendment of

pleadings and provides, in pertinent part, that after amending a complaint once as a matter of

right, "a party may amend its pleading only with the opposing party's written consent or the

[C]ourt's leave.  The [C]ourt should freely give leave when justice so requires."  See Fed. R. Civ.

P. 15(a)(2).  As the Supreme Court has stated, "the grant or denial of an opportunity to amend is

within the discretion of the District Court . . . outright refusal to grant the leave without any

justifying reason appearing for the denial is not an exercise of discretion, it is merely an abuse of discretion and inconsistent with the spirit of the Federal Rules."  See Foman v. Davis, 371 U.S. 178, 182 (1962).

Grounds potentially justifying denial of leave to amend are "undue delay, bad faith, dilatory motive, prejudice, and futility."  See id. at 182;  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief can be granted.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002); In re Burlington, 114 F.3d at 1434.  In assessing "futility," a district court applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6).  See In re Burlington, 114 F.3d at 1434; 3 Moore's Federal Practice, § 15.15[3] at 15-55 to 15-61 (3d ed. 2013).  Accordingly, in assessing the potential futility of a proposed amended complaint, the Court must accept as true the allegations in the proposed amended complaint and construe those allegations in the light most favorable to the party seeking leave to amend.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).

The issue of "prejudice" focuses on hardship to the defendant if the amendment were permitted, specifically, whether amendment "would result in additional discovery, cost, and preparation to defend against new facts or new theories."  See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).  With regard to "undue delay," the Third Circuit has held that the mere passage of time does not require that a motion to amend a pleading be denied;  "however, at some point, the [movant's] delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."  See Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984).  In assessing the

issue of "undue" delay, the Court's focus is on the movant's motives for not amending sooner. See id.

A two-year statute of limitations is applicable to Plaintiffs' Section 1983 and state law negligence claims. See Sameric Corp. of Delaware v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998) (applying Pennsylvania's two-year statute of limitations for personal injury claims to Section 1983 claims); 42 Pa. C.S.A. § 5524 (stating that a two-year statute of limitations applies to any "action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct"). In an action where the plaintiff names a John Doe defendant, the statute of limitations is not tolled or stopped from running as to that defendant. See Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003). When a plaintiff seeks to substitute named defendants for John/Jane Doe defendants, and the statute of limitations has run, that plaintiff must show that the substitution relates back to the filing of his or her original complaint. See id.

Federal Rule of Civil Procedure 15(c)(1) governs relation back of complaints for the purposes of replacing a John Doe defendant with a named party. See Fed. R. Civ. P. 15(c)(1); Garvin, 354 F.3d at 220 (holding that replacing the name John Doe with a party's real name "amounts to the changing of a party or the naming of a party under Rule 15[(c)(1)]"). Federal Rule of Civil Procedure 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading when:

> (A)    the law that provides the applicable statute of limitations allows relation back;
>
> (B)    the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or

(C)    the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

See Fed. R. Civ. P. 15(c)(1).  Rule 4(m) states that a defendant must be "served within 90 days after the complaint is filed."  See Fed. R. Civ. P. 4(m).

Rule 15(c)(1)(C)'s notice requirement is fulfilled not only by actual service of process but also "when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means."  See Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 195 (3d Cir. 2001).  Notice can be imputed to satisfy Rule 15(c)(1)(C)(i) via two possible methods: the "shared attorney" method and the "identity of interest" method.  See Garvin, 354 F.3d at 222–23.  As to the "shared attorney" method, the Third Circuit instructs that "a plaintiff must show that there was 'some communication or relationship' between the shared attorney and the John Doe defendant prior to the expiration of the [90]–day period in order to avail him or herself of the shared attorney method of imputing notice."  See id. at 223 (citation omitted).  The "identity of interest" method requires a plaintiff to demonstrate that "the parties are so closely related in their business operations or other activities that filing suit against one serves to provide notice to the other of the pending litigation."  See id. However, the Third Circuit notes that "absent other circumstances that permit the inference that notice was actually received, a non-management employee . . . does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the

employee for Rule 15(c)[(1)(C)(i)] purposes." See id. at 227 (quoting Singletary, 266 F.3d at 200).

## III.    DISCUSSION

Plaintiffs' motion for leave to amend seeks to substitute the named individuals Corrections Officers Captain Andrew Klahr ("Captain Klahr"), Lieutenant Raelynn Parson ("Lieutenant Parson"), Nicholas Ceresini, Matthew Brandt, Nathan McKillop ("CO McKillop"), and Ashley Shay (collectively "Corrections Officers") for Dauphin County John Doe Prison Officials 1–5,[4] and the named individuals Angela Barnett ("Barnett") and LauraJo Funck ("Funck") for Primecare John/Jane Doe Medical Employees 1–5.  Plaintiffs' motion also seeks to add Corporal Johnsen as a defendant to the existing Section 1983 failure to supervise claim under Count III, formerly asserted against the City of Harrisburg.  (Doc. No. 159 at 2, 5.)  At the outset, the Court notes that there is no dispute that the two-year statute of limitations applicable to Plaintiffs' claims ran on December 17, 2021.  See (id. (omitting any argument that the statute of limitations has not run)).  Thus, Plaintiffs may only add a new party with the Court's leave and if the claim to be asserted relates back to the filing date of the original complaint.  See Fed. R. Civ. P. 15(a)(2), (c)(1)(C).  The Court first recounts the arguments of the parties before

---

[4] The Court notes that Plaintiffs seek to substitute six named defendants for John Doe defendants written in the case caption as "Dauphin County John Doe Prison Officials 1–5."  See (Doc. No. 158-2 at 1).  Plaintiffs' attempt to substitute six named defendants for five John Does does not square with the common understanding of John Doe names as placeholders for unknown defendants.  See, e.g., Martin v. City of Reading, No. 12-cv-03665, 2015 WL 390611, *2 (E.D. Pa. Jan. 29, 2015) (substituting four named defendants for four out of nine John Doe defendants); Hiscock v. City of Phila., No. 12-cv-02204, 2013 WL 686350, *1 (E.D. Pa. Feb. 26, 2013) (substituting a single named defendant for one John Doe defendant).  However, as the Court will discuss below, it will deny in part Plaintiffs' request to add all six named defendants for the placeholder names of "Dauphin County John Doe Prison Officials 1–5."

addressing whether the proposed second amended complaint relates back to the filing of the original complaint and whether to grant leave to amend.

### A.    Arguments of the Parties

Plaintiffs assert that leave to amend is proper because their proposed second amended complaint relates back to the filing of their initial complaint.  (Doc. No. 159 at 1.)  They maintain that, because the named individuals share attorneys with the existing Defendants, they received constructive notice sufficient to satisfy Rule 15(c)(1)(C)(i)'s notice requirement.  (Id. at 3–4.)  Plaintiffs also argue that they satisfy the notice requirement because the named individuals are so closely related to the existing Defendants that they share identities of interest sufficient to satisfy the notice requirement.  (Id. at 4–5.)  As to 15(c)(1)(C)(ii)'s knowledge requirement, Plaintiffs assert that the newly-named individuals knew or should have known that the action would have been brought against them, but for a mistake, within the 90-day timeframe because: they were aware of the action since its inception; they are represented by counsel already involved in defending the claims; they have had "direct access to all pleadings, motions, and discovery in this matter" by virtue of their shared attorneys; and they have already participated in discovery. (Id.)

As to Rule 15(a), Plaintiffs assert that leave to amend is proper because: there was no undue delay; leave to amend would not cause prejudice; and the second amended complaint would not be futile.  As to the issue of delay, they note that any delay in amending the amended complaint is attributable to Defendants' motions to dismiss and interlocutory appeals.  (Id. at 2–3.)  Plaintiffs also argue that Defendants would not be prejudiced by amendment because the proposed amendment seeks to add specific and integral individuals to the litigation and add Corporal Johnsen to an existing claim.  (Id. at 5–6.)

In response, Dauphin County contends that the proposed amendment does not relate back to the filing of the original complaint.  (Doc. No. 167 at 5.)  Dauphin County asserts that Plaintiffs fail to demonstrate that the Corrections Officers had actual or constructive notice of the lawsuit within the Rule 4(m) 90-day time period as required by Rule 15(c)(1)(C).  (Id. at 6.) Specifically, Dauphin County argues that Plaintiffs fail to demonstrate a shared attorney between itself and the Corrections Officers or an identity of interest between itself and the Corrections Officers.  (Id. at 7–9.)

Additionally, Dauphin County argues that Plaintiffs' motion should be denied because they unduly delayed adding the Corrections Officers.  Dauphin County maintains that the Corrections Officers' names appeared in the February 8, 2024 Joint Case Management Plan and the May 16, 2024 Initial Disclosure, yet Plaintiffs waited until December 2024 to file a motion to amend the complaint to add them as defendants.  (Id. at 10–11.)  Dauphin County further asserts that granting Plaintiffs leave to amend would cause it prejudice because Plaintiffs' undue delay would place an unfair burden on it and increase the cost of litigation.  (Id. at 11.)  Dauphin County lastly argues that Plaintiffs' proposed second amended complaint would be futile as to Captain Klahr and Lieutenant Parson because it fails to allege facts to support the claim that they were personally involved or were central participants in the events leading to decedent's death. (Id. at 12.)

Primecare contends that the second amended complaint fails to relate back to the filing of the original complaint as to proposed defendants Barnett and Funck because Plaintiffs cannot prove that they received notice within the 90-day period for service established by Rule 4(m). (Doc. No. 170 at 4, 7.)  It also argues that both Barnett and Funck were identified prior to April 1, 2024, yet Plaintiffs delayed adding them as parties for over eight months.  (Id. at 9.)

Therefore, Primecare argues that granting leave to amend would prejudice Barnett, Funck, and Primecare. (Id.)

Corporal Johnsen also opposes the motion, arguing that leave to amend should be denied because Plaintiffs' amendment seeking to add him as a defendant to the Section 1983 failure to supervise claim is futile and amounts to an attempt to add a Monell claim against him. (Doc. No. 172 at 3.) Specifically, Corporal Johnsen points to additional paragraphs in the proposed second amended complaint that state that he reinforced and perpetuated the City of Harrisburg's "custom and policy of . . . failing to train, instruct, supervise, control[,] and discipline the [o]fficers of the Harrisburg Police Department in recognizing individuals in custody who require emergency medical care." (Id. at 3–4.) Corporal Johnsen maintains that these additions assert no facts or plausible allegations that suggest that he was responsible for the City's policies or customs. (Id. at 4.)

### B.    Whether the Court Should Grant Plaintiffs' Motion for Leave to Amend Their Amended Complaint

#### 1.    Relation Back

As noted supra, Plaintiffs concede that the statute of limitations ran on their Section 1983 claims on December 17, 2021. Therefore, according to Rule 15(c)(1)(C), they must demonstrate that their second amended complaint relates back to the original complaint. See Fed. R. Civ. P. 15(c)(1)(C). The Court first addresses whether Plaintiffs demonstrate that Captain Klahr, Lieutenant Parson, Corrections Officers McKillop, Ceresini, Brandt, and Shay, Barnett, and Funck received notice of the action within ninety (90) days of the initiation of the lawsuit, as required by Rule 15(c)(1)(C), before turning to whether Plaintiffs demonstrate that the newly

named individuals knew or should have known, but for Plaintiffs' mistake, that the action would
have been initiated against them.[5]  See id.

      **a.**     **Notice**

          **(1)**     **Captain Klahr, Lieutenant Parson, and Corrections
Officers McKillop, Ceresini, Brandt, and Shay**

Upon review of the briefs and exhibits[6] submitted by the parties in connection with the
briefing, the Court concludes that Plaintiffs have shown that Captain Klahr, Lieutenant Parson,
and CO McKillop received constructive notice of the action but cannot demonstrate that
Corrections Officers Ceresini, Brandt, and Shay received notice of the action.  First, as to
Captain Klahr and Lieutenant Parson, Captain Klahr was a shift commander on duty during the
time Thomas was brought into the Dauphin County Booking Center ("DCBC").  (Doc. No. 158-
2 ¶ 113.)  Lieutenant Parson was an assistant shift commander on duty at the DCBC at the same
time.  (Id. ¶ 14.)  Based on the allegations of the second amended complaint that both Captain
Klahr and Lieutenant Parson were management employees of Dauphin County, the Court
concludes that Plaintiffs have demonstrated that Captain Klahr and Lieutenant Parson share
"sufficient nexus of interests" with Dauphin County "so that notice given to [Dauphin County]

---

[5]  Because the parties do not dispute whether the first requirement of Rule 15(c)(1)(B) is
satisfied, the Court focuses its analysis on the two requirements of Rule 15(c)(1)(C).  (Doc. Nos.
167 at 6–9; 170 at 4–8); see Rule 15(c)(1).

[6]  The Court notes that, although there is no mention of what evidence can be considered in the
Rule 15(c) context, the Third Circuit has indicated that evidence may be considered in
determining the shared attorney method, the identity of interest method, and the knowledge
requirement under Rule 15(c)(1)(C).  See, e.g., Garvin, 354 F.3d at 224, 226, 227 (noting the
importance of the plaintiff to "come forth with evidence," derived from discovery, of shared
attorney representation or identity of interest so that notice may be imputed (emphasis added));
Edwards v. Middlesex Cnty., No. 08-cv-06359, 2010 WL 2516492, *4 (D.N.J. June 14, 2010)
(citing to an exhibit submitted in support of the plaintiff's assertion that a medical director held
an identity of interest).

can be imputed" to them.  See Garvin, 354 F.3d at 227; see also Ward v. Taylor, 250 F.R.D. 165,

169 (D. Del. 2008) (concluding that a lieutenant's position as a supervisor at a correctional

facility has "sufficient identity of interests" with prison administrators to impute notice).

Second, as to CO McKillop, Plaintiffs have shown that he received constructive notice within the

Rule 4(m) time period via evidence of a news article and text messages.  (Doc. Nos. 173-1 at 1;

173-2.)  Plaintiffs' Exhibit 1, the PennLive news article, attached to their reply brief reports on

the decedent's family filing a lawsuit against Dauphin County and the Harrisburg Police

Department seeking thirty-five million dollars.  (Doc. No. 173-2 at 2.)  Plaintiffs' Exhibit 2, also

attached to their reply brief, reflects that CO McKillop read the July 10, 2020 news article the

day it came out and recognized that it concerned "[his] guy" Thomas.  (Doc. No. 173-1 at 1

("[F]amily [is] asking for 35 million!! [. . .] article came out today").)  The Court also notes that

the online news article was published the same day the complaint was filed.  Because the news

article and messages demonstrate that CO McKillop learned of this action within the 90-day time

period, the Court concludes that Plaintiffs have demonstrated that he received constructive

notice.

　　　　As to the remaining Corrections Officers Ceresini, Brandt, and Shay, the Court is not

convinced that notice can be imputed to them.  First, as to the "shared attorney" method of

imputing notice, although Exhibit A indicates that Dauphin County's attorney was listed as the

point of contact for these Corrections Officers on May 16, 2024 (Doc. No. 167-2 at 4–5), such

evidence is insufficient because it does not indicate a shared representation during the Rule 4(m)

90-day time period, which ended on October 8, 2020.  See Garvin, 354 F.3d at 223 (affirming the

district court's finding that there was no imputed notice without evidence of past or present

representation); see also Singletary, 266 F.3d at 197 (holding that the shared representation must

14

have occurred during the Rule 4(m) period).  Further, Exhibit C, which is an email thread

discussing the scheduling of depositions, demonstrates that "the four Corrections Officers" are

represented by a different attorney from any of the other Defendants.  (Doc. No. 167-3 at 2.)

Thus, without more, the Court cannot infer that any of the Defendants' attorneys, within the 90-

day period that expired on October 8, 2020, "had some communication or relationship with, and

thus gave notice of the action to" Corrections Officers Ceresini, Brandt, and Shay.  See

Singletary, 266 F.3d at 196–97.

Second, as to the "identity of interest" method, Plaintiffs fail to present evidence showing

that the remaining Corrections Officers share sufficient nexuses of interests with their employer

to impute notice.  As staff police officers, the remaining Corrections Officers are non-

management employees who do not share sufficient nexuses of interests with their employer.

See Garvin, 354 F.3d at 227 (quoting Singletary, 266 F.3d at 199) ("[A] non-management

employee . . . does not share a sufficient nexus of interests with his or her employer so that notice

given to the employer can be imputed to the employee for Rule 15(c)(3) purposes.").  Although

Plaintiffs assert that there are sufficient nexuses of interests between the Corrections Officers and

the Officer Defendants, this Court agrees with its sister courts in the Third Circuit that "police

officers do not have an identity of interest with other police officers" without evidence showing

otherwise.  See Robinson v. Deery, No. 24-cv-00364, 2025 WL 756535, at *3 (E.D. Pa. Mar. 10,

2025) (finding that a defendant detective and sergeant, who were believed to have caused the

plaintiff's fall down the stairs, did not have a sufficient nexus of interests between one another to

impute notice); Velez v. Fuentes, No. 15-cv-06939, 2017 WL 2838461, at *4 (D.N.J. June 30,

2017) (finding that a police officer defendant and a proposed police officer defendant who both

participated in the alleged constitutionally violative action lacked a sufficient nexus of interests,

without more, to impute notice). Accordingly, the Court finds that, as to the remaining Corrections Officers Ceresini, Brandt, and Shay, Plaintiffs failed to demonstrate that they received notice of the action pursuant to Rule 15(c)(1)(C)(i) such that the proposed second amended complaint could relate back to the date of the claims asserted against them in the original complaint.

### (2)    Primecare Medical Employees Barnett and Funck

As to Barnett and Funck, the Court finds that Plaintiffs have sufficiently demonstrated that notice to Defendant Primecare should be imputed to Barnett, but have not demonstrated that Primecare's notice should be imputed to Funck. Plaintiffs show that Barnett was the "Director of Nursing" at the DCBC. See (Doc. No. 158-2 ¶ 30). Similar to Captain Klahr and Lieutenant Parson, Barnett was "high enough in the [] hierarchy" for "sufficient nexus of interests" to exist between her and Primecare. See Garvin, 354 F.3d at 227 (quoting Singletary, 266 F.3d at 199). Funck, however, is a non-management employee like Corrections Officers Ceresini, Brandt, and Shay. See id. (stating that a non-management employee does not share a sufficient nexus of interests with his or her employer). Thus, Funck does not share a sufficient nexus of interests with Primecare to impute notice.

Funck also does not share attorney representation with any of the Defendants. Although Plaintiffs attempt to demonstrate a shared attorney between Funck and Primecare, Plaintiffs can only demonstrate that Funck and Primecare may have shared an attorney since the year 2024. Rule 15(c)(1)(C), however, requires Plaintiffs to demonstrate a shared attorney representation between Funck and any of Defendants during the Rule 4(m) 90-day time period, which ended on October 8, 2020. See id. at 223 (holding that there was no shared attorney where there was no evidence that an attorney represented the newly-named party within the Rule 4(m) period). The

evidence that Primecare's attorney represented Funck at a deposition, without more, does not give rise to the inference that Primecare's attorney had some communication or relationship with Funck within the Rule 4(m) 90-day period approximately three years earlier.  See Singletary, 266 F.3d at 196–97 ("[T]he fundamental issue here is whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, within the [90-]day period, had some communication or relationship with, and thus gave notice of the action to the newly named defendant.").  Accordingly, the Court concludes that Plaintiffs have shown that Barnett received constructive notice under the "identity of interest" method but have failed to show that notice can be imputed as to Funck.  The Court next addresses whether Captain Klahr, Lieutenant Parson, CO McKillop, and Barnett "knew or should have known that the action would have been brought against it, but for a mistake concerning their identities," the second requirement for relation-back of the proposed second amended complaint.  See Fed. R. Civ. P. 15(c)(1)(C)(ii).

### b.    Knowledge

The Court concludes that Plaintiffs have shown, through their exhibits and the facts asserted in their initial complaint, that CO McKillop, Captain Klahr, and Lieutenant Parson knew or should have known that, but for a "mistake" concerning the identity of the proper party, the instant action would have been initiated against them.  First, as to CO McKillop, Plaintiffs show via his text messages that he knew or should have known that this action would have been initiated against him.  As explained supra, CO McKillop's text messages, provided in Exhibit 1, indicate that he read the online news article describing Plaintiffs' lawsuit on the same day the complaint was filed.  (Doc. No. 173-1 at 1.)  That July 10, 2020 news article, provided as Exhibit 2, also contains allegations from Plaintiffs' initial complaint against "prison staff members" who

were "told . . . that Thomas may have swallowed cocaine" yet never transferred him to the

nearest hospital.  (Doc. No. 173-2 at 5.)  Those reported factual allegations from the initial

complaint implicate CO McKillop's actions the night Thomas was brought into the DCBC.

Accordingly, the Court concludes that Plaintiffs have demonstrated that CO McKillop knew or

should have known, within the 90-day time period established by Rule 4(m), that the instant

action would have been initiated against him but for a "mistake" concerning his identity.

As to Captain Klahr and Lieutenant Parson, the Court also concludes that Plaintiffs have

demonstrated that they knew or should have known that, but for a "mistake" concerning the

identity of the proper party, they would have been named in the initial complaint because the

factual allegations contained in the initial complaint implicate their actions and decisions.

Similar to CO McKillop, Plaintiffs' initial complaint "essentially advertised that [they were]

seeking correctional officers whose identity [they] did not know" regarding the decision not to

transfer Thomas to the hospital.  See Ward, 250 F.R.D. at 170.  Dauphin County does not

challenge that Captain Klahr and Lieutenant Parson were the supervisors at the DCBC while

Thomas was there.  It also does not challenge that Captain Klahr and Lieutenant Parson

responded to Thomas's medical emergency.[7]  Therefore, the Court finds that, given their

authority and involvement in the events leading up to Thomas's death, Plaintiffs have

demonstrated that Captain Klahr and Lieutenant Parson knew or should have known that they

would have been named in the initial complaint but for Plaintiffs' "mistake."

---

[7] Additionally, as to Lieutenant Parson, Plaintiffs demonstrate, through text messages obtained
from December 14, 2019, that she recognized her involvement in Thomas's death by messaging,
"should have overrode [sic] [the medical clearance]" and "had medical check him once in there."
(Doc. No. 173-1 at 3.)

As to Barnett, the Court similarly concludes that Plaintiffs have demonstrated that she knew or should have known that, but for a "mistake" concerning the identity of the proper party, she would have been named in the initial complaint because of her position and her involvement in the events leading up to Thomas's death.  As explained supra, Barnett was the Director of Nursing at the DCBC.  Moreover, Plaintiffs' initial complaint "advertised" that they were looking for a Primecare supervisor who was informed that Thomas may have ingested drugs yet decided not to send him to a hospital.  See Ward, 250 F.R.D. at 170.  Accordingly, "given [her] authority and involvement in the events", Plaintiffs have shown that Barnett should have known that she would have been named as a defendant in the suit, but for Plaintiffs' "mistake."  See id. Having determined that Plaintiffs have sufficiently demonstrated that the proposed second amended complaint relates back to the date of the filing of the original complaint as to proposed defendants Captain Klahr, Lieutenant Parson, CO McKillop, and Barnett, such that the statute of limitations does not bar the assertion of claims against them, the Court next considers whether to grant leave to amend.

### 2.    Leave to Amend

The Court first addresses whether Plaintiffs' proposed second amended complaint is unduly delayed before turning to whether granting leave to amend would prejudice Defendants and whether Plaintiffs' amendments would be futile as to the Section 1983 claims sought to be asserted in the proposed second amended complaint.

### a.    Undue Delay

Defendants Dauphin County and Primecare argue that Plaintiffs unduly delayed seeking leave to amend their amended complaint.  The Court is persuaded by Plaintiffs' explanation for the delay in amending their amended complaint, i.e., that the delay is due to Defendants' motions

to dismiss and interlocutory appeals. Although Primecare argues that Plaintiffs took no steps to identify individuals before the statute of limitations expired, it provides no evidence to support that argument or demonstrate that the delay was not occasioned by the motions to dismiss filed by Defendants and the interlocutory appeals of the Court's Order resolving the motions to dismiss. The Court also finds that Primecare and Dauphin County's other arguments—that Plaintiffs knew of Barnett before April 1, 2024, and knew of the identities of the Corrections Officers upon the filing of the February 14, 2024 Joint Case Management Plan—are unavailing because even a period of ten months, without further evidence of Plaintiffs' motive, does not show undue delay. See Arthur v. Maersk, Inc., 434 F.3d 196, 205 (3d Cir. 2006) (stating that even a delay of eleven months is not, on its face, presumptively undue delay). Because Plaintiffs adequately explain the reason for their delay in seeking to amend, and because "[t]here is [. . .] no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue[,]'" the Court finds that Plaintiffs have not acted with undue delay justifying the denial of their request for leave to amend. See id.

**b.    Prejudice**

The Court next addresses whether Defendants would be prejudiced by the grant of leave to amend. Dauphin County and Primecare argue that they would be prejudiced if Plaintiffs were allowed to amend their complaint at this point in the litigation. Dauphin County specifically asserts that the delay of litigation has resulted in increased costs and any leave to amend would prejudice it. The Court is unpersuaded by this argument because Dauphin County fails to demonstrate how the addition of the Corrections Officers would result in additional costs. See Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) ("[T]he non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the

20

opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." (internal quotations and citations omitted)).  According to Exhibits A and B, submitted in connection with its briefing and detailing Dauphin County's initial disclosures and containing the Corrections Officers' incident reports, Dauphin County has already produced to Plaintiffs documents relating to the Corrections Officers.  See (Doc. Nos. 167-1 at 8; 167-2 (including incident reports written by the Corrections Officers and Funck as part of the initial disclosure package)).  The exhibits indicate to the Court that discovery costs would not drastically increase because the discovery and disclosures to date have partially covered the Corrections Officers sought to be added as defendants.  As to Primecare, the Court finds that it fails to show how the ten months between the start of discovery and Plaintiffs' motion for leave to amend have caused it hardship.  See Bechtel, 886 F.2d at 652 (stating that the non-moving party must do more than claim prejudice).  The Court acknowledges that the cost of this litigation has likely been considerable to date, but, as noted by Plaintiffs, a significant portion of those costs are due to Defendants' procedural strategies.

Primecare further argues that Plaintiffs' tactical move of deposing Barnett before naming her as a defendant prejudices her.  The Court is unpersuaded by Primecare's argument in this regard.  Although Plaintiffs previously deposed Barnett as a witness, she was represented by Primecare's attorneys who knew that she might be added as a party to this case.  Because Barnett was represented by an attorney during her deposition, the Court concludes that any prejudice that may have resulted from being named as a party was mitigated.  Cf Padilla v. Township of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004) (unpublished) (finding that "[b]eing deposed without the benefit of counsel and subsequently being named as a defendant constitutes undue prejudice

against the proposed defendants").[8]  Accordingly, the Court concludes that Barnett would not be

prejudiced and turns to whether Plaintiffs' amendment would be futile as to Captain Klahr,

Lieutenant Parson, Barnett, and Corporal Johnsen.[9]

c.    <b>Futility</b>

As noted above, an amendment to a complaint would be futile if the claims asserted by

way of amendment would fail to state a claim upon which relief could be granted.  See In re

NAHC, Inc. Sec. Litig., 306 F.3d at 1332.  "To state a claim under [Section] 1983, a plaintiff

must allege the violation of a right secured by the Constitution and laws of the United States[]

and must show that the alleged deprivation was committed by a person acting under color of

state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  To support a Section 1983 claim for failure

to supervise against "individual defendants who are policymakers", a party must show that "[the]

defendants, 'with deliberate indifference to the consequences, established and maintained a

policy, practice or custom which directly caused [the] constitutional harm.'"  See A.M. ex rel.

J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v.

Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).  A supervisor may also be held

personally liable under Section 1983 if "he or she participated in violating the plaintiff's rights,

---

[8]  The Third Circuit has acknowledged that its NPOs may nonetheless contain persuasive reasoning.  See New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld, 604 F.3d 816, 823 (3d Cir. 2010) (noting that an NPO is "as persuasive as its reasoning"); see also Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir. 1996) (following an NPO based on "factual similarity" and "look[ing] to the [NPO] as a paradigm of the legal analysis").

[9]  Dauphin County argues that leave to amend the complaint to add CO McKillop would be futile because the Section 1983 claims against him are barred by the statute of limitations.  See (Doc. No. 167-3 at 6).  Because the Court determines supra that the Section 1983 claims against CO McKillop relate back, the Court need not address Dauphin County's futility argument as to him.

22

directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." See id.

### (1)    Captain Klahr and Lieutenant Parson

Plaintiffs' proposed second amended complaint provides the following allegations against Captain Klahr and Lieutenant Parson for failure to train, supervise, control or discipline and failure to render medical care under Section 1983:

- Andrew Klahr, a Captain with Dauphin County Prison, having a place of business at 451 Mall Blvd. in Harrisburg, P[ennsylvania] 17111.  At all times relevant hereto, Defendant Klahr was the Shift Commander during [the decedent's] time at Dauphin County Prison that led to the filing of this [c]omplaint.

- Raelynn Parson, a Lieutenant with Dauphin County Prison, having a place of business at 451 Mall Blvd. in Harrisburg, P[ennsylvania] 17111.  At all times relevant hereto, Defendant Parson was the Assistant Shift Commander during [the decedent's] time at Dauphin County Prison that led to the filing of this [c]omplaint.

- Defendants Klahr, Parson, Brandt, McKillop, Ceresini, Shay, and Funck arrived to find [the decedent] with white powder still on his lips.  [The decedent] was unresponsive, pulseless[,] and apneic.

See (Doc. No. 158-2 ¶¶ 13–14, 113).

Dauphin County asserts that Plaintiffs' allegations against Captain Klahr and Lieutenant Parson regarding their alleged "central" participation in Thomas's death in the proposed second amended complaint fail to state a claim for failure to supervise and failure to render medical care.  (Doc. No. 167 at 12.)  The Court agrees that Plaintiffs' amendment would be futile as to Captain Klahr and Lieutenant Parson.  A review of Plaintiffs' proposed second amended complaint, drawing all inferences in their favor, indicates that Captain Klahr and Lieutenant Parson were supervisors at the DCBC and were two of seven people who responded to the decedent's cardiac arrest while at the booking center.  (Doc. No. 158-2 ¶¶ 13–14, 113.)  Those

factual allegations fail to establish that Captain Klahr and Lieutenant Parson were policymakers who were deliberately indifferent to the consequences of a policy, practice, or custom that directly caused the constitutional harm.  The factual allegations also fail to establish that Captain Klahr and Lieutenant Parson can be held personally liable because they do not demonstrate that Captain Klahr and Lieutenant Parson personally participated in allegedly violating Thomas's rights, directed others to violate them, or had knowledge of and acquiesced in the allegedly unconstitutional conduct of their subordinates.  See A.M. ex rel. J.M.K., 372 F.3d at 586 (stating that a supervisor may not be held personally liable under Section 1983 without evidence of participation in, directing others, or having knowledge of and acquiescing in the unconstitutional conduct).  Plaintiffs allege no other facts relating to Captain Klahr and Lieutenant Parson's actions related to Thomas, or how those actions implicate them in the failure to supervise and failure to render medical care claims.  See generally (Doc. No. 158-2).  Therefore, Plaintiffs fail to state a Section 1983 claim against Captain Klahr and Lieutenant Parson upon which relief may be granted in their proposed second amended complaint, and therefore the Court concludes that amendment to include such claims against them would be futile.

### (2)    Barnett

As to Barnett, the Court concludes that Plaintiffs' allegations plausibly support a personal liability claim against a supervisor under Section 1983.  Plaintiffs' proposed second amended complaint provides the following allegations against Barnett for failure to train, supervise, control or discipline and failure to render medical care under Section 1983:

- Angela Barnett [], a registered nurse employed by Defendant Primecare and having a main place of business at 3490 Locust Lane, Harrisburg, Pennsylvania[] 17109.  At all times relevant hereto, Defendant Barnett was Prime[c]are's Director of Nursing assigned to work at D[auphin County Prison][.]

- Defendant Funck reported [] Thomas'[s] blood pressure and her suspicions of drug ingestion to Defendant Barnett.

- Upon receiving information from Defendant Funck that [the decedent] had ingested cocaine, had cocaine on his upper lip, and had a blood pressure reading of 177/93, Defendant Barnett decided to keep [the decedent] at D[auphin County Prison] instead of sending him to a hospital for emergency medical treatment.

See (Doc. No. 158-2 ¶¶ 30, 107–08).

The proposed second amended complaint alleges that Barnett, as the director of nursing, made the medical decision to keep Thomas at the DCBC despite Funck's reporting to her that he may have ingested drugs and had an elevated heartrate. (Doc. No. 158-2 ¶¶ 30, 106–08.) In other words, the allegations of the proposed second amended complaint plausibly suggest that Barnett participated in the alleged violation of the decedent's rights. Therefore, Plaintiffs' proposed second amended complaint plausibly states a claim of personal liability of a supervisor for failure to supervise and for failure to render medical care under Section 1983. See A.M. ex rel. J.M.K., 372 F.3d at 586 (citation omitted) (recognizing participation in the violation of rights as a way of establishing personal liability under Section 1983). Accordingly, the Court concludes that amendment to include a Section 1983 claim against Barnett would not be futile.

### (3)    Corporal Johnsen

The Court lastly addresses Corporal Johnsen's argument that amendment would be futile as to him. Plaintiffs' proposed second amended complaint provides the following allegations against Corporal Johnsen for failure to train, supervise, control or discipline under Section 1983:

- [Corporal] Johnsen, a supervisory [p]olice [o]fficer with Harrisburg Police, having a main place of business at 123 Walnut Street, Harrisburg, P[ennsylvania][] 17110. At all times relevant hereto, [Corporal Johnsen] participated in and was the cause of [the] decedent['s] death.

- At approximately 6:22 p.m., [Corporal] Johnsen arrived at the location of the traffic stop.

25

- Upon his arrival, Defendant Kinsinger informed [Corporal] Johnsen that he had also reached the conclusion that [the] [d]ecedent had ingested crack cocaine.

- [Corporal] Johnsen warn[ed] [the] decedent [] that he could possibly die from ingesting drugs.

- In total, Defendants Foose, Kinsinger, Johnsen, Salazar, Banning, and Carriere [] had observed the following of [Thomas]: [h]e spoke as if he had 'cotton mouth;' [h]e had a large amount of an unknown item inside of his mouth; [h]e never spit out the large unknown item;  cocaine rocks fells from his shirt and were all around where he sat in the car despite his assertion that he only had marijuana on his person; [h]e had a white substance on his lips and shirt; and [n]o candy cigarettes or candy cigarette box were found despite his assertion that the white substance was the result of eating candy cigarettes.

- [T]he officers on the scene subsequently made a decision to have Defendant Carriere transport [Thomas] to the D[CBC] for the purposes of detaining and processing [him] as an arrestee.

See (Doc. No. 158-2 ¶¶ 20, 60–62, 74, 77).  The proposed second amended complaint also asserts that Corporal Johnsen has "exclusive management and control of the policies and practices of the Harrisburg Police Department" and "the polices, customs, practices[,] and usages that exist were reinforced by the behavior of [Corporal] Johnsen, a supervisor who directly participated in the decision to send [the decedent] to the [DCBC] instead of a hospital."  See (id. ¶¶ 134, 138).  Plaintiffs further allege in the proposed second amended complaint that "[Corporal] Johnsen's unlawful actions perpetuated the policies, customs, practices, and usages within the Harrisburg Police Department that led to the ignoring of obvious needs for medical attention and failing to render emergency medical care to persons in custody."  See (id. ¶ 139).

Corporal Johnsen argues that Plaintiffs' proposed second amended complaint fails to link his position as corporal with that of a policy or decision-making position sufficient to assert a claim of failure to supervise.  (Doc. No. 172 at 3.)  He further argues that Plaintiffs are

attempting to allege a <u>Monell</u> claim against him instead of the City of Harrisburg, against whom Plaintiffs voluntarily withdrew their claim.  (<u>Id.</u> at 5.)  The Court agrees that the factual allegations in Plaintiffs' proposed second amended complaint do not support a claim that Corporal Johnsen is liable as a policy or decision-maker under Section 1983.  Plaintiffs' proposed second amended complaint avers that Corporal Johnsen was informed that Thomas had likely ingested crack cocaine and he observed the decedent with a white substance on his lips and shirt and speaking as if he had cotton mouth.  It also alleges that Corporal Johnsen warned the decedent of possible death from the ingestion of drugs yet decided to have the decedent transported to the DCBC for arrest processing instead of seeking medical attention for the decedent.  Although those factual allegations suggest a claim against Corporal Johnsen for personal liability as a supervisor who participated in a constitutional violation under Section 1983, the proposed second amended complaint seeks to assert that Corporal Johnson is liable as a policymaker.  (Doc. No. 158-2 ¶¶ 134, 138–39.)  For the proposed second amended complaint's Section 1983 failure to supervise claim against Corporal Johnson to not be deemed futile as written, it would have needed to allege facts that suggest that Corporal Johnsen "with deliberate indifference to the consequences, [] established <u>and</u> maintained a policy, practice or custom which directly caused [the] constitutional harm."  <u>See A.M. ex rel. J.M.K.</u>, 372 F.3d at 586 (emphasis added) (quoting <u>Stoneking</u>, 882 F.2d at 725).  Because the proposed second amended complaint is devoid of any factual allegations that Corporal Johnsen established any policy, practice, or custom that directly caused the constitutional harm, Plaintiffs' proposed second amended complaint fails to state a claim against him as a policymaker for failure to train, supervise, or discipline under Section 1983.  Accordingly, the Court finds that the amendment to include a Section 1983 failure to supervise claim against Corporal Johnsen would be futile.

**IV.     CONCLUSION**

Because Plaintiffs cannot overcome the statute of limitations bar to asserting claims against Funck and Corrections Officers Shay, Ceresini, and Brandt pursuant to Federal Rule of Civil Procedure 15(c)(1)(C), and because the proposed second amended complaint would be futile as to Captain Klahr, Lieutenant Parson, and Corporal Johnsen, the Court will deny Plaintiffs' motion for leave to file a second amended complaint insofar as it seeks to add Funck, Captain Klahr, Lieutenant Parson, and Corrections Officers Shay, Ceresini, and Brandt as defendants and Corporal Johnsen to the failure to supervise claim formerly asserted against the City of Harrisburg.  The Court will otherwise grant Plaintiffs' motion and permit Plaintiffs to file a second amended complaint alleging claims against CO McKillop and Barnett.  An appropriate Order follows.